IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:25-CV-59

| | | |
|---|---|---|
| ARNOLD JEROME SMITH | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | **FIRST AMENDED COMPLAINT** |
| STATE OF NORTH CAROLINA, | ) | |
| NORTH CAROLINA OFFICE OF | ) | |
| RECOVERY AND RESILIENCY AND | ) | |
| EXCEL CONTRACTORS, L.L.C. | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

**NOW COMES** Plaintiff, Arnold Jerome Smith, by and through undersigned Counsel, respectfully states and alleges the following:

**NATURE OF THE COMPLAINT**

1. This action is pursuant to the federal Fair Housing Act, as amended, 42 U.S.C. §3601, *et seq*.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; and the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*.; and seeks declaratory relief and damages for discrimination on the basis of disability.

2. Through their unlawful acts, Defendant State of North Carolina, Defendant North Carolina Office of Recovery and Resiliency ("Defendant NCORR") and Defendant Excel Contractors, LLC ("Defendant Excel") have violated Mr. Smith's fair housing rights to be free from discrimination based on his disability by making housing otherwise unavailable, refusing to provide reasonable accommodations and/or modifications, and discriminating

against him in the terms, conditions or privileges in the provision of services that would allow him to fully use and enjoy his home despite his disability.

3. Defendants have unlawfully denied Mr. Smith the right to benefit from a federally assisted program, the North Carolina Community Development Block Grant – Disaster Relief Homeowner Recovery Program, otherwise known and referred to as ReBuild NC, for which he is eligible, on the basis of his disability.

## PARTIES

4. Mr. Arnold Smith is a 57-year-old, African American man whose left leg is amputated at the knee requiring the use of a wheelchair.

5. Mr. Smith lives at 1574 Savannah Heights Dr. Kinston, NC 28501 (Lenoir County), as he has for over 20 years.

6. Mr. Smith is a person with a disability as defined within 42 U.S.C. §3602; 29 U.S.C. §707(20); and 42 U.S.C. §12102(1) and therefore belongs to a class of persons whom the Fair Housing Act (the Act); Section 504 of the Rehabilitation Act of 1973; and the Americans with Disabilities Act of 1990 protects from unlawful discrimination because of disability.

7. At all times relevant herein, Mr. Smith was an "aggrieved person(s)" pursuant to 42 U.S.C. § 3602(i).

8. 1574 Savannah Heights Dr. Kinston, NC 28501 is a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

9. Defendant NCORR is an agency of Defendant State of North Carolina.

10. Defendant NCORR was delegated authority by Defendant State of North Carolina to administer and oversee financial assistance received from the United States Department of

Housing and Urban Development ("HUD"). With these funds, NCORR operates the North Carolina Community Development Block Grant – Disaster Relief Homeowner Recovery Program, otherwise known and referred to as ReBuild NC, pursuant to an agreement between HUD and Defendants NCORR and the State of North Carolina.

11. Defendant Excel is a is a limited liability company registered with the N.C. Secretary of State to conduct business in North Carolina; in possession of an unrestricted general contractor's license through the N.C. Licensing Board for General Contractors; and is a subrecipient of those federal funds administered through the Program.

12. Each Defendant is directly, vicariously, jointly and severally liable for the misconduct of each Defendant, including the injuries sustained by Mr. Smith.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §1331; 42 U.S.C. §3613(a)(1)(a); 29 U.S.C. §794; and 42 U.S.C. §12101 because the claims alleged herein arise under the federal Fair Housing Act, the Rehabilitation Act of 1973, and the Americans with Disabilities Act of 1990.

14. This Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367 over Plaintiff's state law claims because those claims arise out of a common nucleus of operative facts, and form part of the same case and controversy under Article III of the United States Constitution.

15. Venue is proper under 28 U.S.C. §1391 in that the claims alleged in this complaint arose within Lenoir County in the Eastern District of North Carolina.

## STATUTORY AND REGULATORY BACKGROUND

16. Defendants are housing providers for whom the Fair Housing Act's requirements apply. 42 U.S.C. §3604(f)(3)(B).

17. The federal Fair Housing Act of 1968, as amended by the federal Fair Housing Amendment Act, 42 U.S.C. §3601, *et. seq*, requires, *inter alia*, that reasonable accommodations and/or modifications be made to allow an individual or individuals the full use and enjoyment of a dwelling.

