DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

# REBUILD NORTH CAROLINA CDBG-DR HOUSING RECOVERY PROGRAM
# HOMEOWNER-CONTRACTOR REPLACEMENT AND ELEVATION AGREEMENT

Participant/Homeowners receiving disaster assistance that requires flood insurance to be purchased and maintained have the responsibility to notify any transferee of the requirement to obtain and maintain flood insurance in writing. Participant/Homeowners must maintain such written notification in the documents evidencing the transfer of the property, and the transferring owner may be liable if he or she fails to do so.

_____ **Initials Required**

## PREAMBLE

This Agreement entered into this __8th__ day of __April__, 20_20_, between ___Arnold Smith___ and _____ (hereinafter referred to as the "Owner"), with a primary residence located at ___1574 Savannah hits dr Kinston NC 28501___ (the "Home" or "Property"), and ___Excel___ (hereinafter the "Contractor"), having a principal place of business located at ___8641 United Plaza Blvd Baton Rouge La 70809___, for the replacement and elevation of the Home (hereinafter the "Project"). Owner and Contractor understand that the Project will be funded through an award to Owner in the amount of **$58,881.16** (hereinafter the "Contract Amount") that was made to the State of North Carolina (the "State") through the Community Development Block Grant – Disaster Recovery ("CDBG-DR") program from the U.S. Department of Housing and Urban Development ("HUD") for disaster recovery from Hurricane Matthew, which made landfall in the State on October 8, 2016, causing widespread destruction and flooding.

The North Carolina Office of Recovery and Resiliency ("NCORR") is HUD's Grantee and is responsible for administrating the CDBG-DR program. NCORR procured a construction manager, AECOM (hereinafter "CM"), to manage all housing construction, replacement and elevation work on behalf of NCORR

Owner submitted an application for disaster recovery assistance under the CDBG-DR housing program. By executing this Agreement, Owner accepts the NCORR grant determination and award amount with proposed scope of work for the replacement and elevation work pertaining to the Home.

At a closing on 7/39/2019, Owner executed a grant agreement with NCORR that authorized NCORR to: (1) proceed with replacement and elevation; (2) and assign a prequalified general contractor.  [IF ESCROW REQUIRED] Owner tendered to NCORR a check in the amount of $1,118.84 to be held in escrow to pay for part of the replacement and elevation.  [IF MOVEOUT REQUIRED] NCORR and Owner also agreed that Owner will move all personal property out of the Home on or before _____. NCORR has assigned Contractor, a licensed North Carolina general contractor, to reconstruct Owner's home.

## ARTICLE ONE

1

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

## CONTRACTOR'S SCOPE OF WORK, RESPONSIBILITIES & COVENANTS

1.1     <u>Scope of Work, Labor and Materials</u>.  Contractor shall furnish all necessary labor, materials, supervision, machinery, tools, apparatus, transportation, equipment and such other services needed to complete the work in accordance with standards, quality and State Building Code requirements specified in the work described in: Scope of Work (attached hereto as **Attachment A**); CDBG-DR Housing Recovery Program ("HRP") Bid Pricing Book referenced in NCORR's Request for Prequalification of Contractors 19-RFP-014914-GSX dated February 14, 2020 ("RFPQ"); and/or detail drawings and/or specifications. Contractor represents to Owner that it will perform the Scope of Work for the Contract Amount stated in the Preamble and in accordance with the General Terms and Conditions set forth in RFPQ, which are attached hereto "**Attachment B**" (hereinafter referred to as the "**General Conditions**").

1.2     <u>Insurance & Bond Requirements</u>.  Contractor shall obtain the insurance coverage and maintain policies set forth in Article 15 of the General Conditions (Attachment B) prior to the commencement of any work on Owner's Property. Contractor and NCORR represent to Owner that a certificate of insurance with all required insurance policies and limits has been provided and reviewed by CM prior to the issuance of the Notice to Proceed, and that Contractor or CM will provide a copy of that certificate to Owner upon request.

When required by NCORR pursuant to Article 16 of the General Conditions (Attachment B), Contractor shall secure a performance bond from a commercial surety that will guarantee to Owner and NCORR completion of this Contract in accordance with its terms and schedule, and/or a payment bond from a commercial surety that will guarantee payment to Contractor's subcontractors and suppliers for all properly performed work, material, and services used in the construction of the Project.  The performance bond and/or payment bond shall be procured by Contractor prior to the commencement of any work on the Project valued at 100% of the Contract Amount with terms therein that allow the bond amount to increase or decrease for changer orders approved during construction.

1.3     <u>Commencement of Construction</u>.   No work shall commence on the Project until Contractor receives a written **Notice to Proceed** approved by NCORR and CM in consultation and coordination with Owner and Contractor.  Contractor shall mobilize and begin work within the time period specified in said Notice but no later than 20 days from the Notice.  Contractor shall complete the Project within the time specified in the Notice, which shall be referred to as the "Completion Date."  The Completion Date may be extended by an approved change order and request for time extension by NCORR, CM and Owner as required by Articles 10 and 11 of the General Conditions (Attachment B).

(a)     <u>Vacating Home</u>.  Owner shall vacate the Home and remove all personal property, fixtures and appliances from Home on or before the date Owner gave NCORR at the closing.

(b)     <u>Mobile Storage</u>.  If included in Owner's award, NCORR, CM and Contractor will work with Owner in scheduling the delivery of a sufficiently sized mobile storage unit to the to the Property at least 25 days prior to the start of work by Contractor

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

as set forth in the Notice to Proceed, unless a shortened time period is agreed upon by the parties.

(c) <u>Moving Assistance</u>.  If Owner is eligible for moving assistance and such assistance is included in Owner award, then NCORR, CM and Contractor will work with Owner in scheduling movers to assist Owner in moving personal property, fixtures, and/or appliances to Owner's temporary housing and/or into a mobile storage unit delivered to the Property at least 25 days prior to the start of work by Contractor as set forth in the Notice to Proceed, unless a shortened time period is agreed upon by the parties.

(d) <u>Abandoned Personal Property, Fixtures and Appliances</u>.  As required in the Notice to Proceed, Contractor and Owner, along with NCORR and/or CM, if warranted, shall have a preplacement and elevation meeting at the Home.  As part of the preplacement and elevation meeting, all attendees shall, subject to any safety protocols, inspect each room of the Home including attics and crawl spaces to verify that all personal property, fixtures and appliances that Owner desires to keep have been removed from the Home. Owner shall execute a form that shall: acknowledge Contractor's right to access the Property and Home; acknowledge removal of all personal property, fixtures, and appliances; and release Contractor from liability for disposing of all remaining personal property, fixtures and appliances in the area of the Home to be replaced and elevated.

If Owner does not attend the preplacement and elevation meeting, Contractor and/or CM shall, subject to any safety protocols, inspect and videotape each room of the home including attics and crawl spaces to verify that all personal property, fixtures and appliances that Owner desires to keep have been removed from the Home.  If NCORR, CM and Contractor find personal property of value which is not obviously damaged, functional fixtures of value which are not obviously damaged, and/or functional appliances in the Home, CM/Contractor shall attempt to contact Owner to confirm intent to abandon such property, fixtures or appliances and ascertain Owner's intent to remove the subject property, fixtures or appliances prior to the commencement of work.  If Owner is unavailable, and CM and Contractor determine that construction can proceed, then Contractor shall, subject to safety protocols with respect to firearms, ammunition or other household hazardous materials, remove personal property from the Home to an area on the Property protected from the elements, to the extent possible, or take such reasonable measures to protect the property until Owner is contacted and can take possession of the property and/or securely store it on the Property.

1.4. <u>Construction Schedule</u>.  Contractor shall provide Owner, CM, and NCORR with a schedule within 10 business days following receipt of the Notice to Proceed that demonstrates Contractor's intent to complete construction within <u>150 days</u> for a **replacement and elevation** project from receipt of the Notice to Proceed.  The schedule should contain sufficient details, activities, milestones (e.g., demolition, lead abatement, dry-in, completion of rough MEP, etc.), start and finish dates for each activity shown in the schedule, payment milestones (e.g., 1/3, 2/3, and final), final inspection/completion

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

dates, and such other information that will help Owner, NCORR, subcontractors, and CM evaluate the progress of construction, coordinate work and to process payments. Owner and Contractor agree that time is of essence and that all construction on the Project shall be completed by the Completion Date in the Notice to Proceed. Owner and Contractor further agree that the process for requesting time extensions and liquidated damages ($250.00 per day) set forth in Article 11 of the General Conditions (Attachment B) apply to this Agreement but Owner and Contractor understand and acknowledge that NCORR and CM shall work with Owner and Contractor in reviewing requests for time extensions and any related change orders to minimize delays in construction and avoid the assessment of liquidated damages.

1.5    <u>Permits and Licenses</u>.  Contractor shall give any required notice and obtain all permits and licenses required for the completion of the Project prior to the commencement thereof.  (See Articles 5 and 7 of the General Conditions (Attachment B) for additional requirements applicable to this Section.)

1.6    <u>Protection of Work, Property and Public</u>.  Contractor and Owner acknowledge and agree that Contractor shall comply with all the requirements in Articles 6 and 7 of the General Conditions (Attachment B) to keep the Project (Home and Property) clean and safe for Contractor, subcontractors, inspectors, Owner, the public and/or adjoining landowners. Contractor further acknowledges that it may be liable for personal injuries, property damage, and fines for failing to comply with certain requirements, rules and regulations stated in those Articles.

As a condition of receiving federal grant funding for the construction of this Project, Contractor and Owner acknowledge and agree to comply with the safety protocols that have been developed by CM and contractors prequalified under RFPQ.  Contractor and Owner further agree that NCORR and CM may intervene in any State or federal administrative process/proceeding and/or enforce the certain requirements in Articles 6 and 7 of the General Conditions and safety protocols against Contractor and/or Owner to avoid using federal grant funds to pay for fines, penalties and/or damages that may arise from Contractor's and/or Owner's failure(s) to comply with such requirements and safety protocols.

1.7    <u>Construction Supervision and Monitoring</u>.

(a)    During construction of the Project, Contractor shall keep at the job site a competent superintendent or other satisfactory supervisory staff (hereinafter the "Contractor's Superintendent") who shall oversee Contractor's work. Contractor's Superintendent shall not be changed without the consent of CM unless said Superintendent ceases to be employed by Contractor or ceases to be competent, as determined by CM, in consultation with NCORR and/or Owner. Contractor's superintendent shall have authority to act on behalf of Contractor, and instructions, directions or notices given to him/her shall be as binding as if given to Contractor.  However, all verbal directions, instructions, and notices shall be confirmed in writing.

4

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

(b)　　Contractor and its Superintendent shall examine and study the construction documents (model or customized plans and specifications, General Conditions, and CDBG-DR Contract Provisions), and fully understand the Project's Scope of Work in order to provide constant and efficient supervision of the work.  Should Contractor and/or its Superintendent discover any discrepancies or issues of any sort in the construction documents (model or customized plans and specifications), General Conditions and/or CDBG-DR Contract Provisions, Contractor and/or Superintendent shall present such discrepancies or issues to CM, NCORR and Owner without delay so that they can be promptly resolved.

(c)　　As a condition of receiving federal grant funding for the construction of this Project, Contractor and Owner acknowledge and agree that NCORR, CM, Design Team and/or other State employees shall have the right to:

(1)　　Periodically inspect Contractor's work;

(2)　　Verify Contractor's payment applications and request supporting documentation for payment applications;

(3)　　Review and approve all change orders, claims for extra work or requests for time extension including requests for supporting documents or schedule analysis (i.e., impacts and logic);

(4)　　Answer requests for information concerning the construction documents;

(5)　　Monitor Contractor's compliance with CDBG-DR rules;

(6)　　Assist in the resolution of any dispute between Contractor and Owner;

(7)　　Conduct a financial audit of the Contract between Owner and Contractor pursuant to Article 26 of the General Conditions (Attachment B), and Paragraph 12 of the Federal Contract Terms & Requirements (Attachment C);

(8)　　Review Contractor's good faith efforts under Section 3 and State's Historically Underutilized Businesses goals.

Contractor and Owner agree that NCORR has the final authority on: using contingency to pay for changes in work or claims (contingency defined as any difference between Owner's award and the CDBG-DR HRP cap for Owner's project type), and to approve of any termination of the Agreement between Contractor and Owner.  Contractor and Owner acknowledge, understand and agree that if they should fail to comply with the CDBG-DR rules and contract provisions that HUD or NCORR may be required to stop payment to Contractor,

5

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

and/or NCORR may be required to recover from Contractor federal grant funds already paid to Contractor.

1.8    <u>Changes in Work and Payments</u>.  Contractor and Owner agree that changes in the Project's Scope of Work and payments to Contractor shall follow the processes set forth in Articles Two and Three below, and Articles 10, 11, 12, 13, and 14 of the General Conditions (Attachment B).

1.9    <u>Warranties, Instruction Manuals and Subcontractor/Supplier Releases of Claims and Liens</u>.  Contemporaneously with final inspection or final acceptance of the Project by the local building department or issuance of a certificate of occupancy, whichever is later, Contractor shall provide Owner with certificates of warranty, instruction manuals, and other documents specified in the Scope of Work and approved change orders.  If not already done through progress payments, Contractor, through final payment, shall: (i) obtain release(s) of claims or liens from subcontractors and/suppliers that acknowledge full payment of amounts due them including any retainage (the subject release may contain conditional language that the release shall become effective when full payment is received by subcontractor or supplier) and obtain all required warranties from subcontractors and suppliers; or (ii) Contractor shall comply with sub-part (i) to the extent possible and Contractor shall provide CM with an affidavit identifying the subcontractors/suppliers from whom Contractor was unable to obtain releases of claims/liens not withstanding Contractor's full payments to those subcontractors/suppliers; the warranties from these subcontractors/suppliers that Contractor was unable to obtain, and an affirmation that Contractor will obtain the warranties or provide alternative warranties/guarantees, and that Contractor will hold harmless and indemnify Owner, NCORR and/or CM from any claims from the subcontractors and suppliers identified in the affidavit to the extent Contractor has been paid for the subject work through federal grant funds and/or Owner's funds.

