IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO.: 4:25-cv-59-BO-RJ

| | |
|---|---|
| ARNOLD JEROME SMITH,<br><br>Plaintiff,<br>vs.<br><br>STATE OF NORTH CAROLINA, N.C. OFFICE OF RECOVERY AND RESILIENCY AND EXCEL CONTRACTORS LLC,<br><br>Defendants. | **DEFENDANT EXCEL CONTRACTORS LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendant Excel Contractors LLC ("Excel" or Defendant"), by and through the undersigned counsel and pursuant Rule 56 and Local Rules 7.1 and 7.2 offers this memorandum in support of its Motion for Summary Judgment seeking dismissal of Plaintiff Arnold Jerome Smith's ("Smith" or "Plaintiff") Amended Complaint in its entirety.

**INTRODUCTION AND NATURE OF THE CASE**

Plaintiff Arnold Jerome Smith applied for and received a grant for a new accessible manufactured housing unit ("MHU") (the "New Home") as part of a grant made through the North Carolina Community Development Block Grant – Disaster Relief Homeowner Recovery Program (the "Program" Or "ReBuild NC") administered by Defendant North Carolina Office of Recovery and Resiliency ("NCORR") after hurricanes damaged the home he owned and lived in for nearly 20 years. NCORR contracted with Defendant Excel to provide an accessible home and build a ramp for Plaintiff on his property where the former home had been. Excel provided the accessible home and built the ramp in accordance with Program specifications and Smith's requests, which Smith accepted. Smith alleges his home should have included additional accessibility features greater than the Program specifications. The Amended Complaint alleges claims against Excel

under the Fair Housing Act ("FHA"), Section 504 of the Rehabilitation Act ("Rehabilitation Act") and for breach of contract. Excel has filed the instant Motion for Summary Judgment seeking dismissal of each of Smith's claims against Excel. For the reasons that follow, the undisputed material facts show Excel is entitled to judgment as a matter of law as to each of Smith's claims, and those claims and the Amended Complaint should be dismissed as to Excel.

## STATEMENT OF THE FACTS

See, incorporated herein by reference pursuant to Local Rule 56.1(c), Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Excel Facts") and supporting Defendant's Appendix to Local Civil Rule 56.1 Statement of Undisputed Material Facts.

## ARGUMENT

### I. Applicable Standard of Review

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007). Although the Court must construe facts in the light most favorable to Plaintiff, "there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50). "[C]onclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks omitted). "(A) party cannot withstand summary judgment by relying solely on his own self-serving allegations unsupported by any corroborating evidence." *Pronin v. Johnson*, 628 F. App'x 160,

161 (4th Cir. 2015) (per curiam) (citing *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004)). Further, the court will not consider inadmissible hearsay on a summary judgment motion. *Lyons v. City of Alexandria*, 35 F.4th 285, 290 n.4 (4th Cir. 2022).

**1. Smith's Fair Housing Act Claim Fails**

Smith's Fair Housing Act ("FHA") claim fails because the undisputed facts show Smith was not a "buyer or renter" as required under the FHA and Excel's actions were neither motivated by a discriminatory purpose nor had a discriminatory impact.

The FHA, 42 U.S.C. § 3604(f), states it shall be unlawful:

> (1) To discriminate *in the sale or rental*, or to otherwise make unavailable or deny, a dwelling to *any buyer or renter* because of a handicap [or] (2) To discriminate against any person in the terms, conditions, or privileges of *sale or rental of a dwelling*, or in the provision of services or facilities in connection with such dwelling, because of a handicap . . . . 42 U.S.C.S. § 3604 (emphasis added).