18. Section 42 U.S.C. §3604(f)(1) makes it unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of" that disability of that buyer or renter.

19. Structural changes (i.e. reasonable modifications) needed by a person with a disability who resides in federally-funded housing must be treated as reasonable accommodations and must be paid for by the housing provider unless providing them would be an undue financial and administrative burden.

20. The refusal to grant reasonable accommodation is unlawful and is considered a form of housing discrimination. *Id. See also* 42 U.S.C. §3604(f)(3)(B) stating that discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling […]"

21. Defendants are recipients of HUD financial assistance through the Community Development Block Grant – Disaster Relief Homeowner Recovery Program.

22. Community Development Block Grant – Disaster Relief ("CDBG-DR") is a HUD program that applies the Community Development Block Grant framework to Congressional allocations that are passed on an *ad hoc* basis in response to federally-declared disasters. The HUD Secretary has discretion to waive many Community Development Block Grant

requirements in CDBG-DR programs, but the Secretary cannot waive HUD's obligation to comply with fair housing and nondiscrimination law.

23. Housing providers receiving federal financial assistance are subject to Section 504 of the Rehabilitation Act of l973 ("Section 504"). 29 U.S.C. §794.

24. CDBG Programs are obligated "to comply with Section 504 of the Rehabilitation Act of 1973, the Fair Housing Act, and HUD's implementing Regulations (24 CFR Parts 8 and 100, respectively), which prohibit discrimination based on disability and establish requirements for program accessibility and physical accessibility in connection with housing programs." HUD Notice CPD-05-09, September 2005.

25. Section 504 states "No otherwise qualified individual with a disability in the United States, […], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance […]."

26. Defendants, by administering a State-run program, are further subject to the Americans with Disabilities Act of 1990.

27. Pursuant to 42 U.S.C. §12202, a State "shall not be immune under the Eleventh Amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of [the Americans with Disabilities Act]."

28. Pursuant to 42 U.S.C. §2000d-7(a)(1), a State "shall not be immune under the Eleventh Amendment of the Constitution of the United States from a suit in Federal court for a violation of Section 504 of the Rehabilitation Act of 1973, [...] title VI of the Civil Rights Act of 1964, or the provisions of any other federal statute prohibiting discrimination be recipients of Federal financial assistance."

29. On information and belief, Defendants State of North Carolina and NCORR waived any further claims of sovereign immunity through the purchase of liability insurance. *Smith v. State*, 289 N.C. 303, 322, 222 S.E.2d 412, 425 (1976).

## FACTUAL ALLEGATIONS

30. At all times relevant to this Complaint, Mr. Smith has multiple disabilities and requires the use of a wheelchair full-time. His disability is known and obvious.

31. Among those disabilities that severely limit Mr. Smith's ability to perform major life activities are Chronic Obstructive Pulmonary Disease ("COPD"), debilitating heart condition, a herniated disc, arthritis, and a single leg amputation.

32. These disabilities mean that:

    a.  He is completely unable to perform the major life activity of walking or moving without assistance and is fully reliant on his wheelchair;

    b.  He cannot dress himself independently and requires physical assistance;

    c.  He needs assistance with the major life activity of preparing meals;

    d.  He requires either physical assistance or assistive devices to transfer from his wheelchair to the bed, toilet, sofa, etc.

33. Because of the actions of Defendants, Mr. Smith cannot go outside without assistance and cannot use his wheelchair at home and, for more than 3 years, has been forced to scoot around on a rolling desk chair to navigate and still cannot access half of his home.

34. Because of the actions of Defendants, Mr. Smith cannot access the bathtub and, for more than 3 years, has been forced to bathe using a rag in the sink.

35. Because of the actions of Defendants, Mr. Smith cannot independently access his toilet and, for more than 3 years, has been forced to keep a plastic urinal by the bed and seek physical assistance, foregoing any privacy, just to have a bowel movement.