Contractor warrants that all materials, equipment furnished, completed systems, and work performed shall be free from defects due to faulty materials or workmanship for a period of one (1) year, and any structural work shall be similarly guaranteed for a period of ten (10) years from the date of final inspection by CM, or upon issuance of a certificate of occupancy by the authority having jurisdiction, whichever is later.  Where items of equipment or material(s) carry a manufacturer's warranty for any period in excess of one (1) year, Contractor shall deliver the manufacturer's original warranty to Owner prior to or contemporaneously with receipt of final payment from NCORR.  Contractor or manufacturer shall replace such defective equipment or materials, without cost to Owner, within the applicable warranty period.  Additionally, Owner may bring an action for latent defects caused by the negligence of Contractor that are hidden or not readily apparent to Owner and/or CM, in accordance with applicable law.

Contractor shall provide notice of the expiration of the one-year warranty to Owner six months after completion of the Project, and one month prior to the end of the one-year warranty.

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

Owner must give notice of observed defects within thirty (30) days of discovery.  In the event that Contractor should fail to make repairs, adjustments, or other work that may be made necessary by any defects, Owner may, after giving thirty (30) days' notice to Contractor, make such repairs, adjustments or other work and charge Contractor the costs thereby incurred.  Contractor shall promptly make corrections to any such defects, including the repair of any damage to other parts of the system resulting from such defects.  Owner shall have no recourse against NCORR, any other State agency or HUD to recover the costs of correcting defects subject to a warranty from Contractor and/or manufacturer.  However, NCORR may assist Owner in resolving any warranty dispute under the Dispute Resolution Process in Section 1.10 below so long as the CDBG-DR Program for Hurricane Matthew has not been closed.

Articles 12, 13, 17 and 22 of the General Conditions (Attachment B) contain further details and procedures applicable to warranties and instruction manuals.

1.10    Dispute Resolution.

(a)     Dispute Resolution Goals and Scope.  The primary goal of dispute resolution for the CDBG-DR Housing Recovery Program is to proactively avoid or mitigate claims and disputes of all parties to the construction of a Project in an effort to maximize the use of the CDBG-DR funding allocation to the State for housing recovery and construction instead of administrative costs associated with the disposition of costly construction claims and litigation.  Accordingly, the CDBG-DR dispute resolution process will achieve the foregoing goals by fairly and timely addressing: changes in work or rejection of proposed change orders; delays and requests for time extensions; CDBG-DR compliance issues; Contractor and/or subcontractor performance issues; non-conforming or deficient work issues (quality control/quality assurance); payment and nonpayment issues; warranty issues within the first year (to the extent NCORR is still implementing a CDBG-DR Housing Recovery Program); NCORR and/or CM enforcement of grant requirements; action on or disposition of audit findings; Owner complaints relating and/or arising out of the construction of the Project; and/or any other disputes or claims that arise from or relates to the Project that are not otherwise excluded below.

Unless otherwise stated, "timely" means that the entity responsible for any step in the dispute resolution process shall perform its duty within 5 business days of being tasked to resolve the subject claim(s), dispute(s) or issue(s), unless the issue(s) involve architectural, engineering, or additional testing/inspections that requires more time to complete/analyze. The foregoing time period shall run 5 business days after receipt of the professional opinion or test/inspection result by Contractor, Owner, and CM.  Even if a longer period of time is specified, all employees of CM and/or State shall, to the extent practicable, try to perform their dispute resolution tasks and duties assigned to them within 5 business days.  If the date for any act stated in the dispute resolution process falls on a Saturday,

7

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

Sunday or state holiday, then the act shall be performed on the following business day.

The claims, disputes, or issues that may be submitted under this dispute resolution process shall be limited to: Contractor-Owner disputes or claims; Contractor and/or subcontractor/supplier claims, disputes and issues related to quality of work, performance, proposed change orders, proposed requests for time extensions (i.e., delay claims), and/or payment issues; issues pertaining to construction documents or inspections between the Design Team and Contractor or Owner; grant eligibility issues relating to proposed change orders between NCORR and Owner or Contractor; any audit issue, proposed disposition of any audit finding, and/or CDBG-DR compliance action to be enforced against Contractor (including any subcontractor or supplier) by NCORR and/or any other claims, dispute, or issue as deemed necessary by and at the sole discretion of NCORR.

During such time as any dispute, issue or claim is being presented, heard, and/or considered pursuant to this Section, this Agreement shall remain in full force and effect and Contractor shall continue to perform work as directed in the Agreement.

(b)     <u>Informal Dispute Resolution Process</u>. All non-monetary matters and monetary claims, disputes or issues involving less than $50,000.00 shall be disposed of in the following manner:

(1)     The claimant must first comply with all contractual procedures, requirements, and deadlines before seeking any dispute resolution under this provision. If the claimant fails to comply with any contractual procedure or requirement and any applicable deadline has not passed, then CM shall advise claimant to comply with the contractual procedure(s) or requirement(s). If claimant has complied with the contractual procedure(s) and/or requirement(s) but was untimely in seeking dispute resolution under this provision, CM or NCORR, at its discretion, may waive the untimely submission for good cause shown by claimant and/or a determination that it is in the best interest to consider the submission if doing so will progress the Project to completion. If a claimant fails to comply with the contract requirements and an applicable deadline, then the submission shall be automatically rejected absent good cause shown and a showing that the claimant's failure to comply with the contract requirements and deadline were caused by events or persons outside claimant's control (negligence of claimant's employees or representatives shall constitute good cause). Owner will be afforded greater leniency

8

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

when considering issues of noncompliance with contract requirements and deadlines than Contractor.

(2)     The claimant shall submit to CM a short written statement of the claim(s), dispute(s) or issue(s) and/or attach the document(s) reflecting or containing the claim(s), dispute(s) or issue(s) (e.g., rejected change order request, rejected request for time extension and a schedule narrative/time impact analysis supporting a delay claim, notice of deficiency or non-conforming work, request for information, unpaid invoice or payment application, audit finding, etc.).

(3)     CM shall investigate the claim, dispute or issue within ten (10) calendar days and the investigation may include but is not limited to: requesting a written response from any party to the claim, dispute or issue within this time period; requesting a conference call or meeting with all parties to the claim, dispute or issue; and/or consult with NCORR on issues involving CDBG-DR compliance.

(4)     After the investigation, CM shall issue a summary decision disposing of the claim, dispute or issue with a notice informing the claimant and respondent(s) regarding how to appeal CM's decision to NCORR.

(5)     If claimant or respondent elects to appeal CM's decision, then the party taking the appeal shall, in writing, explain the parts of CM's decision that are at issue on appeal.  The appeal to NCORR shall be heard an NCORR Program Delivery employee, or a designee within NCORR or other management employee of another State agency with subject matter expertise (hereinafter "Grant Manager") within ten (10) calendars days of receipt of the appeal in an effort to settle the dispute.  If the claimant and respondent cannot settle the dispute at this hearing, then Grant Manager shall render a final summary decision that will be binding on claimant and respondent with no further rights of appeal.

(6)     None of the process described above shall be construed as a contested case, proceeding, or formal administrative hearing under the North Carolina Administrative Procedures Act in Chapter 150B of the General Statutes.  All parties to the Contract and CDBG-DR Housing Recovery Program grant award to Owner understand and acknowledge that the foregoing dispute resolution process is intended to be an informal settlement process of claims, disputes and issues.

(c)     Formal Dispute Resolution Process.  All monetary claims, disputes or issues involving more than $50,000.00 shall be disposed of in the following manner:

(1) to (4) The claimant and respondent must first comply with and exhaust steps 1 through 4 of the Informal Dispute Process set forth in Section 1.10(b) and

9

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

complete the process below prior to commencing any civil action in the Superior Court for county where the Project is located.

(5)     If claimant or respondent elects to appeal CM's decision, then the party taking the appeal shall, in writing, explain the parts of CM's decision that are at issue on appeal. The appeal to NCORR shall be heard by Grant Manager within ten (10) calendar days of receipt of the appeal in an effort to settle the dispute. If the claimant and respondent cannot settle the dispute at this hearing, then Grant Manager shall render a summary decision.

(6)     The claimant and respondent may agree to the final summary decision of Grant Manager and shall proceed to implement the decision including executing a change order. If the claimant or respondent disagree with Grant Manager's decision, that party may request non-binding mediation of the dispute and the mediator's fees shall be equally split between the parties, but NCORR, at its discretion, may pay Owner's share of the mediator's fee if NCORR finds the issues to be mediated in favor of Owner.

(7)     If the mediation results in an impasse, then the parties may commence a civil action in Superior Court to resolve the dispute within 60 days. The failure of the parties to commence a civil action within 60 days after mediation shall render Grant Manager's summary decision final and binding on the parties, thereby barring any civil action. If the parties reach a settlement agreement at mediation, then CM shall implement that agreement through a change order, subject to any grant limitations and/or caps.

(8)     The parties are cautioned that NCORR reserves the right to withhold funding if the claimed proposed change order, proposed request for time extension/delay claim, and/or alleged damages for breach of contract will exceed any allocated contingency for the Project and/or CDBG-DR Housing Recovery Program funding cap for Owner's Project type. Therefore, all parties are strongly encouraged to resolve all disputes, claims or issues as quickly as possible to avoid funding being withdrawn.

(d)     <u>Exclusions</u>.  Owner shall not use this dispute resolution process to seek rescission or modification of the original grant award and Scope of Work. The dispute resolution process shall not affect, impact or delay any claims submitted under any insurance policy, payment bond, performance bond and/or negligence claim against any State agency or employee under the State Tort Claims Act, N.C. Gen. Stat. §§ 143-291 *et seq.* This dispute resolution process shall not apply to any state or federal administrative proceeding, civil action and/or criminal prosecution relating to any violation of state or federal law arising out of or related to the

10

Project (e.g., enforcement of environment laws, false claim act violations or other waste of public funds, administrative investigation by a licensing board, etc.) This dispute resolution process shall not apply to claims or disputes that did not arise out of or relate to the construction of the Project, this Agreement, the grant agreement between NCORR and Owner, and/or the CDBG-DR funding for this Project (e.g., claims to foreclose deeds of trust, tax liens, property distribution order by family or probate courts, etc.).

1.11 <u>Terminations</u>.

(a) <u>Termination for Convenience</u>. Owner may terminate this Agreement for convenience at any time by giving at least seven (7) days' notice in writing to the other Party.

If this Agreement is terminated for convenience, Contractor will be paid for all work properly performed and in place at the Project site as of the date of the termination and reasonable demobilization costs included in Contractor's general conditions in its payment application's schedule of values. Unless the notice directs otherwise in the notice, Contractor shall immediately stop placing of orders for materials, facilities and supplies for delivery to the Project.

(b) <u>Termination for Cause/Default</u>. Owner agrees and Contractor understands that NCORR through CM, may act on behalf of Owner to enforce Contractor's performance under this Agreement, including action to terminate this Agreement for cause or default to protect Owner's interest in the Property and/or the expenditure of federal CDBG-DR grant funds. An action to terminate the Agreement for cause may arise if any of the following occur:

(1) Contractor is adjudged as bankrupt, or if it makes a general assignment for the benefit of its creditors, or if a receiver is appointed because of its insolvency;

(2) Contractor persistently or repeatedly refuses or fails, except in cases for which extension of time is provided, to supply enough skilled labor or proper materials;

(3) Contractor materially fails to pay its subcontractors or suppliers;

(4) Contractor persistently performs substandard work, that is, work that materially departs from the approved Construction Documents and/or uses materials not specified in the Construction Documents;

(5) Contractor persistently disregards laws, ordinances, rules, regulations or orders of any public authority having jurisdiction;

11

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

(6)     Contractor materially violates the Project's safety protocols and/or federal/state safety standards or rules that results in a personal injury, death or significant property damage;

(7)     Contractor has persistently been found in noncompliance with the Federal Contract Terms and Requirements (Attachment C), in particular CDBG-DR requirements of this Agreement;

(8)     Contractor has materially and substantially breached the Contract; and

(9)     Contractor fails to so prosecute the Work as to ensure its completion by the Completion Date as extended by approved change order(s).

<u>Procedures</u>.  On behalf of Owner and without prejudice to any right or remedy of Owner, NCORR or CM shall give Contractor and its surety (if any) a seven-day written notice, certified mail return receipt requested, to the last known business address of Contractor as well as by email, of the intent to terminate the Agreement for any cause set forth above except for causes (1) and (6).  The seven-day notice shall provide Contractor with a date certain by which it must cure the stated causes for termination and that failure to do so by that date will allow termination of the Agreement without any further notices to cure.  If Contractor fails to cure the stated causes for default by the specified date(s), then NCORR or CM shall notify Contractor and surety (if any) in writing that the Agreement has been terminated for cause/default and surety (if any) shall take over completion of the Project within seven calendar days.  Should surety fail to take over the Project within seven (7) days after default termination of Contractor, NCORR, on behalf of Owner, through CM, shall arrange for the completion of the Project and take possession of the Project site and of all materials, and/or equipment on the site which has been purchased and paid for by NCORR.  CM shall also issue a change order deducting the cost thereof from the unpaid Contract Amount including earned but unpaid retainage.  Contractor and its surety (if any) shall not be entitled to any further payment from NCORR until all costs of completing the Work shall have been paid.  If the unpaid balance of the Contract Amount exceeds the costs of finishing the Work, such excess shall be paid to Contractor or its Surety as applicable after final inspection and issuance of certificate of occupancy by the local building department, whichever is later. If such costs exceed the unpaid Contract Amount, Contractor or its surety shall pay the difference to NCORR.  If NCORR, on behalf of Owner, sues Contractor or Surety to recover the excess costs, then Contractor and Surety shall pay all litigation costs, liquidated damages and/or actual damages incurred by NCORR and/or Owner in the successful recovery of such costs and/or damages, including reasonable attorney's fees.  Except further performance of the work and related contractual provisions, all other obligations of Contractor shall survive the

12

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

termination of the Contract, and in particular those pertaining to auditing requirements and CDBG-DR compliance.

(c)      The surety shall take over completion of the Project within seven days upon receipt of a notice from NCORR or Contractor by certified mail return receipt requested, regular mail, or by any other means that the surety received notice of Contractor's bankruptcy/insolvency and/or a significant negligence claim resulting from Contractor's failure to comply with safety protocols, standards and/or rules (i.e., causes for default items (1) or (6)). Should surety fail to take over the Project, NCORR, through CM, shall arrange for the completion of the Project and take possession of the Project site and, subject to any bankruptcy trustee order and/or order of receivership, CM shall take possession of all materials, and/or equipment on the site which have been purchased and paid for by NCORR. CM shall also issue a change order deducting the cost thereof from the unpaid Contract Amount, including earned but unpaid retainage. Contractor and its surety (if any) shall not be entitled to any further payment from NCORR until all costs of completing the Work shall have been paid. If the unpaid balance of the Contract Amount exceeds the costs of finishing the Work, such excess shall be paid to Contractor or its Surety as applicable after final inspection and issuance of certificate of occupancy by the local building department, whichever is later. If such costs exceed the unpaid Contract Amount, Contractor or its surety shall pay the difference to NCORR. If NCORR, on behalf of Owner, sues Contractor or Surety to recover the excess costs, then Contractor and Surety shall pay all litigation costs, liquidated damages and/or actual damages incurred by NCORR and/or Owner in the successful recovery of any costs and/or damages, including reasonable attorney's fees. Except further performance of the work and related contractual provisions, all other obligations of Contractor shall survive the termination of the Contract, and in particular those pertaining to auditing requirements and CDBG-DR compliance.