Smith's FHA claim fails because it is undisputed he was neither a buyer nor renter of the New Home at issue in this lawsuit because he owned the land, received the New Home in a grant, and owns the New Home. Excel Facts, ¶¶ 1, 6, 13. *Hunter v. District of Columbia*, 64 F. Supp. 3d 158, 178 (D.D.C. 2014) ("Even in light of the Court's obligation to construe the FHA as broadly as possible, the clear language of the statute restricts the class of people who can bring a claim under section 3604(f)(1) to a 'buyer or renter,' or, at its broadest, individuals who were otherwise denied the opportunity to become a buyer or a renter.") (dismissing 42 U.S.C. § 3604(f)(1) and (2) claims where plaintiffs failed to allege defendants discriminated against them as "buyers or renters"); *Boykin v. Gray*, 895 F. Supp. 2d 199, 210 (D.D.C. 2012) ("[T]he language of [42 U.S.C.S. § 3604(f)] as a whole appears to evince an exclusive concern with the sale and rental of properties and the provision of services to renters.") (dismissing claim). There is no dispute that at the time Smith applied for the new home on July 9, 2018, and presently, Smith owned the land

and home and occupied the property as his primary residence; Smith was the only person listed on the deed and there were no liens or mortgages; the home was not a rental property or a second home and was not being rented to another person or used as a business; and Smith was not receiving subsidized housing assistance. Excel Facts ¶¶ 5-6. Smith only made one payment during this process, a July 2019 escrow payment of $1,118.84 to NCORR representing duplicative funds left over from a FEMA grant Smith received before he applied to the Program. He did not pay his own funds to NCORR and never made any payments to Excel. Excel Facts ¶¶ 14, 17. Further, the New Home was awarded to Smith pursuant to a CDBG-DR Program grant. Excel Facts ¶ 4. Because Smith's home and property were not for sale or rent during the relevant time and Smith did not pay for or rent his New Home, Smith is neither a renter nor buyer and his claim under 42 U.S.C.S. § 3604(f) fails.

To the extent Smith's FHA claim is construed as a failure to permit Smith to make reasonable modifications to his New Home at his own expense under 42 U.S.C. 3604(f)(3)(A), that claim fails because there is no dispute Smith owns the New Home and the property where it sits and Smith did not need Excel or any other party to permit him to make reasonable modifications to his New Home at his own expense. Excel Facts ¶¶ 1, 6, 13. There is also no evidence in the record that Smith sought to do so. Indeed, Smith testified that he has never solicited bids to fix or replace his New Home. Excel Facts ¶ 59.

Smith's FHA claim also fails under a failure to accommodate basis. "A party raising an accommodation claim under the FHAA bears the burden of establishing that the proposed accommodation is '(1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing.'" *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d

262, 272 (4th Cir. 2013) (citing *Bryant Woods*, 124 F.3d at 603-04 (citing 42 U.S.C. § 3604(f)(3)). This claim fails for several reasons.

First, Smith's FHA failure to accommodate claim fails because 42 U.S.C. 3604(f)(3)(B) applies to requests for accommodations to "rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." Smith's complaints center on his request to modify his New Home to add greater accessibility features, not for Excel to change "rules, policies, practices, or services." See, Excel Facts, ¶¶ 54-58. Smith has not identified a rule, policy, practice or service that would physically change his New Home. To the extent Smith is using 42 U.S.C. 3604(f)(3)(B) in connection with his requests for modifications to his New Home, that claim is misplaced and fails for the same reason a 42 U.S.C. 3604(f)(3)(A) claim fails.

Second, Smith never requested an accommodation from Excel. Smith picked the accessible MHU floorplan Excel offered, which Smith acknowledged did not include the accessibility features he now seeks, and his initial concerns with the floor plan concerned egress. Excel Facts, ¶¶ 27-28, 30. Excel provided the New Home in accordance with the Program specifications, which Smith first acknowledged in the Replacement Form and again when he signed the Acceptance of Work and which also included Smith's requested changes to keep his tub and cabinet doors. Excel Facts, ¶¶ 12, 33-40. Smith did not begin requesting accessibility-related changes until April 2022 – six months into the warranty period. Excel Facts, ¶ 49. Smith testified he contacted Excel to ask questions but did not specifically recall asking Excel for any accommodations. Excel Facts, ¶ 45. When Smith's concerns were addressed by NCORR in March 2023, NCORR confirmed Excel provided the New Home in satisfaction of its contract and Smith's

requested changes were outside the contract and warranty and would be addressed, if at all, by someone other than Excel. Excel Facts, ¶ 60.