36. Mr. Smith's previous home on his property was fully accessible, allowing him to live independently through assistance from the Independent Living Rehabilitation Program with Vocational Rehabilitation Services through the North Carolina Department of Health and Human Services.

37. He has a home healthcare aide that provides 40 hours of assistance per week.

38. In 2016 and again in 2018, Hurricanes Matthew and Florence severely damaged Mr. Smith's home.

39. In and around 2019, Mr. Smith applied to Defendant NCORR for housing and disaster relief assistance under the Program.

40. Upon information and belief, Defendant NCORR's Program staff met with Mr. Smith in-person and, as his use of a wheelchair and leg amputation is obvious, were aware of his disability status.

41. On June 13, 2019, Mr. Smith answered affirmatively to the question "Do you or a household member require modifications to the home to make it accessible due to a disability?" on the Manufactured Home Replacement Form.

42. On this same form, Mr. Smith requested a reasonable accommodation or modification by specifying the following needs: ramp entrance, grab bars, bathroom accessibility, full bathroom accessibility, full kitchen accessibility.

43. Defendants NCORR and the State of North Carolina never questioned or denied Mr. Smith's disability.

44. Defendant NCORR subsequently awarded Mr. Smith a handicap accessible replacement mobile home unit through the Program.

45. Defendant NCORR informed Mr. Smith that, due to his disability, he would receive a handicap accessible home, and therefore the Program would not offer him any non-accessible home options.

46. On or around January 3, 2020, Defendant NCORR issued an addendum to a Request for Prequalification for construction contracts to provide dwellings to participants in the Program. Included in this addendum, on page 2 of 4, item 16, a question from a prospective construction contractor asks, "Currently manufacturers of MHU do not conform to ADA. MHU are labeled 'wheelchair friendly', or 'accessible units' by the manufacturers. Exterior, site built [*sic*] ramps will be built to ADA standards. Please acknowledge acceptance of this criteria." Defendant NCORR answered, "That is correct."

47. On information and belief, there are manufacturers of mobile home units who produce MHU's that are ADA compliant.

48. On or around March 3, 2020, Defendant Excel bid on a contract with Defendants State of North Carolina and NCORR for the construction of Mr. Smith's home. On page 11 of this contract, item 61 is the project for Mr. Smith's home and affirmatively stated that the home had an accessibility need.

49. Thereafter, Defendants State of North Carolina and NCORR accepted Defendant Excel's bid and contracted with Defendant Excel for the construction of Mr. Smith's home.

50. On or around April 8, 2020, Mr. Smith entered into a written contract with Defendants NCORR and Excel for the construction of a replacement home on his property.

51. Sometime in or around February 2021, Defendant Excel placed a new home on Mr. Smith's property. However, he was prevented from going inside of the property until September 2021.

52. Mr. Smith was told by Defendant Excel that he could not enter the property between February 2021 and September 2021 because construction was not complete and, if he did, he would "nullify the contract." Further, he was told by Defendant Excel that the house was padlocked during that time.

53. In and around March 2021 or April 2021, Defendant Excel constructed a wheelchair ramp at the front of the home.

54. On April 23, 2021, after driving by the property, Mr. Smith sent an email to Defendant NCORR expressing concern about the construction of the ramp stating, "[n]one of the poles are anchored into the ground. [...] It's also being supported by bricks just laying on the ground."

55. Between May 13, 2021, and May 19, 2021, Mr. Smith corresponded with Defendant NCORR regarding the ramp, submitting a construction complaint on May 14, 2021, and adding to it on May 18, 2021. This correspondence included Mr. Smith explaining that his previous ramp was "built by ADA codes and standards through the program Independent Living. Which is [also] a State run program [...]" and sending a copy of the building plans for the previous accessible ramp.

56. During construction, Defendant Excel removed carpet in the primary bedroom, widened the doorway to the primary bedroom and primary bathroom, and replaced doorknobs with levered handles.

57. Defendants required Mr. Smith to verbally consent to the above-described changes to the home; however, as described in paragraph ~~46~~ 50, he was given no access to the property during construction and did not see any of the changes while they were occurring.