(d)      <u>Termination by Contractor</u>. If the work is stopped for a period of sixty (60) days under an order of any court or public authority having jurisdiction, or as a result of an act of government, such as a declaration of a national emergency making materials unavailable, through no act or fault of Contractor or a Subcontractor or their agents or employees or any other persons performing any of the Work under a contract with Contractor, then Contractor may, upon seven (7) additional days written notice to NCORR, provide directly or through CM, Contractor's intent to terminate the Contract and request a final payment from NCORR for all work completed and properly performed through the date work stopped and demobilization costs included in Contractor's general conditions costs in its payment applications schedule of values. Verification of work completed will be made by CM. If the cause of the work stoppage is removed prior to the end of the seven (7) day period, Contractor may not terminate the Contract.

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

# ARTICLE TWO

## OWNER RESPONSIBILITIES, COVENANTS AND WARRANTIES

2.1     <u>Preplacement and elevation</u>.

(a)     <u>Acceptance of Award & Notice to Proceed</u>.  By executing this Agreement, Owner waives any right to appeal the award or Scope of Work.  Owner's award and Scope of Work may include authorization for a mobile storage unit and/or moving services.  If mobile storage and/or moving services are not a part of the award and Scope of Work, Owner must make arrangements to provide such storage on or off the Project site and move all personal property, fixtures and/or appliances from the Home prior to the preplacement and elevation schedule.

Owner will: select finishes (e.g., flooring materials, tile, countertops, etc.), fixtures (e.g., lighting, faucets, etc.), appliances (if authorized in award), certain hardware, paint colors, and all other options available to Owners and/or offered by Contractor assigned to replace and elevate Owner's Home.  Owner understands that once the selections are made and Contractor places orders to procure the building materials, equipment, appliances (if eligible), finishes, fixtures and all other Owner selected options, **<u>Owner shall not be allowed to make any changes or substitutions to these selections and NCORR will not approve any change orders to Owner's selections during construction</u>**.

Owner acknowledges that hundreds of homes must be constructed under the State's CDBG-DR Housing Recovery Program over the next four years by NCORR, CM and the prequalified contractors (including Contractor). Accordingly, Owner agrees that they shall not ask Contractor to: perform any work that was not included in Owner's award and/or Scope of Work and approved Change Orders; Owner shall not hire Contractor to perform additional work outside of this Agreement prior to completion of the work under this Contract; and Owner shall not self-perform any type of construction work while Contractor is performing the Contract at the Property.  Owner may do work not covered by the Scope of Work and any Construction Document (model and/or customized home plans and specifications) after final inspections by CM and/or NCORR and/or issuance of a certificate of occupancy by the local building department, whichever is later.

Owner shall also provide NCORR, CM and Contractor with a date to move personal property from the Home (hereinafter the "Moving Date"). NCORR/CM shall issue a Notice to Proceed to Contractor and Owner after Owner has made the selections noted above and has coordinated Owner's Moving Date.  **<u>Owner shall: (i) remove all pets from the Home; properly and lawfully remove all firearms and ammunition from the Home; and properly and lawfully remove and/or dispose of hazardous household materials prior to the start of Construction.</u>**

14

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

(b)    Preplacement and Elevation Meeting.  Owner shall attend the preplacement and elevation meeting that is scheduled by CM in consultation with Contractor and Owner.  Prior to the meeting and in accordance with the Notice to Proceed, Owner shall have made arrangements to vacate the Home and/ormove personal property, fixtures and/or appliances from the Home prior to the preplacement and elevation meeting. The preconstruction meeting which will be scheduled 5 business days before the start of construction or on such date as mutually agreed to by CM, Contractor and Owner.

At the preplacement and elevation meeting, Owner will inspect the Property with Contractor to review the Scope of Work and verify that all personal property that Owner desires to keep has been removed and securely stored on or off the Project site.  CM and/or Contractor shall go over the Construction Schedule (a copy should be provided to Owner at the meeting) and all safety protocols should Owner desire to visit the Project site during construction. Owner shall certify that there has been no change in ownership since receiving NCORR's grant award letter.

Owner and Contractor shall make arrangements for Contractor to access the Home to be replaced and elevated by: : (i) allowing Contractor to change the lock(s) to the door(s) that will give Contractor access to the Home, provided that Contractor supply Owner with a spare key (Preferred Method); or (ii) Owner shall provide a key to Contractor and Contractor shall return that key to Owner. Except for during winter conditions, Owner shall allow Contractor to use, at no cost, existing utilities such as light, heat, power, and water necessary to carry out and complete the work.  In winter, Contractor should minimize heating loss during construction to the extent possible (e.g., keep workers from leaving doors and windows open during construction), and Contractor may reimburse Owner's additional heating costs.  The additional heating costs shall be limited to the amount over Owner's average monthly heating bill for the months of December, January and February (if Owner does not have prior winter bills to compare to the current bills and/or cannot obtain the information from its utility supplier for heating, then NCORR/CM may estimate the average monthly cost for a similarly sized home, occupancy load, and heating method to calculate an average at a monthly rate that Contractor can use to reimburse Owner for the extra heating costs).

2.3    Access to the Property.  On the start date for construction, Owner shall grant full access to the Property and Home to any authorized employees, representatives or agents of Contractor, subcontractors/suppliers, CM, NCORR and/or employees of federal, state or local governmental entities with appropriate legal authority as may be required to make inspections of the construction or Property, and/or for auditing and/or monitoring and compliance with CDBG-DR requirements.  Access to the Property and notices of intent to access to the Property shall be made in accordance with the safety protocols, NCORR's grant agreement with Owner, and Notice to Proceed.

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

Owner agrees to cooperate with Contractor and CM, and not to unreasonably interfere with or delay the work on the Project or inspections of the Home and Property during construction. Owner shall be permitted access to the Property during construction but must comply with Contractor's safety protocols at all times and Owner should make reasonable efforts to schedule a visit to the Project Site with Contractor. Owner understands that safety protocols and/or Contractor insurance requirements prohibit Owner from accessing the construction outside the presence of Contractor and/or its subcontractors including during those hours when no work is being performed.

Contractor shall, in a professional and courteous manner, raise with Owner any safety issues, concerns, delays and/or problems Contractor and/or its subcontractors have experienced concerning Owner's access or visits to the Project site. If Contractor's efforts to resolve these matters with Owner has not resulted in Owner's compliance with the access limitation and/or safety protocols, Contractor shall provide notice to CM and NCORR. CM and/or NCORR may take the actions set forth in the grant agreement to obtain Owner's compliance with the limitations of access and/or safety protocols, including but not limited to: (i) requiring Owner to vacate Home/revoke access to the Homes unless visits are coordinated with Contractor and/or CM; or (ii) authorize a reduction in Contractor's scope of work in a manner that will not prevent the issuance of a certificate of occupancy in order to overcome delays to the schedule and/or offset the costs of delays/interference caused by Owner (e.g., Owner may be required to provide a comparable amount of labor hours to perform final interior painting that is comparable to the delay and/or lack of productive work or rework caused by Owner's actions.

2.4     Change Orders and Contingency. Grant funds will only pay for work outlined in the Scope of Work and approved Change Orders. Owner may not request any change order for work of any kind that is outside the Scope of Work for the Project and which does not result from a concealed/unknown condition that was not discovered during Contractor's/NCORR's damage assessment of the Property/Home. Owner agrees that changes in work shall be controlled by the process in Article 10 of the General Conditions (Attachment B). Owner further agrees that NCORR shall have sole discretion to use other funds as a source of contingency funds to pay for changes approved under Article 10 of the General Conditions, and that the maximum amount of contingency for Owner's Project shall be the difference (if any) between the grant award amount accepted by Owner and the CDBG-DR Housing Recovery Program maximum cost (i.e., cap) for Owner's project type to the extent there are CDBG-DR funds available for the Housing Recovery Program for Owner's type of Project.

Subsequent Change Orders represent the entire Grant Agreement between the parties for the replacement and elevation of their damaged home under the CDBG-DR Housing Program. Owner(s) understand and acknowledge that any and all change orders made subsequent to the Original Grant Agreement will be incorporated herein by reference.

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

2.5    Indemnification.

(a)    Personal Injuries, Property Damage and Motor Vehicle Accident.  Owner agrees
to hold harmless Contractor; subcontractors; suppliers; any employee or
contractor to NCORR, NCORR or any other State agency; or any third-party for
claims of damages for arising from or related to personal injuries, property
damage, damage to motor vehicles, wrongful death, and such other tort claim
caused by Owner at the Project site during Construction (including inspections).

(b)    Environmental. Owner indemnifies and holds harmless Contractor or any
employee or contractor to NCORR,  or any other State agency against any
liabilities, losses, damages, costs, or expenses, including attorney's fees, arising
out of or in connection with the presence of hazardous materials or waste at the
Property that Owner failed to properly and/or lawfully dispose of prior to
construction that were subject to federal, state, or municipal statutes, regulations,
rules, laws, or proceedings related to environmental matters.  Owner's
indemnification for damages and/or costs associated with the abatement of
hazardous materials or waste shall survive the completion of this Agreement and
expiration of the grant agreement between Owner and NCORR as may be
required by federal and/or state laws.

## ARTICLE THREE
## FINANCIAL ASSISTANCE

3.1    Grant Award.  NCORR agreed to award Owner CDBG-DR funds in the form of a
Homeowner Replacement and Elevation Grant in the sum of $58,881.16, In addition,
Owner agreed to provide escrow funding in the amount of $1,118.84, to the ReBuild
North Carolina Housing Recovery Program, which will be used to pay Contractor the
Contract Amount under this Agreement. This amount may be amended by a fully
executed Change Order.

3.2    Disbursement of Grant Award for Contractor Payments.   Subject to compliance with the
terms and conditions of all CDBG-DR Housing Recovery Program policies and
procedures and all Agreements incorporated herein by reference, and the deduction of
any Duplication of Benefits, NCORR shall authorize the disbursement of the grant award
to Contractor for completion of the Project, which shall be used by Contractor solely for
the replacement and elevation of the Property with the Scope of Work, any approved
Change Orders, and Contractor's covenants and certifications contained in RFPQ, all of
which are incorporated into this Agreement by reference.

3.3    Change in Contract Price.   The Grant Award is the agreed-upon price for the Project
authorized by this Agreement and may be changed only by approved Change Order(s).

17

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

Except in an emergency endangering life or property, Contractor shall make no changes to the Scope of Work outside an approved Change Order.  The value of any work covered by an authorized Change Order, either additive or deductive, shall be based on the final Bid Book Pricing and agreed to by Contractor in RFPQ. Subsequent Change Orders shall then represent the entire Grant Agreement between the parties for the replacement and elevation of their damaged home under the CDBG-DR Housing Program. Owner(s) understand and acknowledge that any and all change orders made subsequent to the Original Grant Agreement will be incorporated herein by reference.

3.4     <u>CDBG-DR Rules & Contract Provisions</u>.  As a condition of the Grant and payment of Contractor's work with grant funds, Owner and Contractor agree to comply with the Federal Contract Terms and Requirements (Attachment C), and in particular CDBG-DR rules, procedures and/or requirements to the extent they are applicable to this Agreement and/or Scope of Work (Attachment A).

## ARTICLE FOUR

## MISCELLANEOUS PROVISIONS

4.1     <u>Nonwaiver</u>.  Nothing in this Agreement may be construed as a waiver or limitation of sovereign immunity of the State or federal governments.  The State is not legally responsible for the actions or omissions of any Contractor, subcontractor, third-party or their designees in the replacement and elevation of Owner's damaged property.

4.2.    <u>Severability.</u>  If any provision of this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, then said provision shall be of no effect, but all remaining provisions shall remain enforceable.

4.3     <u>Multiple Owners</u>.  If there is more than one Owner, the obligations contained herein and under other Project Documents shall be joint and several.

4.4     <u>Notices</u>.  Except as otherwise noted, any notice to Owner or Contractor pursuant hereto or pursuant to any of the Project Documents may be served in person, via email or by mail.  Any such requirement shall be deemed met by any written notice personally served at the residence of Owner or at such other address as Owner shall notify NCORR of, or if mailed to Owner at _____ or at such other address as provided above.  Any notice to Contractor shall be addressed to _____, and may be deemed served by personally serving a representative of Contractor at the Project site or by mailing Contractor at the address provided above.   Notices to CM shall be addressed to AECOM NC-CDBG Disaster Management, 1600 Perimeter Park Dr, Morrisville, NC 27560.

4.5     <u>Number and Captions</u>.  The singular includes the plural and captions for sections are included only for reference and do not modify or effect the terms, conditions and provisions of any document, agreement or instrument.

4.6     <u>Modification</u>.  This Agreement or related construction documents may not be modified or amended in any manner except in an executed change order made pursuant to Article 10 of the General Conditions (Attachment B).

4.7     <u>Assignment</u>.  This Agreement and any of the documents related hereto and the rights, duties, or obligations thereunder may not be assigned by Owner or Contractor without the written consent of NCORR.  Any assignment made without the written consent of NCORR shall be void and of no force or effect.

4.8     <u>Entire Agreement</u>.  This Agreement is between Owner and Contractor.  Owner and Contractor recognize and understand that this Agreement includes the CDBG-DR Program Policies and Procedures that are referenced herein, Attachments hereto and on ReBuild NC website (in particular the State's Action Plan (as amended) and Housing Recovery Program Manual (as amended)), and the construction documents. These documents constitute the entire Agreement and all prior agreements and/or oral representation/agreements are merged into this Agreement.

4.9     <u>Choice of Law and Venue</u>.     This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina.  Venue for any action or proceeding arising under this Agreement shall be in the courts of the State of North Carolina in the County where the Property is located.