Finally, Smith's FHA claim fails because the undisputed facts show Excel did not engage in conduct with discriminatory intent or which had a discriminatory effect. "To prove a prima facie case of discrimination under the FHA, [a plaintiff] must demonstrate that either the housing action or practice being challenged was motivated by a discriminatory purpose or had a discriminatory impact." *Wadley v. Park at Landmark LP*, 264 F. App'x 279, 281 (4th Cir. 2008) (citing *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 986 (4th Cir. 1984)). "Where, as here, a private entity is involved the . . . inquiry is whether either discriminatory intent or impact can be proved." *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 988 n.5 (4th Cir. 1984). While Smith claims his New Home should have more accessibility features, Excel built the New Home in accordance with Program guidelines and Smith's requests, which NCORR and Smith approved. Indeed, the New Home is "accessible" under Smith's expert Duncan's definition because the undisputed facts show Smith can use the bathroom, kitchen, laundry room and ramp. *See below*, Section 3c; Excel Facts ¶¶ 18-24, 30, 33-40, 55-58, 60, 64. Most critically, Smith testified that Excel did not engage in discrimination against him, he just believes Excel "did not fulfil their contract to the best of their ability." Excel Facts ¶¶ 54. Finally, there is no evidence that Excel's conduct had a disparate impact on persons with disabilities.

For the foregoing reasons, Excel is entitled to judgment as a matter of law as to Smith's FHA claim and that claim should be dismissed.

### 2. Smith's Section 504 Rehabilitation Act Claim Fails

Smith's Rehabilitation Act claim fails because the undisputed facts show Excel did not administer the Program, was not a recipient of federal financial assistance, and Excel did not deny

Smith the benefits of the Program or otherwise discriminate against Smith. "Section 504 [of the Rehabilitation Act] states that '[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .'" *D.L. v. Balt. City Bd. of Sch. Comm'rs*, 706 F.3d 256, 258-59 (4th Cir. 2013) (citing 29 U.S.C. § 794). "Case law has established that a claim under Section 504 will be stated only where the allegedly discriminatory 'program or activity' was conducted by an entity which received or dispersed federal funding." *United States v. City of Charlotte*, 904 F. Supp. 482, 487 (W.D.N.C. 1995) (collecting cases).

Here, Excel did not administer the Program and was not a recipient of federal funding. Instead, NCORR received a grant from HUD and administered the Program. Excel Facts, ¶ 4[1]. Excel submitted the Excel RFB in response to NCORR's February 2020 RFB, which NCORR accepted and which became a contract for Excel to provide "replacement of MHUs" as a "Prequalified Contractor." Excel then entered a Work Order agreement with NCORR for work on Smith's home as a prequalified vendor. Excel Facts, ¶¶ 18-24. Excel submitted invoices to NCORR to receive payment for those services. Excel Facts, ¶ 60. Accordingly, Excel was a vendor providing procurement and construction services under its contract with NCORR and therefore did not administer the Program and was not a recipient of federal financial assistance. *Jarno v. Lewis*, 256 F. Supp. 2d 499, 504 (E.D. Va. 2003) ("Although the Fourth Circuit has yet to address this issue, other circuit courts have squarely held that procurement contracts do not constitute federal financial assistance where the recipient receives no government subsidy for its services but rather acts solely as a market participant.") (collecting cases); *Mathis v. GEO Grp.*,

[1] See also, HCRE Agreement, p. 1, "[NCORR] is HUD's Grantee and is responsible for administrating the CDBG-DR program."