58. On or before August 13, 2021, Defendant NCORR provided Mr. Smith with some pictures of the home.

59. ReBuild NC case management notes provide that, on August 13, 2021, Mr. Smith called Defendant NCORR and stated he was "not comfortable signing the title because the project is not completed. [Mr. Smith] said that his bathroom is not handicap accessible because he cannot access the tub with his wheelchair. [...] [H]e is afraid that he will be stuck with incomplete issues with the home if he signs the title prior the project being completed."

60. ReBuild NC case management notes provide that, on August 23, 2021, Mr. Smith reported to Defendant NCORR that he told a representative with Defendant Excel that "his commode, master bathroom closet, and the tub are not ADA compliant. [...] that the construction manager does not think the bathroom is ADA compliant. [...] [Mr. Smith] said he know [*sic*] that his home was supposed to be ADA compliant." Notes from this date assign an action item to Defendant Excel, "GC to provide ADA accommodations because this was an ADA MHU."

61. On October 7, 2021, Defendant Excel responded to the August 23, 2021, action item with, "Homeowner does have an ADA home."

62. ReBuild NC case management notes provide that, on September 3, 2021, Mr. Smith reported to Defendant NCORR he attended a walkthrough of the home the previous day and that he "can't access any rooms past [the] living room because the doorway is not ADA compliant [...] which means I have a home I can only half use. Applicant said he was told

by the program that nothing could be done about it." Notes further state that Mr. Smith was told to "'take it or leave it' about the home not being ADA compliant. [...] Applicant is not please [*sic*] with not having accessibility to the entire home."

63. On or about October 18, 2021, Defendant NCORR completed a pre-occupancy inspection of the property and, on the *NC ReBUILD Final Inspection* form noted, "Excel indicated that [t]he door was adjusted as [much as] possible. The door may come back as a warranty claim."

64. Upon information and belief, and at all times relevant to this Complaint, Defendant NCORR did not have a policy to address an applicant's request for reasonable accommodation or reasonable modification. Therefore, the only means available for Mr. Smith to communicate accessibility issues was through a "warranty claim" or "warranty complaint" which was then documented by NCORR Program staff on the *NC ReBUILD Warranty/Complaint Form.*

65. The home procured and constructed on Mr. Smith's property by Defendants is not wheelchair accessible.

66. In and around November 1 5, 2021, Mr. Smith attended the final walkthrough of the property for an inspection of the home. At that time, he again informed Defendants NCORR and Excel that the home was not accessible and was not what he was told he would receive. A representative of Defendant Excel stated to Mr. Smith, "We gave you a damn $90,000 house, your ass should be happy." Mr. Smith thereafter made a complaint to Defendant NCORR.

67. The ramp at the front entrance of Mr. Smith's home does not meet ADA guidelines and is unsafe to use. The foundation of the ramp is not properly secured, resting only on unsecured

cinder blocks. In addition, the ramp has a slope exceeding the maximum allowable incline, making it impossible for Mr. Smith to use it safely without the assistance of his home healthcare aide.

68. As a result of the deficiencies in the wheelchair ramp, for more than 3 years, Mr. Smith has been prevented from going outside independently which has negatively affected his mental health and has created ongoing hazard to his health and safety in the event of a fire or other emergency.

69. The interior of the home is also not wheelchair accessible due to the narrow corridors and doorways, therefore Mr. Smith cannot use his wheelchair inside his home and, for more than 3 years, has been forced to scoot around on a rolling desk chair to navigate and still cannot access half of his home. The floor of the home is also unlevel, rendering the necessity of the desk chair even more dangerous.

70. Because of the actions of Defendants, the bathrooms are too small for Mr. Smith's wheelchair or even the rolling desk chair to enter and the lack of adequate space means Mr. Smith cannot access the bathtub and, for more than 3 years, has been forced to bathe using a rag in the sink.

71. Because of the actions of Defendants, the bathrooms are too small for Mr. Smith's wheelchair or even the rolling desk chair to enter and the lack of space means Mr. Smith cannot independently access his toilet and, for more than 3 years, has been forced to keep a plastic urinal by the bed and seek physical assistance, foregoing any privacy, just to have a bowel movement.