**IN WITNESS WHEREOF,** the parties hereto make and enter into this Agreement.

OWNER(s):

_____      4/8/2020

Name:  Arnold Smith          Date
                                                         

_____      _____

Name:                                    Date


CONTRACTOR:

Excel
_____      (Trade Name or Corporate Name)

19

BY: _____  (signature)

Name:   ~~Gentry Russo~~

Title   Construction Manager

Date:   4/8/2020
_____

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

**ATTACHMENT A**

**SCOPE OF WORK**

[INSERT SCOPE INCLUDED IN OWNER'S AWARD PACKAGE]

 **Estimated Cost of Repairs**

The North Carolina Homeowner Assistance Program

| | |
|---|---|
| Applicant: | Arnold Smith |
| Property: | 1574 Savannah Heights Drive |
| | Kinston, NC 28501 |
| Assessor: | Calvin Smith |

**Applicant Number:** 02980        **Type of Loss:** Hurricane

| | |
|---|---|
| Date of Loss: | 10/8/2016 |
| Date Inspected: | 12/3/2018 |
| Price List: | NCFA8X_JUN18 |
| | Restoration/Service/Remodel |
| Estimate: | 02980_ESX |



**Estimated Cost of Repairs**

The North Carolina Homeowner Assistance Program

All Program-funded properties must comply with Green Building Standards as required by 81 Fed. Reg. 83254, Sec. VI, no. 28(a)–(d). To meet these requirements, NCORR has adopted the ENERGY STAR Certified Home Standard for reconstruction projects (see Appendix M for Energy Star Checklist). Rehabilitation projects must apply the HUD CPD Green Building Retrofit Checklist (see Appendix N). Green Building Standards will be applied as described below.

Homes reconstructed by the ReBuild NC Program will be designed to meet the Energy Star Certified Home Standard (see checklist in Appendix M). As part of this process, all house plans available for selection will be reviewed and certified as compliant prior to use by the Program and all required materials, products, and labor needed to meet Green Building Standards will be properly scoped. Program inspectors will ensure that reconstructed homes meet checklist requirements by evaluating compliance with Green Building Standards at each construction draw request. A copy of the certified house plan and checklist will be uploaded to each applicant file prior to construction closeout. Contractors not adhering to these standards will be sanctioned by the program.

All homes rehabilitated by the ReBuild NC Program will be scoped to meet the requirements of the HUD CPD Green Building Retrofit Checklist (see Appendix N) which requires Contractors to meet Green Building Standards when replacing items on the checklist as scoped in Xactimate. During the course of construction, Contractors will be responsible for filling in information on the form and collecting all necessary documentation regarding materials used to rehabilitate the home in order to ensure that the Program is meeting the requirements of the HUD Green Building Retrofit Checklist. All items listed on the form that do not apply or are not being replaced should be marked as not applicable on this form. A copy of the completed checklist and documentation must be provided to the Construction Manager prior to the final inspection. As part of this process, the Contractor will be required to certify that the materials and or products installed, as itemized in their Estimated Cost of Repair (ECR) meet the Green Building Retrofit Checklist. In addition, Contractors are required to collect any material and or product specification sheets to support meeting the Green Building Standards and must submit them during the Construction Closeout Process. Contractors not adhering to these standards will be sanctioned by the program.

Xactimate pricing is in accordance with the requirements found in the Green Building Standards.



Bedroom 3

Bathroom 2

BR 2 CL

Bedroom 2

Hallway 1

Living Room

Kitchen

Hallway

Utility Room

Laundry Room

UT CL

Bedroom 1

BR 1 CL (1)

Bathroom 1 (1)

Bathroom 1

3/4/2019

02980_ESX

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF
Main Level

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF
Knot



F1 (A)

RoofI

F2 (B)

77'-11"

81"

9'-6"

9'-6"

N

02980_ESX

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

**ATTACHMENT B**

**CONSTRUCTION GENERAL CONDITIONS**

**ARTICLE 1 - WORKING DRAWINGS AND SPECIFICATIONS AT THE JOB SITE**

a.  Contractor shall maintain, in readable condition at his job office, one complete set of working drawings and specifications for his work including all shop drawings. Such drawings and specifications shall be available for use by Contractor, designer, CM and/or NCORR.  A copy of the plans and specifications shall be provided to Owner.

b.  Contractor shall maintain at the job office a day-to-day record of work-in-place that is at variance with the contract documents. Such variations shall be fully noted on project drawings by Contractor and submitted to the designer and CM upon project completion and no later than thirty (30) days after acceptance of the project.

c.  Contractor shall maintain at the job office a record of all required tests or special inspections that have been performed, clearly indicating the scope of work inspected and the date of approval or rejection. Contractor shall make these tests and special inspection reports available to CM, NCORR, the Authority Having Jurisdiction ("AHJ") and Owner upon request.

**ARTICLE 2 - OWNERSHIP OF DRAWINGS AND SPECIFICATIONS**

a.  State Construction Documents.  All drawings and specifications are instruments of service and remain the property of Contractor, CM, and/or its designer, but Owner has a license to use drawings and specifications for future renovation or work at Home.  Owner's use of these instruments on work other than this contract without permission of Contractor is prohibited.

b.  Contractor Construction Documents.  All drawings and specifications provided by Contractor in the construction of a Project remain intellectual or proprietary property of Contractor, CM, and/or its designer.  Contractor, CM, and/or its designer grant a limited license to Owner to use drawings and specifications for future renovation or work at Home.  Owner use of these plans and specifications on work other than this Contract without permission of Contractor is prohibited and Owner is prohibited from selling Contractor's plans and specifications.

**ARTICLE 3 - MATERIALS, EQUIPMENT, EMPLOYEES**

a.  Contractor shall, unless otherwise specified, supply and pay for all labor, transportation, materials, tools, apparatus, lights, power, heat, sanitary facilities, water, scaffolding and incidentals necessary for the completion of his work, and shall install, maintain and remove all equipment of the construction, other utensils or things, and be responsible for the safe, proper and lawful construction, maintenance

22

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

and use of the same, and shall construct in the best and most workmanlike manner, a complete job and everything incidental thereto, as shown on the plans, stated in the specifications, or reasonably implied therefrom, all in accordance with the contract documents.

b.  All materials shall be new and of quality specified, except where reclaimed material is authorized herein and approved for use.  Workmanship shall at all times be of a grade accepted as the best practice of the particular trade involved, and as stipulated in written standards of recognized organizations or institutes of the respective trades except as exceeded or qualified by the specifications.

c.  Upon notice, Contractor shall furnish evidence as to quality of materials.

d.  Products are generally specified by ASTM or other reference standard and/or by manufacturer's name and model number or trade name.  When specified only by reference standard, Contractor may select any product meeting this standard, by any manufacturer.  When several products or manufacturers are specified as being equally acceptable, Contractor has the option of using any product and manufacturer combination listed.  However, Contractor shall be aware that the cited examples are used only to denote the quality standard of product desired and that they do not restrict bidders to a specific brand, make, manufacturer or specific name; that they are used only to set forth and convey to bidders the general style, type, character and quality of product desired; and that equivalent products will be acceptable.  Request for substitution of materials, items, or equipment shall be submitted to the CM for approval or disapproval; such approval or disapproval shall be made by the CM prior to the opening of bids. Alternate materials may be requested after the award if it can clearly be demonstrated that it is an added benefit to Owner and the CM and Owner approves.

e.  CM and/or NCORR shall be the judge of equality for proposed substitution of products, materials or equipment and whether they comply with CDBG-DR, HRP and/or grant eligibility rules, requirements and/or standards.

## ARTICLE 4 - ROYALTIES, LICENSES AND PATENTS

It is the intention of the contract documents that the work covered herein will not constitute in any way infringement of any patent whatsoever unless the fact of such patent is clearly evidenced herein.  Contractor shall protect and save harmless Owner, CM, NCORR, the State of North Carolina and/or U.S. Department of Housing and Urban Development against suit on account of alleged or actual infringement.  Contractor shall pay all royalties and/or license fees required on account of patented articles or processes, whether the patent rights are evidenced hereinafter.

## ARTICLE 5 - PERMITS, INSPECTIONS, FEES, REGULATIONS

a.  Contractor shall give all notices and comply with all laws, ordinances, codes, rules and/or regulations bearing on the conduct of the work under this contract.  If

23

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

Contractor observes that the drawings and specifications are at variance therewith, he shall promptly notify the CM in writing. *See* Instructions to Bidders, Paragraph 3, Bulletins and Addenda. Any necessary changes required after contract award shall be made by change order in accordance with Article 10. If Contractor performs any work knowing it to be contrary to such laws, ordinances, codes, rules and regulations, and without such notice to the CM, he shall bear all costs arising therefrom. Additional requirements implemented after bidding will be subject to equitable negotiations.

b. All work under this contract shall conform to the North Carolina State Building Code and other State, local and national codes as are applicable. The cost of all required inspections and permits shall be the responsibility of Contractor and be included within the bid proposal. All water taps, meter barrels, vaults and impact fees shall be paid by Contractor and included within the bid proposal unless otherwise noted.

## ARTICLE 6 - PROTECTION OF WORK, PROPERTY AND THE PUBLIC

a. Contractor shall be responsible for the entire site and the building or construction of the same and provide all the necessary protections, as required by Owner, CM or designer, and by laws or ordinances governing such conditions. Contractor shall be responsible for any damage to Owner's property, or of that of others on the job, by them, their personnel, or their subcontractors, and shall remedy such damages. Contractor shall be responsible for and pay for any damages caused to Owner. Contractor shall have access to the project at all times.

b. Contractor shall provide cover and protect all portions of the structure when the work is not in progress, provide and set all temporary roofs, covers for doorways, sash and windows, and all other materials necessary to protect all the work on the building, whether set by him, or any of the subcontractors. Any work damaged through the lack of proper protection or from any other cause, shall be repaired or replaced without extra cost to Owner.

c. No fires of any kind will be allowed inside or around the operations during the course of construction without special permission from Owner and/or CM.

d. Contractor shall protect all trees and shrubs designated to remain in the vicinity of the operations by building substantial boxes around the same. Contractor shall barricade all walks, roads, etc., as directed by the CM to keep the public away from the construction. All trenches, excavations or other hazards in the vicinity of the work shall be well barricaded and properly lighted at night.

e. Contractor shall provide all necessary safety measures for the protection of all persons on the job, including the requirements of the A.G.C. *Accident Prevention Manual in Construction*, as amended, and shall fully comply with all state laws or regulations and North Carolina State Building Code requirements to prevent accident or injury to persons on or about the location of the work. Contractor shall clearly mark or post signs warning of existing hazards, and shall barricade excavations,

24

elevator shafts, stairwells and similar hazards. Contractor shall protect against damage or injury resulting from falling materials and he shall maintain all protective devices and signs throughout the progress of the work.

f.   Contractor shall adhere to the rules, regulations and interpretations of the North Carolina Department of Labor relating to Occupational Safety and Health Standards for the Construction Industry (Title 29, Code of Federal Regulations, Part 1926, published in Volume 39, Number 122, Part II, June 24, 1974, *Federal Register*), and revisions thereto as adopted by General Statutes of North Carolina 95-126 through 155.

g.   Contractor shall designate a responsible person of his organization as safety officer/inspector to inspect the project site for unsafe health and safety hazards, to report these hazards to Contractor for correction, and whose duties also include accident prevention on the project, and to provide other safety and health measures on the project site as required by the terms and conditions of the contract. The name of the safety inspector shall be made known to CM and Owner at the time of the preplacement and elevation conference and in all cases prior to any work starting on the project.

h.   In the event of an emergency affecting the safety of life, the protection of work, or the safety of adjoining properties, Contractor is hereby authorized to act at his own discretion, without further authorization from anyone, to prevent such threatened injury or damage.  Any compensation claimed by Contractor on account of such action shall be determined as provided for under Article 10(b).

i.   Any and all costs associated with correcting damage caused to adjacent properties of the construction site or staging area shall be borne by Contractor.  These costs shall include but not be limited to flooding, mud, sand, stone, debris, and discharging of waste products.

## ARTICLE 7 - SEDIMENTATION POLLUTION CONTROL ACT OF 1973

a.   Any land-disturbing activity performed by Contractor in connection with the project shall comply with all erosion control measures set forth in the contract documents and any additional measures which may be required in order to ensure that the project is in full compliance with the Sedimentation Pollution Control Act of 1973, as implemented by Title 15, North Carolina Administrative Code, Chapter 4, Sedimentation Control, Subchapters 4A, 4B and 4C, as amended (15 N.C.A.C. 4A, 4B and 4C).

b.   Upon receipt of notice that a land-disturbing activity is in violation of said act, Contractor shall be responsible for ensuring that all steps or actions necessary to bring the project in compliance with said act are promptly taken.

c.   Contractor shall be responsible for defending any legal actions instituted pursuant to N.C. Gen. Stat. §113A-64 against any party or persons described in this article.

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

d.   To the fullest extent permitted by law, Contractor shall indemnify and hold harmless Owner, CM, designer and the agents, consultants and employees of Owner, CM, and designer from and against all claims, damages, civil penalties, losses and expenses, including, but not limited to, attorneys' fees, arising out of or resulting from the performance of work or failure of performance of work, provided that any such claim, damage, civil penalty, loss or expense is attributable to a violation of the Sedimentation Pollution Control Act.  Such obligation shall not be construed to negate, abridge or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or persons described in this article.

## ARTICLE 8 - INSPECTION OF THE WORK

a.   It is a condition of this contract that the work shall be subject to inspection during normal working hours and during any time work is in preparation and progress by Contractor, designer, designated official representatives of CM, AHJ, NCORR, Owner and those persons required by state law to test special work for official approval.  Contractor shall therefore provide safe access to the work at all times for such inspections.  Owner must give advance notice to Contractor and/or CM to ensure Owner safety pursuant to OSHA requirements.

b.   Where special inspection or testing is required by virtue of any state laws, instructions of the designer and/or CM, specifications or codes, Contractor shall give adequate notice to the designer and CM of the time set for such inspection or test, if the inspection or test will be conducted by a party other than the designer and/or CM. Such special tests or inspections will be made in the presence of the CM, or his authorized representative or designer (if necessary) and it shall be Contractor's responsibility to serve ample notice of such tests.

e.   All laboratory tests shall be paid for by Contractor unless provided otherwise in the contract documents, including laboratory tests to establish design mix for concrete, and for additional tests to prove compliance with contract documents where materials have tested deficient, except when the testing laboratory did not follow the appropriate ASTM testing procedures.

f.   Should any work be covered up or concealed prior to inspection and approval by AHJ and CM (when required by the contract) and/or special inspector such work shall be uncovered or exposed for inspection, if so requested by AHJ (verbally or in writing) or CM (in writing).  Inspection of the work will be made upon notice from Contractor.  All cost involved in uncovering, repairing, replacing, recovering and/or restoring to design condition the work that has been covered or concealed will be paid by Contractor involved.