*Inc.*, No. 2:08-CT-21-D, 2009 U.S. Dist. LEXIS 132301, at *29 (E.D.N.C. Nov. 9, 2009) (dismissing Rehabilitation Act claim where plaintiff failed to allege Bureau of Prisons either subsidized private prison or that private prison received "[f]ederal financial assistance" within the meaning of the Rehabilitation Act) (citing *Logan v. United States*, No. 96-55042, 1996 U.S. App. LEXIS 32872, at *4 (9th Cir. Dec. 6, 1996) ("[T]he Rehabilitation Act covers only the recipients of federal financial assistance and not the recipients of compensatory payments for services.")); *Smith v. Laidlaw Transit, Inc.*, No. 3:02-4179-JFA-BM, 2005 U.S. Dist. LEXIS 64632, at *18 (D.S.C. Nov. 17, 2005) ("While Rehabilitation Act coverage extends to both direct and indirect recipients of federal funds, it does not follow the federal aid past the intended recipient to those who merely derive a benefit from the aid or receive compensation for services rendered pursuant to a contractual arrangement.") (citing *Hamilton v. Illinois Central Railroad Company*, 894 F.Supp. 1014, 1022 (S.D.Miss. 1995)); *King v. PEM Props.*, Civil Action No. 2:16-cv-09876, 2019 U.S. Dist. LEXIS 201367, at *9 (S.D. W. Va. Sep. 17, 2019) ("An entity receives 'federal financial assistance' under the meaning of the [Rehabilitation Act] 'when it receives a subsidy, as opposed to compensation.'") (collecting cases). Accordingly, the undisputed facts show Excel did not administer the Program and is not a recipient of federal financial assistance, and Excel is entitled to judgment as a matter of law as to Smith's Rehabilitation Act claim.

Even if Excel were construed to have administered the Program and been a recipient of federal financial assistance, which is denied, Smith's Rehabilitation Act claim still fails because the undisputed facts show Smith was not denied the benefits of the ReBuild NC Program. "In order to establish a violation of [Section 504 of the Rehabilitation Act], a plaintiff must prove: (1) that he has a disability; (2) that he is otherwise qualified for the . . . benefit in question; and (3) that he was excluded from . . . benefit due to discrimination solely on the basis of the disability.

*Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995). As to the third element, "a plaintiff must show that [he] was excluded from participation in, or denied the benefits of, a program or service offered by a public entity, or subjected to discrimination by that entity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citing 29 U.S.C. § 794(a)). Smith's Rehabilitation Act claim as to Excel fails as a matter of law because Excel did not deny Smith the benefits of the Program and did not discriminate against Smith.

Smith was not excluded from the benefit of the Program because of his disability. The undisputed facts show Excel provided Smith with his New Home in accord with the Program guidelines and Smith's requests, which NCORR and Smith approved. See below, Section 3c. Smith picked the accessible MHU floorplan Excel offered, which Smith acknowledged did not include the accessibility features he now seeks, as his initial concerns with the floor plan were about egress. Excel Facts, ¶¶ 27-28, 30. Excel provided the New Home in accordance with the Program specifications, which Smith first acknowledged in the Replacement Form and again when he signed the Acceptance of Work and which also included Smith's requested changes to keep his tub and cabinet doors. Excel Facts, ¶¶ 12, 33-40. Accordingly, to the extent Smith is seeking modifications to his New Home to add accessibility features, those features are outside the scope of the Program. Smith therefore cannot claim he was denied the benefits of the Program. Indeed, NCORR accepted Excel's work on Smith's home as complete. In March 2023, NCORR confirmed Excel provided the New Home in satisfaction of its contract and Smith's requested changes were outside the contract and warranty and would be addressed, if at all, by someone other than Excel. Excel Facts, ¶ 60.

Additionally, Smith's Rehabilitation Act claim against Excel fails because the undisputed facts show he was not "subjected to discrimination by" a public entity. *Constantine*, 411 F.3d at 499. As an initial matter, Excel is a general contractor and not a public entity. Even if Excel were construed to be a public entity, which is denied, Smith testified that Excel did not engage in discrimination against him, he just believes Excel "did not fulfil their contract to the best of their ability." Excel Facts, ¶ 54.