72. On December 1, 2021, Defendant NCORR conducted an initial warranty inspection, after Mr. Smith reported ongoing accessibility and other issues with the home. Among those

issues listed on the *NC ReBUILD Warranty/Complaint Form* are, "4) Crack in foundation. […] 6) Grab bar in bathroom fell off, causing homeowner to fall. […] 9) Floor in bedroom unlevel next to bed. 10) Homeowner wants higher commode in master bathroom. Commode is within program standards. Nonissue."

73. On January 12, 2022, after Mr. Smith renewed his request for a reasonable accommodation for an accessible home, a *NC ReBUILD Warranty/Complaint Form* prepared by Defendant NCORR states in part, "2) Excel came out to secure bathtub grab bar, however the bar is not secured properly to the wall."

74. On March 1, 2022, Defendant NCORR notes in the *NC ReBUILD Warranty/Complaint Form* that "grab bar fastened back to wall and additional grab bar was installed."

75. On or around, April 21, 2022, after Mr. Smith renewed his request for a reasonable accommodation for an accessible home, Defendant NCORR completed another *NC ReBUILD Warranty/Complaint Form,* which states, "[Homeowner] complains that both bathrooms in the [home] is not ADA compliant. [Homeowner] stated that bathtub is too small, and he can't fit in. [Homeowner] stated wheelchair can't fit into bathroom door; hence [homeowner] uses regular desk chair around the house. [Homeowner] stated that [t]oilet is too low." Further, it states under Inspector Observations that "specs only call for one bathroom to be ADA" The form also notes that the bathroom is not to specifications and the tub should be replaced with a walk-in shower and the kitchen cabinets should be lowered.

76. After another reasonable accommodation request for an accessible home submitted by Mr. Smith on or around July 5, 2022, the *NC ReBUILD Warranty/Complaint Form,* completed

by Defendant NCORR on July 5, 2022, lists "Bathroom (supposed to be ADA compliant)" as an area of concern needing general contractor action.

77. On February 7, 2023, Mr. Smith, by and through counsel, submitted via electronic email and USPS to Defendants, a formal request for dispute resolution as set forth in clause 1.10(c) of the Rebuild North Carolina CDBG-DR Housing Recovery Program Homeowner-Contractor Reconstruction Agreement.

78. On February 8, 2023, Matthew Arlyn, Chief Recovery Officer with Defendant NCORR, acknowledged receipt by electronic mail.

79. Thereafter, on March 16, 2023, Defendant Excel sent their Vice President of Operations and Defendant NCORR sent a contractor from Hope Restorations to Mr. Smith's home to inspect the reported issues. Neither of the Defendants offered any proposed remedy nor communicated a report of their findings from this inspection, therefore failing to follow the procedures sent forth in clause 1.10(c) of the Rebuild North Carolina CDBG-DR Housing Recovery Program Homeowner-Contractor Reconstruction Agreement.

80. Defendants failed to provide Mr. Smith with an accessible home and to adequately respond to Mr. Smith's reasonable accommodation requests, to request more information about his disability, to propose any alternatives, or to otherwise engage in the required interactive process.

81. Defendants' violations of the Fair Housing Act, Section 504, and the Americans with Disabilities Act are continuing and ongoing.

82. On March 23, 2023, Mr. Smith, by and through counsel, submitted a complaint, alleging disability discrimination, to the Department of Housing and Urban Development's Fair Housing and Equal Opportunity Office.

83. An aggrieved person may commence a civil action in an appropriate United States District Court not later than two (2) years after the occurrence of an alleged discriminatory housing practice. The calculation of this period shall not include any time during which an administrative proceeding was pending. 42 U.S.C. §3613(a)(1).

84. On May 27, 2025, Mr. Smith, through counsel, received notice that the Department of Housing and Urban Development's Fair Housing and Equal Opportunity Office issued a determination that there was no reasonable cause to find discrimination had occurred.

85. On June 25, 2025, Mr. Smith, by and through counsel, submitted a request for reconsideration of the "no-cause" determination to the Fair Housing and Equal Opportunity Office's Director of Enforcement. This request is still pending.