## ARTICLE 9 - CONTRACTOR AND SUBCONTRACTOR RELATIONSHIPS

a.   Contractor agrees that the terms of its contract with Owner shall apply equally to each subcontractor as to Contractor, and Contractor agrees to take such action as may be necessary to bind each subcontractor to these terms.  Contractor further agrees to conform to the Code of Ethical Conduct as adopted by the Associated General

Contractors of America, Inc., with respect to contractor-subcontractor relationships, and that payments to subcontractors shall be made in accordance with the provisions of G.S. 143-134.1 titled Interest on final payments due to prime contractors: payments to subcontractors.

b.  Within seven days of receipt by Contractor of each periodic or final payment, Contractor shall pay the subcontractor based on work completed or services provided under the subcontract.  Should any periodic or final payment to the subcontractor be delayed by more than seven days after receipt of periodic or final payment by Contractor, Contractor shall pay the subcontractor interest, beginning on the eighth day, at the rate of one percent (1%) per month or fraction thereof on such unpaid balance as may be due. CM and NCORR shall not be liable for interest resulting from Contractor's failure to pay any subcontractor.

c.  NCORR will retain no more than five (5) percent of progress payments from Contractor, which will be released upon final acceptance of the HRP project.  Should Contractor fail to perform work under the contract, substantially delay completion of the work, or fail to correct non-conforming work in a timely manner, NCORR, through CM, may use retainage to correct non-conforming work and/or complete performance of the contract. The percentage of retainage on payments made by Contractor to the subcontractor shall not exceed the percentage of retainage on payments made by NCORR to Contractor.  Any percentage of retainage on payments made by Contractor to the subcontractor that exceeds the percentage of retainage on payments made by NCORR to Contractor shall be subject to interest to be paid by Contractor to the subcontractor at the rate of one percent (1%) per month or fraction thereof.

d.  Nothing in this section shall prevent Contractor, at the time of application and certification to CM and NCORR, from withholding application and certification to NCORR for payment to the subcontractor for unsatisfactory job progress; defective construction not remedied; disputed work; third-party claims filed or reasonable evidence that claim will be filed; failure of subcontractor to make timely payments for labor, equipment and materials; damage to contractor or another subcontractor; reasonable evidence that subcontract cannot be completed for the unpaid balance of the subcontract sum; or a reasonable amount for retainage not to exceed the initial percentage retained by NCORR.

## ARTICLE 10 - CHANGES IN THE WORK

a.  NCORR, through CM, may make changes to the work covered by the contract. These changes will not invalidate any portion of the contract and will not relieve or release Contractor from any guarantee given by it pertinent to the contract provisions.  These changes will not affect the validity of the guarantee bond and will not relieve the surety or sureties of said bond.  All extra work shall be executed under conditions of the original contract.

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

b. Except in an emergency endangering life or property, no change shall be made by Contractor except upon receipt of an approved change order or written field order from CM authorizing such change. No claim for adjustments of the contract price shall be valid unless this procedure is followed.

A field order, transmitted by fax, electronically, or hand delivered, may be used where the change involved impacts the critical path of the work. A formal change order shall be issued as expeditiously as possible.

In the event of an emergency endangering life or property, Contractor may be directed to proceed on a time and materials basis, whereupon Contractor shall proceed and keep accurately, on such form as specified by CM and/or NCORR, a correct account of costs, together with all proper invoices, payrolls and supporting data. Upon completion of the work, the change order will be prepared as outlined under either Method "c(1)" or Method "c(2)" or both.

c. In determining the values of changes, either additive or deductive, Contract shall be based on the final Bid Pricing Book except for in unusual circumstances.

d. Should below grade concealed conditions be encountered in the performance of the work, or should concealed or unknown conditions in an existing structure be at variance with the conditions indicated by the contract documents, the contract sum and time for completion may be equitably adjusted by change order upon claim by either party made within thirty (30) days after the condition has been identified. All change orders shall be supported by a unit cost breakdown showing method of arriving at net cost as defined above.

e. In all change orders, Contractor will provide such proposal and supporting data in suitable written format. CM shall verify correctness. Delay in the processing of the change order due to lack of proper submittal by Contractor of all required supporting data shall not constitute grounds for a time extension or basis of a claim. Within fourteen (14) days after receipt of Contractor's accepted proposal, including all supporting documentation required by CM, CM shall prepare the change order and forward to Contractor for his signature or otherwise respond, in writing, to Contractor's proposal. Within seven (7) days after receipt of the change order executed by Contractor, CM's representative shall certify the change order by his or her signature, and forward the change order and all supporting data to NCORR for its review of CDBG-DR, HRP and/or grant eligibility compliance and, if compliant, NCORR will sign the change order and the revised scope of work may proceed. If the change order is denied, then Contractor shall not proceed with the work. In case of emergency or extenuating circumstances, approval of changes may be obtained verbally by telephone or via field orders approved by all parties, and then shall be substantiated in writing as outlined under normal procedure.

f. A change order, when issued, shall include full compensation, or credit, for the work included, omitted or substituted. It shall show on its face the adjustment in time for completion of the project as a result of the change in the work.

28

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

g.    Contractor understands and acknowledges that any and all change orders made subsequent to this Grant Agreement or Program shall be incorporated herein by reference into this original Grant Agreement. Subsequent Change Orders shall then represent the entire Grant Agreement between the parties for the replacement and elevation of their damaged home under the CDBG-DR Housing Program.

## ARTICLE 11 - TIME OF COMPLETION, DELAYS, EXTENSION OF TIME

a.    Contractor shall commence work to be performed under this agreement on a date to be specified in a written Notice to Proceed from CM and shall fully complete all work hereunder within the time of completion stated in the Contract. Time is of the essence and Contractor acknowledges Owner will likely suffer financial damage for failure to complete the work within the time of completion. For each day in excess of the above number of days, Contractor shall pay the sum of $250.00 per day as liquidated damages reasonably estimated in advance to cover the losses incurred by Owner by reason of failure of said Contractor to complete the work within the time specified, such time being in the essence of this contract and a material consideration thereof. This amount shall be deducted from the next draw request by Contractor. If Contractor disputes the calculation of liquidated damages, then Owner may recover actual damages.

b.    If Contractor is delayed at any time in the progress of his work solely by: any act or negligence of Owner, CM or NCORR; by changes ordered in the work; by labor disputes at the project site; by abnormal weather conditions not reasonably anticipated for the locality where the work is performed; by unavoidable casualties; by any causes beyond Contractor's control; or by any other causes which CM and Owner determine may justify the delay, then the contract time may be extended by change order only for the time which CM and NCORR may determine is reasonable.

Time extensions will not be granted for rain, wind, snow or other natural phenomena of normal intensity for the locality where work is performed. For purposes of determining the extent of delays attributable to unusual weather phenomena, a determination shall be made by comparing the weather for the contract period involved with the average of the preceding five (5) year climatic range during the same time interval based on the National Oceanic and Atmospheric Administration National Weather Service statistics for the locality where work is performed and on daily weather logs kept on the job site by Contractor reflecting the effect of the weather on progress of the work and initialed by the CM's representative. No weather delays shall be considered after the building is dried-in unless work claimed to be delayed is on the critical path of the baseline schedule or approved updated schedule. Time extensions for weather delays, acts of God, labor disputes, fire, delays in transportation, unavoidable casualties or other delays which are beyond the control of Owner do not entitle Contractor to compensable damages for delays. Any Contractor claim for compensable damages for delays is limited to delays caused solely by Owner or its agents. Contractor caused delays shall be accounted for before Owner or CM caused delays in the case of concurrent delays.

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

c. Requests for extensions of time shall be made in writing to CM, with copies provided to NCORR and Owner, within fifteen (15) days following cause of delay. The request must contain a brief description of: the event or situation that caused the delay; how the event and situation impacted critical work needed to complete the Project on time as such work is reflected in the schedule or reasonably inferred from the progress of construction; a statement of Contractor's inability to perform other work to mitigate the impact of the event or situation causing delay; a statement that Contractor (including employees, subcontractors, or suppliers) were not the cause of the event or situation; and such other additional work and costs incurred by Contractor resulting from the event or situation delaying Contractor's work. **Contractor understands that the failure to provide a timely request with the requested details and cost information shall result in rejection of the request absent a reasonable and substantiated explanation for the lack of timeliness which was caused by events, situations or persons outside Contractor's control. Contractor further understands that the payments made under this Contract are from a federal grant administered by a State agency and, as a result, Contractor understands that any requests for time extensions are subject to the State and federal False Claims Acts and auditing requirements.**

d. If a performance or payment bond has been provided by Contractor for this Project, then Contractor shall notify its surety in writing of any extension of time that is granted by NCORR.

## ARTICLE 12 – APPLICATIONS FOR PAYMENT

a. Contractor shall submit to CM a request for payment for work done on a schedule agreed upon by Contractor and CM.  The request shall be in the form agreed upon between Contractor and CM, but shall show substantially the value of work done and materials delivered to the site during the period since the last payment, and shall sum up the financial status of the contract with the following information:

   1. Total value of contract, including change orders.

   2. Value of work completed to date.

   3. Less five percent (5%) retainage.

   4. Less previous payments.

   5. Current amount due.

b. Contractor, upon request of CM, shall substantiate the request with invoices of vouchers or payrolls or other evidence including compliance with federal prevailing wage laws.

c. Prior to submitting the first request, Contractor shall prepare for CM a schedule of values (SOV) showing a breakdown of the contract price into values of the various parts of the work, so arranged as to facilitate payments to Contractor and

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

subcontractors.  Contractor shall list the value of each subcontractor and supplier, identifying each minority business subcontractor and supplier.

d.  When payment is made on account of stored materials and equipment, such materials must be stored on Owner's property, and the requests for payments shall be accompanied by invoices or bills of sale or other evidence to establish Owner's title to such materials and equipment.  Such payments will be made only for materials that have been customized or fabricated specifically for this project. Raw materials or commodity products, including but not limited to piping, conduit, CMU, metal studs and gypsum board may not be submitted. Responsibility for such stored materials and equipment shall remain with Contractor regardless of ownership title. Such stored materials and equipment shall not be removed from Owner's property.

e.  NCORR will direct CM to withhold retainage up to the statutory amount of five percent (5%) to ensure a prequalified contractor's completion of the project and/or to resolve any disputes with Owner and subcontractors.

## ARTICLE 13 - CERTIFICATES OF PAYMENT AND FINAL PAYMENT

a.  Within five (5) days from receipt of request for payment from Contractor (or other date set by Contractor, CM and NCORR), Contractor shall issue and forward to CM a certificate for payment.  This certificate shall indicate the amount requested by Contractor.  If the certificate is not approved by CM, CM shall state in writing to Contractor and Owner his reasons for withholding payment.

b.  No certificate issued or payment made shall constitute an acceptance of the work or any part thereof until issuance of a certificate of occupancy issued by AHJ, and CM and NCORR closeout the contract (warranties and guarantees shall remain in effect after contract closeout).  The making and acceptance of final payment shall constitute a waiver of all claims by Contractor against Owner, CM and/or NCORR except:

1.  Claims arising from unsettled liens or claims against Contractor.

2.  Faulty work or materials appearing after final payment.

3.  Failure of Contractor to perform the work in accordance with drawings and specifications, such failure appearing after payment.

4.  As conditioned in any payment bond.

c.  Contractor shall forward to CM and NCORR the final application for payment along with the following documents:

1.  List of minority business subcontractors and material suppliers showing breakdown of contract amounts and total actual payments to subs and material suppliers.

31

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

2. Affidavit of Release of Liens.

*3.* Affidavit of Contractor of payment to material suppliers and subcontractors.

4. Consent of Surety to Final Payment**.**

5. Certificates of state agencies required by state law.

6. If applicable, Asbestos Manifest from a permitted disposal facility.

7. Warranty certification by homeowner.

8. Homeowner Acceptance of Work.

## ARTICLE 14 - PAYMENTS WITHHELD

a. CM, with the approval of NCORR may withhold payment for the following reasons:

1. Faulty work not corrected.

2. The unpaid balance on the contract is insufficient to complete the work in the judgment of the designer and/or CM.

3. To provide for sufficient contract balance to cover liquidated damages that will be assessed.

4. Payment documentation has not been submitted by the contractor or is unacceptable.

5. Non-compliance with contractual requirements.

b. When grounds for withholding payments have been removed, payment will be released.

## ARTICLE 15 - MINIMUM INSURANCE REQUIREMENTS

**COVERAGE -** During the term of the Contract, Contractor, at its sole cost and expense shall provide commercial insurance of such type and with such terms and limits as may be reasonably associated with the Contract. At a minimum, Contractor shall provide and maintain the following coverage and limits and obtain the required performance bond.

a. **Worker's Compensation -** Contractor shall provide and maintain Worker's Compensation insurance, as required by the laws of North Carolina, as well as employer's liability coverage with Insurance minimum limits of $500,000.00, covering all of Contractor's employees who are engaged in any work under this contract.

32

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

     b.      **Commercial General Liability** – Contractor shall maintain General Liability Coverage on a Comprehensive Broad Form on a cost occurrence basis in the minimum amount of $5,000,000.00, Combined Single Limit. (Defense cost shall be in excess of the limit of liability.)

     c.      **Automobile** – Contractor shall maintain automobile insurance, to include liability coverage, covering all owned, hired, and non-owned vehicles used in connection with this contract. The minimum combined single limit shall be $500,000.00 bodily injury and property damage; $500,000.00 uninsured/under insured motorist; and $10,000.00 medical payment.

     d.      **Property Insurance (Builder's Risk/Installation Floater) -** Contractor shall purchase and maintain property insurance until final acceptance, upon the entire work at the site to the full insurable value thereof. This insurance shall include the interests of Owner, Contractor, the subcontractors and sub-subcontractors in the work and shall insure against the perils of fire, wind, rain, flood, extended coverage, and vandalism and malicious mischief. If Owner is damaged by failure of Contractor to purchase or maintain such insurance, then Contractor shall bear all reasonable costs properly attributable thereto. Contractor shall affect and maintain similar property insurance on portions of the work stored off the site when request for payment per articles so includes such portions.

     e.      **Deductible-**Any deductible, if applicable to loss covered by insurance provided, is to be borne by Contractor.