Accordingly, the undisputed facts show Excel did not "exclude[] [Plaintiff] from participation in, or den[y] [him] the benefits of" the Program or otherwise discriminate against Smith because of his disability. *Doe*, 50 F.3d at 1264-65; *Constantine*, 411 F.3d at 498-99. For the foregoing reasons, Excel is entitled to judgment as a matter of law as to Smith's Rehabilitation Act claim against Excel and that claim should be dismissed.

**3. Smith's Breach of Contract Claim Against Excel Fails**

Smith's breach of contract claim against Excel fails because the undisputed facts show that claim is untimely, Smith and Excel were not parties to an enforceable contract, Smith was only an incidental beneficiary to the contract between Excel and NCORR, and Excel successfully completed work on Smith's home in accordance with its contract with NCORR.

**a. The Breach of Contract Claim is Untimely**

Smith's breach of contract claim is untimely. Pursuant to N.C. Gen. Stat. § 1-52, a claim for breach of contract must be brought within three years.[2] Under § 1-50(a)(5)(f) and 1-52, a breach of contract action "based upon or arising out of the defective or unsafe condition of an

[2] Smith claims in the Amended Complaint that N.C. Gen. Stat. § 1-50 provides a six-year statute of limitations for claims alleging "breach of contract to construct or repair an improvement to real property." See, DE 39, ¶ 113. This interpretation is incorrect, as N.C. Gen. Stat. § 1-50 sets an outside limitation on such claims at six years after substantial completion of the work, while the three-year statute of limitations for a breach of contract claim "continues to run."

improvement to real property shall not accrue until the injury, loss, defect or damage becomes apparent or ought reasonably to have become apparent to the claimant." Smith's breach of contract claim is untimely because he failed to bring that claim within three years of discovering the alleged "injury, loss, defect or damage," which *at the latest* was immediately upon moving into his home.

Here, Smith moved into his home on November 8, 2021. Excel Facts, ¶ 44. Smith complains about the accessibility of his master bathroom, kitchen and laundry area, the floors in the home being "unlevel" and the slope of the ramp built outside his home, which he claims is "falling apart." Excel Facts, ¶¶ 54-59. These are not latent construction issues. *See, e.g.*, *Benigno v. Sumner Constr., Inc.*, 278 N.C. App. 1, 6, 862 S.E.2d 46, 51 (2021) ("A latent defect is a defect which is not 'obvious or discoverable upon a reasonable inspection by the plaintiff[] . . . .'" (citing *Oates v. JAG, Inc.*, 314 N.C. 276, 281, 333 S.E.2d 222, 226 (1985)). These are construction features that are visible and "apparent or ought reasonably to have become apparent" to Smith upon moving in on November 8, 2021 and first attempting to use the ramp, master bathroom, kitchen and laundry room, which Smith admits to using regularly. Excel Facts, ¶¶ 44, 55-58; N.C. Gen Stat. § 1-50(a)(5)(f). Indeed, Smith claims he knew in June 2021 that "the home wasn't built the way [he] was told it would be built" after viewing pictures of the home, and further claims he raised concerns with his bathroom, kitchen, ramp, and laundry room during the October 18, 2021 Final Inspection. Excel Facts, ¶¶ 31, 43.[3] Smith did not seek to file a breach of contract claim against Excel until October 31, 2025, the date of his Motion for Leave to File Amended Complaint ("Motion to Amend"). [DE 24.] Thus, the Motion to Amend and proposed breach of contract claim were filed three years, eleven months and twenty-five days after Smith moved into his home where the alleged "unsafe and defective" construction issues were undisputably "apparent."

[3] Smith also claimed the New Home's floors were unlevel no later than March 1, 2022. Excel Facts, ¶ 48.