86. On June 11, 2024, the RL Mace Universal Design Institute completed an accessibility assessment on Mr. Smith's home. This assessment reached the conclusion that "[t]he conditions observed would prevent a person in a wheelchair from safely, effectively, and independently using this home."

87. At all times relevant to the filing of this Complaint, Mr. Smith, both on his own and with the assistance of counsel, has repeatedly requested that Defendants make his unit accessible to accommodate his disability, as promised and required by law.

88. At all times relevant to the filing of this Complaint, Defendants NCORR and Excel have conducted multiple inspections of the property, including taking measurements, but Defendants have offered no meaningful solutions that would allow Mr. Smith the full use and enjoyment of his home or otherwise engaged in the required interactive process.

89. At all times relevant to the filing of this Complaint, Defendant Excel has made no offer to remedy the inaccessible home they built on Mr. Smith's property.

90. Mr. Smith has been constructively denied the use and enjoyment of his home as well as the benefit of the Program.

91. At the time of the filing of this Complaint, Mr. Smith's home remains inaccessible to him and fails to meet any objective standard of accessibility, particularly for a person with multiple disabilities who is fully reliant on a wheelchair.

92. Based on the facts alleged in this Complaint, Defendants, and each of them, injured Mr. Smith by committing, directly or through their agents, discriminatory housing practices based on his disability status including, but not limited to:

    a. Failing to provide an accessible mobile home, despite actual notice of Mr. Smith's disability and housing needs related to his disability.

    b. Refusing to remedy the inaccessibility of the home, despite repeated reasonable modification and accommodation requests.

93. Each Defendant is directly liable for the commission of each of these unlawful practices:

    a. As a result of their own conduct;

    b. For failing to take prompt action to correct and end a discriminatory or unlawful housing practice by that defendant's agent, given their knowledge of that agent's unlawful and discriminatory conduct;

    c. For failing to take prompt action to correct and end unlawful and discriminatory housing practices; or

    d. For ratifying the unlawful or discriminatory housing practices committed by any other defendant.

94. As a result of Defendants' unlawful conduct, Mr. Smith has suffered emotional distress, including humiliations, embarrassment, mental anguish, violations of his civil rights, and loss of dignity.

95. As a result of Defendants' unlawful conduct, Mr. Smith suffered irreparable injury from the acts of discrimination by each of the defendants and will continue to suffer unless relief is provided by this Court.

96. As a result of Defendants' unlawful conduct, Mr. Smith has been deprived of the full use of his home and is entitled to damages equivalent to the rental value of an equivalent accessible home.

97. By committing the unlawful acts alleged in this complaint, defendants acted with reckless disregard for Mr. Smith's federally protected rights.

98. Further, it is likely that other disabled applicants or ReBuild NC program participants will suffer unless relief is provided by this Court to advance public interest.

## CLAIMS

### FIRST CLAIM: Federal Fair Housing Act

99. Plaintiff Arnold Smith realleges and incorporates by reference each paragraph previously alleged in this complaint.

100.    Although Defendants were required to comply with the accessibility requirements of the Fair Housing Act, they have consistently failed to do so.

101.    Each Defendant, directly or through their agents, injured Mr. Smith by violating the Fair Housing Amendments Act, 42 U.S.C. § 3601, *et seq.* by engaging in discriminatory housing practices including, but not limited to:

a.  Denying or otherwise making housing unavailable on a basis of disability in violation of 42 U.S.C. § 3604(f)(1);

b.  Discriminating against Mr. Smith in the terms, conditions or privileges in the provision of services or facilities in connection with such a dwelling, because of Mr. Smith's disability in violation of 42 U.S.C. § 3604(f)(2); and

c.  Refusing to provide reasonable accommodations to accommodate Mr. Smith's disability in violation of 42 U.S.C. § 3604(f)(3)(B).

102.    As a result of each Defendant's conduct, Mr. Smith has been injured and is an "aggrieved person" as defined by 42 U.S.C. § 3602(i).

103.    The discriminatory housing practices of each Defendant were intentional, willful, or taken in reckless disregard of the federal protected rights of Plaintiff Arnold Smith.