**<u>REQUIREMENTS</u> -** Providing and maintaining adequate insurance coverage is a material obligation of Contractor and is of the essence of this Contract. All such insurance shall meet all laws of the State of North Carolina. Such insurance coverage shall be obtained from companies that are authorized to provide such coverage and that are authorized by the Commissioner of Insurance to do business in North Carolina. Contractor shall at all times comply with the terms of such insurance policies, and all requirements of the insurer under any such insurance policies, except as they may conflict with existing North Carolina laws or this Contract. The limits of coverage under each insurance policy maintained by Contractor shall not be interpreted as limiting Contractor's liability and obligations under the Contract.

After NCORR's assignment of the Contract to Contractor and prior to performance of the contract, Contractor shall provide proof of the foregoing insurance coverages by providing CM with a certificate of insurance. Contractor shall provide a copy of the certificate of insurance upon request of Owner or Owner's attorney. If any personal injury or property damage or claim of such injury or damage should occur during construction of the Project, Contractor shall provide upon request of NCORR, CM, subcontractor, any employee of an entity inspecting the property or providing architectural, engineering and/or land surveying services (including but not limited to State employees, employees of any authority having jurisdiction), Owner, and/or any attorney representing Owner a complete copy of any insurance policy that may provide coverage for the injury, damages and/or claim.

NOTE: The State Tort Claims Act, N.C. Gen. Stat. §§ 143-291 et seq., may apply to any incident involving any State employees who may be at the Project site during construction for purposes of performing CDBG-DR grant monitoring/compliance work and/or inspection of construction if he/she allegedly caused property damage or personal injury. However, the State of North Carolina and the U.S. Department of Housing and Urban Development are not liable for any personal injury, property damage, any other tort claim, or breach of this Contract by virtue of funding any portion of the construction via the CDBG-DR award to Owner.

## ARTICLE 16 - PAYMENT & PERFORMANCE BONDS

a.      NCORR, through CM, will require Contractor to furnish a payment bond executed by a surety company authorized to do business in North Carolina. The bond shall be for the full contract amount. The bond shall be executed in the form as required by NCORR. Payments bonds will be required for major replacement and elevation projects.

b.      All bonds shall be countersigned by an authorized agent of the bonding company who is licensed to do business in North Carolina.

c.      **Performance Bond–**NCORR, through CM, will require Contractor to furnish a performance bond executed by a surety company authorized to do business in North Carolina. The performance bond shall be for the full contract amount. Contractor shall submit a sample performance bond and sample power of attorney to NCORR and CM for review and approval.

## ARTICLE 17 - CONTRACTOR'S AFFIDAVIT

The final payment of retained amount due Contractor on account of the contract shall not become due until Contractor has furnished to CM, NCORR and Owner an affidavit signed, sworn and notarized to the effect that all payments for materials, services or subcontracted work in connection with his contract have been satisfied, and that no claims or liens exist against Contractor in connection with this contract. In the event that Contractor cannot obtain similar affidavits from subcontractors to protect Contractor and Owner from possible liens or claims against the subcontractor, Contractor shall state in his affidavit that no claims or liens exist against any subcontractor to the best of Contractor's knowledge, and if any appear afterward, Contractor shall hold Owner harmless.

## ARTICLE 18 - USE OF PREMISES

a.      Contractor shall confine its equipment, the storage of materials, and the operations of its workmen to limits indicated by law, ordinances, permits or directions of AHJ, CM, NCORR and Owner and shall not exceed those established limits in his operations.

34

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

b.   Contractor shall not load or permit any part of the structure to be loaded with a weight that will endanger its safety.

c.   Contractor shall enforce CM's, NCORR's and Owner's instructions regarding signs, advertisements, fires and smoking.

d.   No firearms, any type of alcoholic beverages, or drugs (other than those prescribed by a physician) will be permitted at the job site.

## ARTICLE 19 - CUTTING, PATCHING AND DIGGING

a.   Contractor shall do all cutting, fitting or patching of his work that may be required to make its several parts come together properly and fit it to receive or be received by work of other subcontractors shown upon or reasonably implied by the drawings and specifications for the completed structure, as the designer or CM may direct.

b.   Any cost brought about by defective or ill-timed work shall be borne by the party responsible therefore.

c.   Contractor should coordinate the work of the subcontractors to avoid unnecessary cutting, fitting or patching so that Contractor avoids damaging the work of its subcontractors, and subcontractors avoid damaging the work of Contractor and/or other subcontractors.

## ARTICLE 20 - UTILITIES, STRUCTURES, SIGNS

a.   If the house is unoccupied, Contractor shall provide necessary and adequate facilities for water, electricity, gas, oil, sewer and other utility services which may be necessary and required for completion of the project, including all utilities required for testing, cleaning, balancing, and sterilization of designated plumbing, mechanical and electrical systems. Any permanent meters installed shall be listed in Contractor's name until work has a final acceptance. Contractor will be solely responsible for all utility costs prior to final acceptance. Contractor shall contact all affected utility companies prior to bid to determine their requirements to provide temporary and permanent service and include all costs associated with providing those services in their bid. Coordination of the work of the utility companies during construction is the sole responsibility of Contractor.  If occupied, CM, Contractor and Owner must reach an agreement as to apportionment of utilities, which must be included in the contract before replacement and elevation begins.

b.   Meters shall be relisted in Owner's name on the day following final acceptance, and Owner shall pay for services used after that date.

## ARTICLE 21 - CLEANING UP

a.   Contractor shall keep the building and surrounding area reasonably free from rubbish at all times, and shall remove debris from the site on a timely basis or when directed

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

to do so by CM.  Contractor shall provide an onsite refuse container(s) for the use of all contractors.  Contractor shall remove rubbish and debris from the building on a daily basis.  Contractor shall broom clean the building as required to minimize dust and dirt accumulation.

b.  Contractor shall provide and maintain suitable all-weather access to the building.

c.  Before final inspection and acceptance of the building, Contractor shall clean the work area, including glass, hardware, fixtures, masonry, tile and marble (using no acid), clean and wax all floors as specified, and completely prepare the building for use by Owner, with no cleaning required by Owner.

## ARTICLE 22 - GUARANTEE

a.  Contractor shall unconditionally guarantee materials and workmanship against patent defects arising from faulty materials, faulty workmanship or negligence for a period of twelve (12) months following the date of final acceptance of the work or beneficial occupancy and shall replace such defective materials or workmanship without cost to Owner.  Contractor shall provide a ten (10) year warranty for all structural work performed under the Contract.

b.  Where items of equipment or material carry a manufacturer's warranty for any period in excess of twelve (12) months, then the manufacturer's warranty shall apply for that particular piece of equipment or material.  Contractor shall replace such defective equipment or materials, without cost to Owner, within the manufacturer's warranty period.

c.  Additionally, Owner may bring an action for latent defects caused by the negligence of Contractor which are hidden or not readily apparent to Owner or CM at the time of final acceptance, whichever occurred first, in accordance with applicable law.

d.  Guarantees for roof, equipment, materials, and supplies shall be stipulated in the specifications sections governing such roof, equipment, materials, or supplies. Contractor shall also provide all instruction manuals stipulated in the specification sections and/or that were furnished to Contractor from the manufacturer (e.g., hot water heaters, HVAC units, electrical equipment or fixtures, plumbing equipment and fixtures, appliances, etc.).

## ARTICLE 23 – WOMEN AND MINORITY BUSINESS PARTICIPATION

2 C.F.R. § 200.321 requires that all necessary affirmative steps are taken to assure that minority and women's businesses are used when possible, and N.C. Gen. Stat. 143-128.2 establishes a ten percent (10%) goal for participation by minority and women owned businesses in total value of work for the HRP.  The document, *Guidelines for*

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

*Recruitment and Selection of Minority Businesses for Participation in State Construction Contracts,* including Affidavits, is found on the N.C. State Construction Office website.


## ARTICLE 24 – CONTRACTOR EVALUATION

Contractor's overall work performance on each assigned or awarded HRP project/contract shall be fairly evaluated in accordance with the State Building Commission policy and procedures for determining continued prequalification for future work in the HRP. Contractor Evaluation Procedures are hereby incorporated and made a part of Contractor's approval of its application for prequalification. CM and NCORR will evaluate Contractor's performance.


## ARTICLE 25 – GIFTS

Pursuant to N.C. Gen. Stat. § 133-32, it is unlawful for any vendor or contractor (i.e. architect, bidder, contractor, construction manager, design professional, engineer, subcontractor, supplier, vendor, etc.), to make gifts or to give favors to any State employee. This prohibition covers those vendors and contractors who: (1) have a contract with a governmental agency; or (2) have performed under such a contract within the past year; or (3) anticipate bidding on such a contract in the future. For additional information regarding the specific requirements and exemptions, vendors and contractors are encouraged to review G.S. Sec. 133-32.

During the construction of the Project, CM, Contractor and subcontractors are prohibited from making gifts to any employees of NCORR, and/or any other State employee from any other State Agency that may have any involvement, influence, responsibilities, oversight, management and/or duties that pertain to and/or relate to the contract administration, financial administration and/or disposition of claims arising from and/or relating to the Contract and/or Project. In addition, Contractors are prohibited from making gifts to the Owner at any time. Contractors in violation of this provision of the agreement will be removed from participation in the program and reported to the HUD Office of Inspector General for investigation.


## ARTICLE 26 – AUDITING-ACCESS TO PERSONS AND RECORDS

In accordance with 2 C.F.R. § 200.501 and N.C. Gen. Stat. §147-64.7, the Office of the Inspector General (OIG), State Auditor, NCORR, or other applicable state agency internal auditors, or HUD shall have access to CM's and Contractor's officers, employees, agents and/or other persons in control of and/or responsible for Contractor's records that relate to this Contract for purposes of conducting audits under the referenced statute. HUD and NCORR internal auditors shall also have the right to access and copy CM and Contractor records relating to the Contract and Project during the term of the Contract and within five years following the completion of the Project/close-out of the Contract to verify accounts, accuracy, information, calculations and/or data affecting

37

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

and/or relating to CM and Contractor requests for payment, requests for change orders, change orders, claims for extra work, requests for time extensions and related claims for delay/extended general conditions costs, claims for lost productivity, claims for loss efficiency, claims for idle equipment or labor, claims for price/cost escalation, pass-through claims of subcontractors and/or suppliers, and/or any other type of claim for payment or damages from CM, NCORR, and/or Owner.

## ARTICLE 27 – NORTH CAROLINA FALSE CLAIMS ACT

The False Claims Act (31 U.S. Code § 3729) and the North Carolina False Claims Act ("NCFCA"), N.C Gen. Stat. § 1-605 through 1-618, apply to this Contract. Contractor should familiarize itself with the False Claims Act and the NCFCA and should seek the assistance of an attorney if it has any questions regarding the NCFCA and its applicability to any requests, demands and/or claims for payment it submits to the State through the contracting state agency, institution, university or community college.

The purpose of the NCFCA "is to deter persons from knowingly causing or assisting in causing the State to pay claims that are false or fraudulent and to provide remedies in the form of treble damages and civil penalties when money is obtained from the State by reason of a false or fraudulent claim." (Section 1-605(b).) Contractor's liability under the NCFCA may arise from, but is not limited to: requests for payment, invoices, billing, claims for extra work, requests for change orders, requests for time extensions, claims for delay damages/extended general conditions costs, claims for loss productivity, claims for loss efficiencies, claims for idle equipment or labor, claims for price/cost escalation, pass-through claims of subcontractors and/or suppliers, documentation used to support any of the foregoing requests or claims, and/or any other request for payment from the State through the contracting state agency, institution, university or community college.

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

# ATTACHMENT C

# FEDERAL CONTRACT TERMS & REQUIREMENTS

1.  <u>Flood Disaster Protection</u>.  This Contract is subject to the requirements of the Flood Disaster Protection Act of 1973 (P.L. 93-234).  Nothing included as a part of this Contract is approved for acquisition or construction purposes as defined under Section 3(a) of said Act, for use in an area identified by the Secretary of HUD as having special flood hazards which is located in a community not then in compliance with the requirements for participation in the National Flood Insurance Program pursuant to Section 201 (d) of said Act; and the use of any assistance provided under this Contract for such acquisition for construction in such identified areas in communities then participating in the National Flood Insurance Program shall be subject to the mandatory purchase of flood insurance requirements or Section 102(a) of said Act.

    Any contract or agreement for the sale, lease, or other transfer of land acquired, cleared or improved with assistance provided under this Contract shall contain, if such land is located in an area identified by the Secretary as having special flood hazards and in which the sale of flood insurance has been made available under the National Flood Insurance Act of 1968, as amended, 42 U.S.C 4001 et seq., provisions obligating the transferee and its successors or assigns to obtain and maintain, during the ownership of such land, such flood insurance as required with respect to financial assistance for acquisition or construction purposes under Section 102(a) of Flood Disaster Protection Act of 1973.

2.  <u>Section 503 of the Rehabilitation Act of 1973 (29 U.S.C. 793)</u>.  Contractor will not discriminate against any employee or applicant for employment because of a physical or mental handicap in regard to any position for which the employee or applicant for employment is otherwise qualified. Contractor agrees to take affirmative action to employ, advance in employment and otherwise treat qualified handicapped individuals without discrimination based upon their physical or mental handicap in all employment practices such as the following: employment upgrading, demotion or transfer, recruitment, advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship.

    Contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Act.

    In the event of Contractor's noncompliance with the requirements of this clause, actions for noncompliance may be taken in accordance with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Act.

    Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices in a form to be prescribed by NCORR, provided by or through the Program Administrator.  Such notices shall state Contractor's obligation under the law to take affirmative action to employ and advance in employment qualified

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

handicapped employees and applicants for employment, and the rights of applicants and employees.

Contractor will notify each labor union or representative of workers with which it has a collective bargaining agreement or other contract understanding, that Contractor is bound by the terms of Section 503 of the Rehabilitation Act of 1973, and is committed to take affirmative action to employ and advance in employment physically and mentally handicapped individuals.

Contractor will include the provisions of this clause in every subcontract or purchase order of $10,000 or more unless exempted by rules, regulations, or orders of the Secretary issued pursuant to Section 503 of the Act, so that such provisions will be binding upon each Subcontractor or Contractor. Contractor will take such action with respect to any subcontract or purchase order as the Director of the Office of Federal Contract Compliance Programs may direct to enforce such provisions, including action for noncompliance.

3.    Age Discrimination Act of 1975.  Contractor shall comply with the provisions of the Age Discrimination Act of 1975.  No person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving federal financial assistance.