Smith cannot avoid summary judgment by arguing the breach of contract claim relates back to the original Complaint. The original Complaint was filed on April 1, 2025, which was three years, four months and twenty-five days after Smith moved into his home, making any breach of contract claim untimely under that pleading. [DE 3.] Additionally, the original Complaint did not include a breach of contract claim against Excel or any other defendant. Id. Thus, the breach of contract claim in the Amended Complaint would not "relate back" to the original Complaint because that pleading did not allege either the existence of or breach of a contract between Smith and Excel, thus failing to give Excel notice of a "claim or defense that arose out of the conduct, transaction or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c). Indeed, the original Complaint only alleges FHA and Rehab Act discrimination claims against Excel.

Accordingly, Smith's breach of contract claim is untimely and cannot relate back to the original Complaint and Excel is entitled to summary judgment on Smith's breach of contract claim.

**b. There was no enforceable contract between Excel and Smith**

Smith's breach of contract claim against Excel also fails because he was not a party to an enforceable contract with Excel. "The general rule is that one who is not a party to a contract may not maintain an action for its breach." *Matternes v. City of Winston-Salem*, 286 N.C. 1, 12, 209 S.E.2d 481, 487 (1974).

Smith was not a party to the contract between NCORR and Excel and his breach of contract claim fails. The undisputed facts show that on March 3, 2020, Excel submitted the Excel RFB in response to NCORR's CFPQ and February 2020 RFB which became the contract between Excel and NCORR. Excel Facts, ¶¶ 18-23. This contract lists only two parties: NCORR and Excel. Excel provided work on Smith's home pursuant to the April 8, 2020 Work Order signed by Excel and NCORR. Excel Facts, ¶¶ 24 When Excel completed work in connection with Smith's home,

Excel applied to NCORR for payment. Excel Facts, ¶ 60. Smith never paid Excel any money. Excel Facts, ¶ 17. Accordingly, Smith was not a party to the contract between NCORR and Excel and "may not maintain an action for its breach." *Matternes*, 286 N.C. at 12, 209 S.E.2d at 487. Smith cannot avoid this outcome under the third-party beneficiary doctrine because he was an incidental, and not direct, beneficiary of the contract between Excel and NCORR. "[A] third person may sue to enforce a binding contract made for his direct benefit but not where the benefit to him is only incidental." *Vogel v. Reed Supply Co.*, 277 N.C. 119, 128, 177 S.E.2d 273, 279 (1970). A landowner "is a mere incidental beneficiary of the construction subcontract between [the subcontractor] and the general contractor. As such he cannot maintain against [the subcontractor] a claim for damages for breach of the subcontract." *Id.*, 277 N.C. at 129, 177 S.E.2d at 279 ("The performance of the subcontractor is not given or received in discharge of the obligation of the general contractor to the owner, but rather in discharge of the subcontractor's own obligations to the general contractor.") (citing Simpson on Contracts § 116 at p. 246; 4 Corbin on Contracts § 779D). Here, Smith as a landowner was "a mere incidental beneficiary of the construction contract between" subcontractor Excel and general contractor NCORR. *Id.* Smith cannot show he directly benefitted from the Excel-NCORR contract as a donee or gift beneficiary. *See, id.*, 277 N.C. at 127, 177 S.E.2d at 278. Excel and NCORR did not intend their contract to make a gift to Smith. *Id.*, 277 N.C. at 128, 177 S.E.2d at 279 ("As a general proposition, the determining factor as to the rights of a third party beneficiary is the intention of the parties who actually made the contract."). Indeed, the Work Order entered between NCORR and Excel relating to Smith's home states "NCORR and [Smith] will enter into a Supplement to Grant Agreement with respect to the specific Project." The intent of NCORR and Excel thus showed NCORR would provide Smith with a home pursuant to a separate grant agreement between NCORR and Smith,

and not as a gift, which could have been revoked. *Courts v. Annie Penn Mem'l Hosp., Inc.*, 111 N.C. App. 134, 138, 431 S.E.2d 864, 866 (1993) ("The intention to give, unaccompanied by the delivery, constitutes a mere promise to make a gift, which is unsupported by consideration, and, therefore, non-obligatory and revocable at will.").