**SECOND CLAIM: Section 504 of the Rehabilitation Act of 1973**

104.    Plaintiff Arnold Smith realleges and incorporates by reference each paragraph previously alleged in this complaint.

105.    Each Defendant, as recipients of federal funding for the purpose of administering a federally assisted program, was required to comply with the requirements of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, including the requirement that they not discriminate based on a disability, and failed to do so.

106.    Each Defendant, directly or through their agents, injured Mr. Smith by violating Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, when they denied him the benefit of a federally assisted program, for which he is eligible, on the basis of his disability when they provided him with an inaccessible home and refused, through inaction, to make that home accessible.

**THIRD CLAIM: American with Disabilities Act of 1990**

107.     Plaintiff Arnold Smith realleges and incorporates by reference each paragraph previously alleged in this complaint.

108.     Defendants State of North Carolina and NCORR, as a program or service publicly administered were required to comply with the requirements of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*., including the requirement that they not discriminate based on a disability, and failed to do so.

109.     Defendants State of North Carolina and NCORR, directly or through their agents, injured Mr. Smith by denying him the benefit of a State-run program, for which he is eligible, on the basis of his disability.

**FOURTH CLAIM: Breach of Contract**

110.     Plaintiff Arnold Smith realleges and incorporates by reference each paragraph previously alleged in this complaint.

111.     The parties had a valid and enforceable contract to construct an improvement to real property.

112.     Defendants, directly or through their agents, injured Mr. Smith when they breached this contract by constructing a defective and unsafe dwelling on real property.

113.     N.C.G.S. § 1-50(a)(5)(b) provides a six (6) year statute of limitations for an action based on a breach of contract to construct or repair an improvement to real property.

**FIFTH CLAIM: Unfair and Deceptive Trade Practices**
**(Against Defendant Excel Only)**

114.     Plaintiff Arnold Smith realleges and incorporates by reference each paragraph previously alleged in this complaint.

115.     Defendant Excel is engaged in acts of commerce in North Carolina, including but not limited to offering their services to the public in the form of repairs, upgrades, and replacement of houses.

116.     Defendant Excel engaged in conduct that established inequitable power whereby they were responsible for the construction of the home and repeatedly refused to honor the terms of the contract, the policies of the Program, or the laws governing their conduct.

117.     Defendant Excel deliberately denied Mr. Smith the contracted-for services and refused to address the repeated concerns raised by Mr. Smith that the home did not meet the agreed-upon design and construction standards.

118.     Defendant Excel injured Mr. Smith through their deceptive acts and practices.

119.     Defendant Excel's actions as alleged in this complaint are of such substantial aggravating factors as to represent behaviors more than mere breach of contract and are precisely the unfair and deceptive practices covered by N.C.G.S. §§ 75-1.1 and 75-16.

## JURY TRIAL REQUESTED

120.     Mr. Smith requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff, by and through undersigned Counsel respectfully requests the following:

1.  Awards actual, compensatory, and statutory damages under each claim alleged herein;

2.  Awards punitive damages under the federal Fair Housing Act 42 U.S.C. §3613(c)(1);

3.  Declares that each Defendant has violated the federal Fair Housing Act;

4.  Declares that each Defendant has violated Section 504 of the Rehabilitation Act of 1974;

5. Declares that Defendants State of North Carolina and NCORR violated the American with Disabilities Act of 1990;

6. Affirmative injunctive relief to enjoin Defendants from unlawful housing practices and to require each Defendant and its partners and agents to promptly provide a wheelchair accessible home and take affirmative steps to counteract and cure their unlawful and discriminatory practices;

7. Reasonable attorneys' fees and costs; and

8. For such other and further relief as this Court may deem just and appropriate.

Respectfully submitted this on the 31st day of October 2025.

By: /s/ Ashley Denise Skaff
Ashley Denise Skaff
Legal Aid of North Carolina, Inc. – Fair Housing
2101 Angier Ave. Ste. 300
Durham, NC 27703
(984) 297-2017
Fax: (919) 861-1887
State Bar No. 54295
Attorney for the Plaintiff