4.    Discrimination Due to Beliefs.  No person with responsibilities in the operation of the project to which this grant relates will discriminate with respect to any program participant or any applicant for participation in such program because of political affiliation or beliefs.

5.    Certification of Nonsegregated Facilities.  By the submission of this Proposal, Contractor certifies that it does not maintain or provide for its establishments, and that it does not permit employees to perform their services at any location, under its control, where segregated facilities are maintained. Contractor certifies further that it will not maintain or provide for employees any segregated facilities at any of its establishments, and it will not permit employees to perform their services at any location under its control where segregated facilities are maintained.  Contractor agrees that a breach of this certification is a violation of the equal opportunity clause of this Contract.

As used in this certification, the term "segregated facilities" means any waiting rooms, work areas, restrooms and washrooms, restaurants and other eating areas, time clocks, locker rooms, and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation and housing facilities provided for employees which are segregated by explicit directive or are, in fact, segregated on the basis of race, color, religion, or national origin because of habit, local customs or any other reason.

Contractor further agrees that (except where he has obtained identical certifications from proposed Subcontractors and material Suppliers for specific time periods), he will obtain

40

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

identical certifications from proposed Subcontractors or material Suppliers prior to the award of subcontracts or the consummation of material supply agreements exceeding $10,000, which are not exempt from the provisions of the Equal Opportunity clause, and that he will retain such certification in his files.

6.      <u>Drug Free Workplace</u>. Contractor hereby certifies that it shall provide a drug-free workplace in compliance with the Drug-Free Workplace Act of 1988, as amended, and with 24 C.F.R. Part 21.

7.      <u>Contractor Work Hours, Safety, and Protection of Lives and Health</u>. For construction contracts over $100,000, Contractor shall comply with all standards and regulations applicable to the working hours of laborers and mechanics required by 40 U.S.C. 3702 and 3704, as supplemented by the Department of Labor regulations (29 C.F.R. Part 5). In general, these regulations and standards require Contractor to pay a basic rate for the first 40 hours of a standard 40-hour work week, and a rate of not less than one and half times the basic pay rate for hours worked in excess of 40 hours.

Contractor shall exercise proper precaution at all times for the protection of persons and property and shall be responsible for all damages to persons or property, either on or off the worksite, which occur as a result of his prosecution of the work. The safety provisions of applicable laws and building and construction codes, in addition to specific safety and health regulations described by Chapter XIII, Bureau of Labor Standards, Department of Labor, Part 1518) Safety and Health Regulations for Construction, as outlined in the Federal Register, Volume 36, No. 75, Saturday, April 7, 1971, Title 29 – LABOR, shall be observed and Contractor shall take or cause to be taken, such additional safety and health measures as NCORR may determine to be reasonably necessary.

8.      <u>Danger Signals and Safety Devices</u>. Contractor shall make all necessary precautions to guard against damages to property and injury to persons. Contractor shall put up and maintain in good condition, sufficient red or warning lights at night, suitable barricades and other devices necessary to protect the public. In case Contractor fails or neglects to take such precautions, NCORR may have such lights and barricades installed and charge the cost of this work to Contractor. Such action by NCORR does not relieve Contractor of any liability incurred under these specifications or contract.

9.      <u>Lead Based Paint Hazards</u>. The replacement and elevation of residential structures is subject to the HUD Lead-Based Paint regulations, 24 C.F.R. Part 35. Contractor and its Subcontractors shall comply with the provisions for the elimination and reduction of lead-based paint hazards under Subpart B of said regulations.

10.      <u>Compliance with Air and Water Acts</u>. For each home replacement and elevation Owner-Contractor Agreement over $100,000, Contractor and all of its Subcontractors shall comply with the requirements of the Clean Air Act, as amended, 42 U.S.C. 1857 et seq., the Federal Water Pollution Control Act, as amended, 33 U.S.C. 1251 et seq., and the regulations of the Environmental Protection Agency with respect thereto, at 40 C.F.R. Part 15, as amended.

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

In addition to the foregoing requirements, all nonexempt Contractors and Subcontractors shall furnish to NCORR, the following:

10.1    A stipulation by Contractor or its Subcontractors, that any facility to be utilized in the performance of any nonexempt contract or subcontract, is not listed on the List of Violating Facilities issued by the Environmental Protection Agency (EPA) pursuant to 40 C.F.R. Part 15, as amended.

10.2    An agreement by Contractor to comply with all the requirements of Section 114 of the Clean Air Act, as amended, (42 U.S.C. 1857 c-8) and Section 308 of the Federal Water Pollution Control Act, as amended, (33 U.S.C. 1318) relating to inspection, monitoring, entry, reports and information, as well as all other requirements specified in said Section 114 and Section 308, and all regulations and guidelines issued thereunder.

10.3    A stipulation that as a condition for the award of the contract, prompt notice will be given of any notification received from the Director, Office of Federal Activities, EPA, indicating that a facility utilized, or to be utilized for the Contract, is under consideration to be listed on the EPA List of Violating Facilities.

10.4    An agreement by Contractor that he will include, or cause to be included, the criteria and requirements in paragraph (1) through (4) of this section in every nonexempt subcontract and requiring that Contractor will take such action as the government may direct as a means of enforcing such provisions.

11.    Energy Efficiency (42 U.S.C. 6201).  Contractor shall comply with mandatory standards and policies relating to energy efficiency which are contained in the state energy conservation plan issued in compliance with the Energy Policy and Conservation Act (Public Law 94- 163).

12.    Access to Records, Maintenance of Records.  NCORR and HUD, the Comptroller General of the United States, or any of their duly authorized representatives, shall have access to any books, documents, papers and records of Contractor which are directly pertinent to this Contract, for the purpose of audits, examinations, and making excerpts and transcriptions.

All records required by 24 C.F.R. 570.506 that are pertinent to the activities funded under this Contract shall be maintained in a central location by Contractor and will be maintained for a period of five (5) years from closeout of the grant from which this Contract is funded.

13.    Copyright.  No State provided materials, including but not limited to reports, maps, documents, home plans and specifications, any public record, or documents submitted with or in response to RFPQ, HRP contractor-owner contract form, and related HRP

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

and/or CDBG-DR documents pertaining to procurement, contract administration, contract management/monitoring, CDBG-DR planning and compliance, and/or contract auditing, in whole or in part, shall be available to Contractor for purposes of copyrighting as Contractor's intellectual and/or proprietary property. Subject to North Carolina Public Records laws, any such materials produced resulting from this Agreement that might be subject to copyright shall be the property of State of North Carolina, through NCORR, other State agency, and/or a federal agency of the United States (e.g., HUD and FEMA), and all such rights shall belong to the State of North Carolina and/or the United States.

A prequalified contractor, CM and/or its designer that prepares home plans and specifications for any HRP project shall retain all rights of ownership in any proprietary and/or intellectual property but shall grant limited licenses to NCORR, HUD, FEMA, and Owners to use these plans and specifications limited to the construction of an HRP project and for any governmental administrative use and/or reporting requirements. The prequalified contractor and/or its design firm may enter into license agreements or otherwise sell their home plans and specifications to other prequalified contractors for use on other NCORR and/or county CDBG-DR HRP projects, HMGP projects and/or State DRA projects subject to any State, federal and/or local laws, rules and/or ordinances.

14.    <u>Patents</u>.  Contractor shall hold and save NCORR and its officers, agents, servants, and employees harmless from liability of any nature or kind, including cost and expenses for, or on account of any patented or unpatented invention, process, article, or appliance manufactured or used in the performance of the Contract including its use by NCORR, unless otherwise specifically stipulated in the Contract.

License or Royalty Fees: License and/or Royalty Fees for the use of a process which is authorized by NCORR must be reasonable and paid to the holder of the patent, or his authorized license, direct by NCORR and not by or through Contractor.

If Contractor uses any design, device or materials covered by letters, patent or copyright, it shall provide for such use by suitable agreement with Owner of such patented or copyrighted design, device or material. It is mutually agreed and understood that, without exception, the Contract prices shall include all royalties or costs arising from the use of such design, device or materials, in any way involved in the Work.  Contractor and/or his Sureties shall indemnify and save harmless NCORR from any and all claims for infringement by reason of the use of such patented or copyrighted design, device or materials or any trademark or copyright in connection with work agreed to be performed under this Contract, and shall indemnify NCORR for any cost, expense, or damage which it may be obliged to pay by reason of such infringement at any time during the prosecution of the work or after completion of the work.

15.    <u>Confidential Findings</u>.  Some of the reports, information, data, etc. (e.g., homeowner personally identifying information, including but not limited to: income and/or tax records, social security numbers, birthdates, driver's license numbers, etc.), prepared or assembled by NCORR, HUD, FEMA, counties, other governmental agencies, and/or Contractor under award HRP contracts may be confidential, and Contractor agrees that

43

they shall not be made available to any individual or organization without prior written approval of the appropriate governmental entity that authored the information, requested the information and/or is responsible for the program for which that Contractor is performing the work that generated the confidential information. Contractor understands that most documents and billing records will be public records and Contractor will have to consult with the governmental entity to determine whether a proposed document may be submitted to the governmental entity with confidential information and the method used to maintain confidentiality if the document contains confidential information.

16. Conflict of Interest. No member, officer, or employee of NCORR or the local jurisdictions served through this Contract, or agent, consultant, or member of the DPS, or other public official who exercises or has exercised any functions or responsibilities with respect to this Contract during his or her tenure, or for one year thereafter, shall have any interest, direct or indirect, in any contract or subcontract, or the proceeds thereof, for work to be performed in connection with the Contract or in any activity or benefit with regard to the Contract.

Contractor shall cause to be incorporated in all contracts and/or subcontracts the foregoing provision regarding conflicts of interest.

No member of or delegate to Congress, or NCORR employee, shall be admitted to any share or part of this Contract or to any benefit that may arise therefrom, but this provision shall not be construed to extend to this Contract if made with a corporation.

If a person receiving assistance under this Program does in fact have a conflict of interest as discussed herein, such conflict will be fully disclosed in writing to NCORR and addressed under applicable law.

17. Interest of Contractor. Contractor covenants that he presently has no interest and shall not acquire any interest, direct or indirect, in the above described project or any parcels therein or any other interest which would conflict in any manner or degree with the performance of services hereunder. Contractor further covenants that in the performance of this Contract, no person having any such interest shall be employed.

18. Political Activity. Contractor will comply with the provisions of the Hatch Act (5 U.S.C. 1501 et seq.), which limits the political activity of employees.

19. Lobbying (31 U.S.C. 1352). Contractor certifies, to the best of its knowledge and belief that:

19.1    No federally appropriated funds have been paid or will be paid, by or on behalf of Contractor, to any person for purposes of influencing or attempting to influence an officer or employee of any agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress in connection with the awarding of any federal contract, the making of any federal grant, the making of any federal loan, the entering into of any cooperative agreement, and

the extension, continuation, renewal, amendment, or modification of any federal contract, grant, loan, or cooperative agreement.

19.2    If any funds other than federally appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress in connection with this federal contract, grant, loan, or cooperative agreement, Contractor shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

20.    <u>Personnel</u>.  Contractor represents that it has, or will secure at its own expense, all personnel required in performing the services under this Contract.  Such personnel shall not be employees of or have any contractual relationship with NCORR or other governmental entity involved in other State or federal disaster recovery programs.

All the services required hereunder will be performed by Contractor or under its supervision, and all personnel engaged in the work shall be fully qualified and shall be authorized or permitted under State and local law to perform such services.

No person who is serving sentence in a penal or correctional institution shall be employed on work under this Contract.

21.    <u>Hiring of Illegal Aliens</u>.  The hiring of illegal aliens is prohibited under Federal Labor Laws.  As a condition of Contractor's prequalification under RFPQ, Contractor certifies that it, and each of its sub-contractors for any subcontract awarded, complies with the requirements of Article 2 of Chapter 64 of the NC General Statutes, including the requirement for each employer with more than 25 employees in North Carolina to verify the work authorization of its employees through the federal E-Verify system.

22.    <u>Anti-Kickback Rules</u>.  Salaries of personnel performing work under this Contract shall be paid unconditionally and not less often than once a month without payroll deduction or rebate on any account except only such payroll deductions as are mandatory by law or permitted by the applicable regulations issued by the Secretary of Labor pursuant to the "Anti-Kickback Act" of June 13, 1934 (48 Stat. 948; 62 Stat. 740; 63 Stat. 108; Title 18 U.S.C. 874; and Title 40 U.S.C. 2760).  Contractor shall comply with all applicable "Anti-Kickback" regulations and shall insert appropriate provisions in all subcontracts covering work under this Contract to insure compliance by the Subcontractors with such regulations, and shall be responsible for the submission of affidavits required of Subcontractors thereunder except as the Secretary of Labor may specifically provide for variations of or exemptions from the requirements thereof.

23.    <u>Debarment, Suspension and Ineligibility (2 C.F.R. 200, Appendix II(I))</u>.  Contractor represents and warrants that it and its Subcontractors are not debarred, suspended, or placed in ineligibility status under the provisions of 2 C.F.R. 180 and 24 C.F.R. 24.1 (government debarment and suspension regulations).

45

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

24.   <u>Subcontracts</u>.  Contractor shall not enter into any subcontract with any Subcontractor who has been debarred, suspended, declared ineligible, or voluntarily excluded from participating in contacting programs by any agency of the United States Government or the State of North Carolina.

Contractor shall be as fully responsible to NCORR for the acts and omissions of Contractor's Subcontractors, and of persons either directly or indirectly employed by them, as he is for the acts and omissions of persons directly employed by Contractor.

Contractor shall cause appropriate provisions to be inserted in all subcontracts relative to the work to bind Subcontractor to Contractor by the terms of the Contract Documents insofar as applicable to the work of Subcontractors and to give Contractor the same power in regards to terminating any subcontract that NCORR may exercise over Contractor under any provision of the Contract Documents.

Nothing contained in this contract shall create any contractual relationship between any Subcontractor and NCORR.

25.   <u>Assignability</u>.  Contractor shall not assign any interest in this Contract, and shall not transfer any interest in the same (whether by assignment or novation) without prior written approval of NCORR, provided that claims for money due or to become due Contractor from NCORR under this Contract may be assigned to a bank, trust company, or other financial institution, or to a Trustee in Bankruptcy, without such approval. Notice of any such assignment or transfer shall be furnished promptly to NCORR.