To the extent Smith proffers the *Homeowner-Contractor Replacement and Elevation Agreement* ("HCRE Agreement") as a contract between himself and Excel, that document is not an enforceable contract. The HCRE Agreement is not supported by consideration and is therefore unenforceable. *Inland Constr. Co. v. Cameron Park II, Ltd, LLC*, 181 N.C. App. 573, 576, 640 S.E.2d 415, 418 (2007) ("An enforceable contract is one supported by consideration.") (citing *Lee v. Paragon Group Contractors*, 78 N.C. App. 334, 337, 337 S.E.2d 132, 134 (1985)). Here, the HCRE Agreement shows Smith paid FEMA grant proceeds – not his own money – to NCORR to hold in "escrow" but does not indicate any payments made by Smith to Excel or otherwise show any "benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee" between Smith and Excel. Excel Facts, ¶¶ 15-16 (Smith Exhibit 5, p. 1). *Brenner v. Little Red Sch. House, Ltd.*, 302 N.C. 207, 215, 274 S.E.2d 206, 212 (1981). Indeed, the purpose of the HCRE Agreement is not to make a new contract but to summarize NCORR's prior *separate* agreements with Excel and Smith. Excel Facts, ¶¶ 15-16 ("I assumed [the HCRE Agreement] was going into the agreement that my house would be replaced. And this was the document stating that I agreed with everything that they had previously shared about the program and about the proceedings of getting assistance."); Smith Exhibit 5, p. 1. The HCRE Agreement is therefore unenforceable by Smith as to Excel.

For the foregoing reasons, Smith is not a party to any enforceable agreement with Excel and therefore "may not maintain an action for [] breach." *Matternes*, 286 N.C. at 12, 209 S.E.2d at 487 (1974).

### c. Excel did not breach the contract

Even if Smith's breach of contract claim were timely raised and Smith had an enforceable contract with Excel, which are both denied, the undisputed facts show Smith's claim fails because he cannot prove a breach. To prove a breach of contract, Smith must show "(1) existence of a valid contract and (2) breach of the terms of [the] contract." *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005). The First Amended Complaint alleges Excel "breached [the] contract by constructing a defective and unsafe dwelling on real property." [DE 39, ¶ 112.]

Excel did not construct a defective and unsafe dwelling. In support of this claim, Smith complains about the accessibility of his master bathroom, kitchen and laundry area, the floors in the home being "unlevel" and the slope of the ramp built outside his home, which he claims is "falling apart." Excel Facts, ¶¶ 54-59. Smith acknowledged there was one "accessible" floor plan available, and he was only eligible for the three-bedroom model. Excel Facts, ¶ 26. Excel provided that home in accordance with the Program requirements and accessibility specifications, as confirmed by NCORR and accepted by Smith, which were: levers for doorknobs, bathroom grab bars at the toilet and shower, cabinets 54" from the ground, counter tops near 36"[4], a kitchen workstation at least 30" wide, a ramp, doors 32-48" wide and front facing controls on kitchen appliances. Excel Facts, ¶¶ 12, 20-24, 33-40, 59-60. Additionally, at Smith's request, the home included the bathtub in the master bathroom and cabinet doors in the master bathroom and kitchen.

---

[4] As to the countertop measurements, Smith's proffered expert Littrell took measurements once on June 11, 2024, 20 months after the one-year warranty expired on October 18, 2022. Smith's proffered expert Duncan admitted that measurements within Smith's New Home may change over time. Excel Facts, ¶¶ 62, 66.