26.   <u>Termination for Unavailable Funding</u>.  The continuation of this Contract is contingent upon the appropriation and release of sufficient funds to NCORR to fulfill the requirements of this Contract. Failure of the appropriate authorities to approve and provide an adequate budget to NCORR for fulfillment of the Contract terms shall constitute reason for termination of the Contract by either Party. Contractor shall be paid for all authorized services properly performed prior to termination.

27.   <u>Breach of Contract Terms</u>.  Any violation or breach of any of the terms of this Contract on the part of Contractor or Contractor's Subcontractors may result in the suspension or termination of this Contract or such other action that may be necessary to enforce the rights of the parties of this Contract.  The duties and obligations imposed by the contract documents and the rights and remedies available thereunder shall be in addition to and not a limitation of any duties, obligations, rights and/or remedies otherwise imposed or available by law.

28.   <u>Davis-Bacon Act (Payment of Prevailing Wages)</u>.  The Davis-Bacon Act, as amended (40 U.S.C. 3141-3148), shall apply to all CDBG-DR Housing Recovery Program construction projects involving eight (8) or more units when the contract awarded by NCORR is in excess of $2,000. Contractor and subcontractors on such projects shall comply with the Davis-Bacon Act, 40 U.S.C. 3141-3144, and 3146-3148, as supplemented by Department of Labor regulations found in  29 C.F.R. Part 5 ("Labor

Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction"). Contractor must pay wages to laborers and mechanics at a rate not less than the prevailing wages specified in a wage determination made by the Secretary of Labor. In addition, Contractor must pay wages not less than once a week. NCORR must place a copy of the current prevailing wage determination issued by the Department of Labor in each solicitation. The decision to award a contract or subcontract must be conditioned upon the acceptance of the wage determination. NCORR (including any CM assigned to manage the construction contract between Contractor and Owner) shall facilitate and monitor compliance with the Davis Bacon Act, and report all suspected and/or actual violations of the Davis-Bacon Act to HUD.

29. <u>"Section 3" Clause</u>. Compliance with the provisions of Section 3 of the HUD Act of 1968, as amended, and as implemented by the regulations set forth in 24 C.F.R. 135, and all applicable rules and orders issued hereunder prior to the execution of any contract, shall be a condition of the Federal financial assistance provided under this contract and binding upon Contractor, and any of its subcontractors. Failure to fulfill these requirements shall subject Contractor and subcontractors, their successors and assigns, to those sanctions specified by the contract through which Federal assistance is provided. Contractor certifies and agrees that no contractual or other disability exists that would prevent compliance with these requirements.

Contractor further agrees to comply with these "Section 3" requirements and to include the following language in all subcontracts executed under a contract resulting from this RFP:

"The work to be performed under this Agreement is a project assisted under a program providing direct Federal financial assistance from HUD and is subject to the requirements of Section 3 of the Housing and Urban Development Act of 1968, as amended (12 U.S.C. 1701). Section 3 requires that to the greatest extent feasible opportunities for training and employment be given to low-and very low-income residents of the project area, and that contracts for work in connection with the project be awarded to business concerns that provide economic opportunities for low- and very low-income persons residing in the metropolitan area in which the project is located."

30. <u>Procurement of Recovered Materials</u>. Contractor agrees to comply with 2 C.F.R. 200.322, which requires the procurement of items designated in guidelines of the Environmental Protection Agency (EPA) at 40 C.F.R. part 247 to contain the highest percentage of recovered materials practicable, consistent with maintaining a satisfactory level of competition, where the purchase price of the item exceeds $10,000 or the value of the quantity acquired during the preceding fiscal year exceeded $10,000; procuring solid waste management services in a manner that maximizes energy and resource recovery; and establishing an affirmative procurement program for procurement of recovered materials identified in the EPA guidelines.

31. <u>Equal Employment Opportunity</u>. Contractor agrees to the following Equal Opportunity Certification:

47

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

31.1    Contractor will not discriminate against any employee or applicant for
        employment on the basis of race, color, religion, sex, sexual orientation, gender
        identity, or national origin.  Contractor will take affirmative action to ensure that
        applicants are employed, and that employees are treated during employment
        without regard to their race, color, religion, sex, sexual orientation, gender
        identity, or national origin.  Such action shall include, but not be limited to the
        following:

             Employment, upgrading, demotion, or transfer; recruitment or recruitment
             advertising; layoff or termination; rates of pay or other forms of
             compensation; and selection for training, including apprenticeship.
             Contractor agrees to post in conspicuous places, available to employees
             and applicants for employment, notices to be provided setting forth the
             provisions of this nondiscrimination clause.

31.2    Contractor will, in all solicitations or advertisements for employees placed by or
        on behalf of Contractor, state that all qualified applicants will receive
        consideration for employment without regard to race, color, religion, sex, sexual
        orientation, gender identity, or national origin.

31.3    Contractor will not discharge or in any other manner discriminate against any
        employee or applicant for employment because such employee or applicant has
        inquired about, discussed, or disclosed the compensation of the employee or
        applicant or another employee or applicant. This provision shall not apply to
        instances in which an employee who has access to the compensation information
        of other employees or applicants as a part of such employee's essential job
        functions discloses the compensation of such other employees or applicants to
        individuals who do not otherwise have access to such information, unless such
        disclosure is in response to a formal complaint or charge, in furtherance of an
        investigation, proceeding, hearing, or action, including an investigation conducted
        by the employer, or is consistent with Contractor's legal duty to furnish
        information.

31.4    Contractor will send to each labor union or representative of workers with which
        he has a collective bargaining agreement or other contract or understanding, a
        notice to be provided advising the said labor union or workers' representatives of
        Contractor's commitments under this section, and shall post copies of the notice in
        conspicuous places available to employees and applicants for employment.

31.5    Contractor will comply with all provisions of Executive Order 11246 of
        September 24, 1965, and of the rules, regulations, and relevant orders of the
        Secretary of Labor.

31.6    Contractor will furnish all information and reports required by Executive Order
        11246 of September 24, 1965, and by rules, regulations, and orders of the
        Secretary of Labor, or pursuant thereto, and will permit access to his books,

48

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

records, and accounts by the administering agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

31.7    In the event of Contractor's noncompliance with the nondiscrimination clauses of this contract or with any of the said rules, regulations, or orders, this contract may be canceled, terminated, or suspended in whole or in part and Contractor may be declared ineligible for further Government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

31.8    Contractor will include the portion of the sentence immediately preceding paragraph (32.1) and the provisions of paragraphs (32.1) through (32.7) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to section 204 of Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. Contractor will take such action with respect to any subcontract or purchase order as the administering agency may direct as a means of enforcing such provisions, including sanctions for noncompliance:

> *Provided,* however, that in the event Contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the administering agency, Contractor may request the United States to enter into such litigation to protect the interests of the United States.

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

# ATTACHMENT D

## OWNER AWARD LETTER

[INSERT OWNER AWARD LETTER]

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF



**June 5, 2019**

*Mailing Address:*
1574 Savannah Heights Drive
Kinston, NC 28501

*Damaged Property Address:*
1574 Savannah Heights Dr
Kinston, NC 28501

Applicant Name:
Arnold Smith

Application Number:
APP-02980

## NOTIFICATION OF ELIGIBILITY AND INITIAL AWARD CALCULATION

The State of North Carolina is pleased to inform you that your application has been processed, and you are eligible for assistance under the **ReBUILD NC Homeowner Recovery Program (HRR)**. This determination is based on the information you provided in connection with your application. The award calculation is set forth in detail on Attachment "A" included with this letter.

Please make sure you review and understand current Program Policies which can be viewed at www.rebuild.nc.gov, and respond within ten (10) business days from the date of this letter. Once you have accepted your award by completing and returning this letter, you will be ready to review and sign your Grant Agreement and related documents. You may make a closing appointment by contacting the Award and Closing Team at:

Telephone:
- **(919) 909-0795**
- **(919) 909-2936**
- **(919) 909-1612**

Email:
- **Awards@rebuild.nc.gov**

Please note that you may have an attorney review your award and grant documents. If you would like an attorney provided to you, Legal Aid is prepared to assist you free of charge. To request a Legal Aid attorney, please advise the Award and Closing Team.

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

## APPLICABLE PROGRAM SOLUTION

You have been deemed eligible for assistance under the following Assistance Program(s): MH Replacement

If your Award Calculation Table shows that there is "Homeowner Escrow Required," you will need to deposit these required escrow funds in a State-managed account. **ESCROW FUNDS MUST BE PROVIDED AT THE TIME OF YOUR CLOSING MEETING. IF YOU ARE CONDUCTING YOUR CLOSING MEETING ELECTRONICALLY (VIA E-MAIL OR DOCUSIGN), PLEASE MAIL YOUR ESCROW FUNDS CHECK <u>AFTER</u> SIGNING AND RETURNING THE CLOSING DOCUMENTS.**

### OPTIONAL ELEVATION

You have been deemed eligible for Optional Elevation assistance. Applicants outside of an area with a designated Base Flood Elevation (BFE) will be required to elevate their home at least 2' above the highest level of water that can be document in the home using FEMA data or height of documented water marks in the home as measured by the Damage Assessor, whichever documented water level is highest. Homeowner's receiving Optional Elevation Assistance will also be required to obtain and maintain flood insurance on their properties.

If you choose to accept optional elevation assistance, please indicate so in the "Your Selections & Confirmations" form below. Your award will be reissued to include the Program maximum $50,000 allowance for Elevation activities or the actual cost of elevation (if known), whichever is less.

## REIMBURSEMENT & REPAIR ESTIMATES

In connection with the calculation of your award, Program representatives have done a thorough inspection of your home and have compiled a detailed list of damages that have either been fixed, are eligible for reimbursement, and/or are eligible for rehabilitation. **It is important that you take the time to review the Reimbursement Estimate and/or the Estimated Cost of Repairs.** Please contact the Award and Closing Team to obtain copies of these documents.

*Disclaimer: The award amounts referenced in this letter and attachments are transcribed directly from data provided or collected from the applicant during application intake, damage assessment inspection, and/or third-party verification of applicant information provided to the ReBuild NC program and should be considered transitory in nature. As additional information is collected during the grant closing and construction phases of the ReBuild NC Program it is anticipated that award amounts will be adjusted to more accurately reflect the eligible recovery needs of program applicants.*

## RIGHT TO APPEAL

If you disagree with how the Program has calculated your award, or with anything contained in the Reimbursement or Repair Estimate, you may appeal within **30 days from the date of this Notification, or before your closing appointment, *WHICHEVER OCCURS FIRST*.** Instructions on how to appeal your award determination can be found at www.rebuild.nc.gov.

APP-02980-Smith AWARD LETTER

DocuSign Envelope ID: 099A3168-963E-4AF2-B699-3A829D0607AF

# YOUR SELECTIONS & CONFIRMATIONS

**Please check the appropriate box below that reflects your decision. After checking the box below and signing the award letter please either scan, mobile photo or photocopy this document and email the document to:** Awards@rebuild.nc.gov

## ACCEPTANCE

☑ I accept the award as calculated above. I have had the opportunity to review Program Policies and the Reimbursement Estimates and/or Estimated Cost of Repairs that the Program has provided. I acknowledge that if I sign my Grant Agreement(s) at my closing appointment, I will no longer be able to appeal my award calculation.

☑ I accept the Optional Elevation assistance offered by the Program.

## AWARD CONSULTATION

☐ I wish to have a Program representative contact me and consult with me regarding my award, prior to making a final decision. Additionally, I understand I have the right to have legal counsel review award documentation prior to making a final decision on this award.

## REJECTION

☐ After review of my award calculation, I no longer wish to participate in the Program. I withdraw my application for assistance and reject the award as offered.

## APPEAL

☐ I disagree with my award calculation, repair or reimbursement estimate, or some or all of the determinations made by the Program. As a result, I am electing to refuse the award above and exercise my right to appeal. By selecting this option, I am initiating the first step in the appeal process and will follow the Program appeals policy.

**By signing below, you acknowledge receipt and understanding of this Award Letter, in addition to the ReBuild NC Know Before You Close, Appeals Policy, and Damage Assessment reports.**

*Arnold Smith*                                    6·13·19
Arnold Smith                                       Date

On behalf of the entire ReBuild NC administration team, we look forward to helping you as you continue forward with you rebuilding efforts.

APP-02980-Smith AWARD LETTER

| AWARD CALCULATION TABLE | |
|---|---|
| **MHU Replacement** | |
| **Completed Repairs (Reimbursement)** | |
| Damage Repair Verification (DRV) | $306.82 |
| **Duplication of Benefit (DOB) Detail** | |
| FEMA (Matthew) | $0.00 |
| FEMA (Florence) | $1,425.66 |
| SBA (Matthew) | $0.00 |
| SBA (Florence) | $0.00 |
| Flood Insurance (Matthew) | $0.00 |
| Flood Insurance (Florence) | $0.00 |
| Homeowner's Insurance (Matthew) | $0.00 |
| Homeowner's Insurance (Florence) | $0.00 |
| Other Insurance & Assistance (Matthew) | $0.00 |
| Other Insurance & Assistance (Florence) | $0.00 |
| **Duplication of Benefit TOTAL** | **$1,425.66** |
| Excess DOB Post-Reimbursement | $1,118.84 |
| **Future Repairs** | |
| Mobile Home Size | Singlewide |
| Mobile Home Square Footage | 1,165 |
| Maximum Available MHU Replacement Award Amount | $60,000.00 |
| Gross MHU Replacement Amount | $58,881.16 |
| Excess DOB Post-Reimbursement Reduction | $1,118.84 |
| Net MHU Replacement Award (Gross MHU Replacement Amount minus Excess DOB Post-Reimbursement) | $58,881.16 |
| **Final MHU Replacement Award** | **$58,881.16** |
| | |
| **Other HRR Assistance** | |
| Temporary Relocation Assistance, if applicable, Up to $12,000 | $0.00 |
| Flood Insurance Assistance (FIA), if applicable, Up to $2,000 | $0.00 |
| Elevation, if applicable, Up to $50,000 | $0.00 |
| **Final Other HRR Assistance Award** | **$0.00** |
| | |
| **Total CDBG Award** | **$58,881.16** |
| **Homeowner Escrow Required (Excess DOB)** | **$1,118.84** |
| | |
| AWARD VERIFICATION CRITERIA | |
| In 100-Year Floodplain | 0 |
| Calculated National Objective | URGENT NEED |
| Substantial Damage Percentage | 162.75% |
| Substantial Improvement Percentage | 165.64% |

*(handwritten annotation next to "Maximum Available MHU Replacement Award Amount": applied)*

*(handwritten annotation next to "Homeowner Escrow Required (Excess DOB)": escrow)*