Excel Facts, ¶ 34. NCORR accepted Excel's work on Smith's home as complete. Excel Facts, ¶ 59. As to whether the floor was level, Excel had the floor evaluated and found it to be level, and Smith's experts did not report on whether the floor was level. Excel Facts, ¶¶ 61-62 (Duncan-Littrell Report). To the extent Smith complains his home could have been more accessible, this raises design preferences outside the contractual Program specifications. Moreover, any normal wear and tear of the flooring or ramp fall outside the warranty. Finally, Smith's own experts testified the UFAS and ADA 2010 accessibility guidelines Smith now seeks to enforce do not apply to his New Home (or any individual home) and the home is wheelchair accessible so long as Smith can use it, which he does. Excel Facts, ¶¶ 54-58, 63-64. Accordingly, the undisputed facts show Excel did not build a "defective and unsafe" dwelling and did not breach any contract in building Smith's New Home.

For the foregoing reasons, Excel is entitled to judgment as a matter of law as to Smith's breach of contract claim and that claim should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant Excel respectfully requests the Court GRANT its Motion for Summary Judgment and DISMISS Smith's claims against Excel *with prejudice*.

Respectfully submitted this the 16th day of September, 2026.

**JACKSON LEWIS P.C.**

BY: /s/ *Jason V. Federmack*
JASON V. FEDERMACK
N.C. State Bar No. 46014
DANIELLE BLAND
N.C. State Bar No. 60022
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Telephone: (919) 760-6460
Facsimile: (919) 760-6461
Email: jason.federmack@jacksonlewis.com

Email: Dani.bland@jacksonlewis.com
*Counsel for Defendant Excel Contractors, LLC*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies pursuant to Local Rule 7.2(f) that this Memorandum of Law contains 5,173 words, exclusive of caption, signature block, any required certificates, any attachments, exhibits, affidavits or other addenda as reported by word processing software; and Defendant's Rule 56.1 Statement of Material Facts incorporated herein pursuant to Local Rule 56.1(c) contains 3,070 words, exclusive of caption, signature block, any required certificates, any attachments, exhibits, affidavits or other addenda as reported by word processing software; and together therefore do not exceed 8,400 words.

This the 16th day of September, 2026.

**JACKSON LEWIS P.C.**

BY: /s/ *Jason V. Federmack*
JASON V. FEDERMACK
N.C. State Bar No. 46014
DANIELLE BLAND
N.C. State Bar No. 60022
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Telephone: (919) 760-6460
Facsimile: (919) 760-6461
Email: Jason.Federmack@jacksonlewis.com
Email: Dani.Bland@jacksonlewis.com
*Attorney for Defendant Excel Contractors, LLC*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

CIVIL ACTION NO.: 4:25-cv-59

| | |
|---|---|
| ARNOLD JEROME SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF NORTH CAROLINA, NORTH CAROLINA OFFICE OF RECOVERY AND RESILIENCY, AND EXCEL CONTRACTORS, LLC,<br><br>Defendants. | **<u>CERTIFICATE OF SERVICE</u>** |

The undersigned certifies that September 16, 2026, a copy of the foregoing *Defendant Excel Contractors, LLC's Memorandum of Law in Support of Motion for Summary Judgment* was electronically filed with the Clerk of the Court using the Court's CM/ECF electronic service system, which will send notification of the filing to the following:

Shray Shetty
North Carolina Justice Center
shray@ncjustice.org

Ashley Denise Skaff
Legal Aid of North Carolina – Fair Housing
ashleys@legalaidnc.org

*Counsel for Plaintiff*

Tanner J. Ray, Assistant Attorney General
Emily Maloney, Special Deputy Attorney General
N. C. Department of Justice
Public Safety Section
Tjray@ncdoj.gov
Emaloney@ncdoj.gov

*Counsel for Defendants NCORR and the State of North Carolina*

This the 16th day of September, 2026.

**JACKSON LEWIS P.C.**

BY: /s/ *Jason V. Federmack*
JASON V. FEDERMACK
N.C. State Bar No. 46014
DANIELLE BLAND
N.C. State Bar No. 60022

3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Telephone: (919) 760-6460
Facsimile: (919) 760-6461
Email: Jason.Federmack@jacksonlewis.com
Email: Dani.Bland@jacksonlewis.com
*Attorney for Defendant Excel Contractors, LLC*