IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO.: 4:25-cv-59-BO-RJ

| | |
|---|---|
| ARNOLD JEROME SMITH,<br><br>Plaintiff,<br>vs.<br><br>STATE OF NORTH CAROLINA, N.C. OFFICE OF RECOVERY AND RESILIENCY AND EXCEL CONTRACTORS LLC,<br><br>Defendants. | **DEFENDANT EXCEL CONTRACTORS LLC'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

**NOW COMES** Defendant Excel Contractors LLC ("Defendant" or "Excel") by and through its undersigned counsel, and presents this Local Rule 56.1(a)(1) Statement of Undisputed Material Facts:

**A. Plaintiff's Ownership of the Home and Land at 1574 Savannah Heights Drive**

1. Plaintiff Arnold Jerome Smith ("Plaintiff" or "Smith") has lived at 1574 Savannah Heights Drive, Kinston, North Carolina, 28501 since November 2000. Plaintiff owns that property. Smith 10:3-9; 33:4-6.

2. Smith initially acquired the property and home placed there (the "First Home") through FEMA after Hurricane Floyd destroyed a prior home on family land. Smith 32:13-33:3.

3. The First Home was damaged by hurricanes in 2016 and 2018. Smith 33:7-16.

**B. Smith Applied to the CDBG-DR Homeowner Recovery Program**

4. The North Carolina Office of Recovery and Resiliency ("NCORR") administers the Community Development Block Grant Disaster Recovery ("CDBG-DR") Homeowner Recovery Program (the "Program"). Smith 44:25-45:8; Smith Exhibit 4, p. 2.

5. Smith applied for a new home through the Program by completing a CDBG-DR Housing Recovery Program Application on July 9, 2018 (the "Application"). Smith 35:6-36:24; Smith Exhibit 2.

6. In the Application, Smith indicated: a) he owned the land and home there and occupied the property as his primary residence; b) Smith was the only person listed on the deed and there were no liens or mortgages; c) the home was not a rental property or a second home and was not being rented to another person or used as a business; and d) Smith was not receiving subsidized housing assistance. These responses were accurate at the time Smith completed the Application and remain accurate presently. Smith 37:5-39:13; Smith Exhibit 2.

7. Smith's home healthcare aid has lived with him since 2013 but has never paid rent. Smith 40:13-25.

8. Smith completed a Manufactured Home Replacement Form, Single-Family Homeowner Program ("Replacement Form") on June 13, 2019. Smith 41:6-18; 44:13-18; Smith Exhibit 3.

9. On the Replacement Form, Smith requested: a) ramp entrance, which he understood "would be handicap-accessible, ADA-compliant;" b) grab bars, explained to Smith as for accessing the bathtub, shower or toilet; c) bathroom accessibility and full bathroom accessibility, which Smith understood to let him "move around it freely without any obstructions;" d) kitchen accessibility, explained to Smith as lower countertops. Smith 42:14-44:24.

10. Smith testified he was told by case workers at the beginning of the process that he would get a home that was "ADA compliant" and "handicap accessible." Smith 12:16-13:14.

11. Smith was unaware of what the Americans with Disabilities Act guidelines were at the time. He first looked up those guidelines sometime after the New Home granted to Smith was delivered to his property in February 2021. Smith 58:15-17; 106:14-24.

12. On the Replacement Form, Smith also acknowledged: "I/we acknowledge that the scope of work to be completed will be made in accordance with the program standards and I/we will adhere to the selections or options or options provided to replace my/our manufactured home." Smith 41:6-18; 44:13-18; Smith Exhibit 3, p. 2.

**C. NCORR Awarded Smith a Replacement Manufactured Housing Unit ("MHU")**

13. NCORR awarded Smith a replacement MHU (the "New Home"). Smith entered into a Rebuild NC Homeowner Grant Agreement with NCORR on December 16, 2019. Smith 44:25-46:8; Smith Exhibit 4.

14. Smith was required to pay $1,118.84 into escrow, which was not his own funds but funds leftover from a $1,400 FEMA grant Smith received before he applied to the Program. Smith 47:6-18.

15. Smith and Excel signed a document titled, Homeowner-Contractor Replacement and Elevation Agreement ("HCRE Agreement"). Smith 47:19-48:13; Smith Exhibit 5.

16. Smith signed the HCRE Agreement because he "assumed it was going into the agreement that my house would be replaced. And this was the document stating that I agreed with everything that they had previously shared about the program and about the proceedings of getting assistance." Smith 48:20-25; Smith Exhibit 5.

17. Smith only made one payment for his New Home, the escrow payment paid to NCORR in July 2019. He did not make any other payments to NCORR or Excel. Smith 47:6-18; 49:8-50:2.

## D. Excel Contracts with NCORR for the Program and Smith's New Home

18. On December 6, 2019, NCORR issued a Request to Prequalify Contractors for Residential Construction Services, RFPQ # 19-RFP-014914-GSX ("RFPQ") relating to rehabilitation, reconstruction, manufactured housing unit replacement, demolition and/or elevation of eligible structures through NCORR recovery programs. Exhibit A – Request to Prequalify Contractors.

19. Further, the RFPQ stated, "This RFPQ is not a contract. Prequalified Contractors will have the ability to bid upon construction work administered by NCORR. The individual Requests for Bid ("RFB") will be the contracts." *Id.*, p. 4. Per the RFPQ, "Services provided include replacement of MHUs, including units meeting ADA compliance requirements," with "Americans with Disabilities Act (ADA) compliance, where required." *Id.* p. 15.

20. NCORR then issued a Request for Bid for Work Orders for Residential Construction Services on January 24, 2020 (Exhibit B), followed by an *Important Bid Addendum* on January 29, 2020 (Exhibit C). The January 29, 2020 *Addendum* included responses to questions submitted for the January 2020 RFB. One question asked, "[r]egarding accessibility scope of work, is the UFAS or ADA standard used?" The January 29, 2020 *Addendum* answered: "See minimum building standards in the specifications below for ADA requirements." *Id.* p. 4. The requirements specified were:

a. All doors must have levers for door knobs;

b. Grab bars in bathrooms at toilet and shower;

c. Handicap accessible shower with seat 33" min – 36" max;

d. Cabinets overhead 54" from ground;

e. Counter top max height 34";

f. Workstation in the kitchen min 30" wide;

g. Removeable from cabinet or no cabinet under sink;

h. Ramp or lift;

i. Doors 32" – 48";

j. Stove must have front controls;

k. Refrigerator must have pull (handles);

l. Dishwasher must have pull (handles).

*Id.* pp. 4 -7.

21. These accessibility requirements were incorporated into NCORR's revised RFB, dated February 20, 2020. Exhibit D - February 2020 RFB.

22. A later Important Bid Addendum issued on February 26, 2020 (Exhibit E) addressed the question: "Mobile home manufacturers handicap accessible units meet the ADA specifications in the RFB with the exception of counter height. Will a 36" counter height in the handicap accessible units be acceptable, provided that all other accessibility requirements are met." *Id.* p. 3. The February 2020 Addendum responded: "The Minimum Construction Standards state 'counter top max height 36[inches]'." *Id.* p. 3.

23. On March 3, 2020, Excel submitted a RFB response to the February 2020 RFB. Exhibit F. The Excel RFB incorporated the February 26, 2020 Addendum to the February 2020 RFB.

24. NCORR approved Excel to perform work under the RPFQ and entered a Work Order recognizing a Construction Agreement between NCORR and Excel for work on Plaintiff's home as a prequalified vendor, specifically "MHU Replace + Elevation," with a work order value of $91,460.75. Exhibit G.

**E. Smith was Eligible for a Three Bedroom MHU**

25. Smith met with Excel Project Manager Gentry Russo on April 8, 2020, for a pre-construction meeting. Smith 51:3-19; Smith Exhibit 6.

26. There was only one home offered for individuals with an accessibility need. Smith 26:1-12; 51:20-25. The home offered had a three-bedroom and four-bedroom floor plan. Smith only qualified for the three-bedroom home because he was replacing a three-bedroom home. Smith 52:13-23.

27. Smith was concerned about exiting the home in the event of a kitchen stove fire. Smith favored the four-bedroom plan because of easier access to the back door, whereas the three-bedroom plan would require Smith pass the kitchen stove on his way to an exit. Smith 26:13-24.

28. Smith suggested a modification where the three-bedroom plan would incorporate the exit Smith favored in the four-bedroom plan. Smith 54:14-55:9.

29. Russo told Smith "maybe he could modify" the floor plan. Smith 52:23-53:5. Smith claims Russo told him, "he would have to speak to his boss and he would get back to" Smith, and "[Russo] would see what he could do or if he could modify it because they only offered one home that was considered ADA compliant." Smith 55:9-11; 56:5-13.

30. Smith accepted the three-bedroom floor plan Excel offered, which met Program specifications, rather than wait to go through another bidding process. NCORR 30(b)(6): 53:1-54:22.

31. Smith believed he was getting this modified floor plan, but he did not. Smith 27:1-9. Smith claims Russo lied to him because he did not receive the modified floor plan. Smith 71:21-72:9. Smith claims he saw pictures of his New Home in June 2021 that made him "realize[] that the house wasn't built the way that [he] was told it would be built." Smith 68:21-69:4.

32. Smith claims Russo and Russo's successor described the New Home as "ADA compliant" and "wheelchair accessible." Smith 27:10-28:3.

**F. Excel Built Smith's New Home in Accordance with Program Guidelines for Accessibility and Smith's Requested Changes**

33. Excel built Smith's New Home in accordance with the Program guidelines for accessibility. Excel 30(b)(6) 44:3-20; 66:4-67:2; Excel Exhibit 3, pp. 53-58.

34. Smith asked to keep the tub shown in the floor plan and not remove the cabinet doors. He also asked to keep the carpet, but it was replaced with linoleum for accessibility reasons. Smith 62:20-63:9; 63:21-65:5; Smith Exhibit 8; Smith 67:10-69:14; Smith Exhibit 9; Smith 93:10-16; Smith Exhibit 13.

35. Smith's New Home includes lever door handles throughout the interior, front facing kitchen controls, an accessibility ramp, and grab bars in the master bathroom. Smith Exhibit 12; Duncan Littrell Exhibit 2, Duncan Littrell Report ("Duncan-Littrell Report"), pp. 2-3, 5, 8-9; Smith 18:22-19:3.

36. The front, back, master bedroom and master bathroom doors meet the standard at 36". Smith 71:6-12; 95:11-15; 129:19; Duncan-Littrell Report, p. 1.

37. The kitchen floor is 45 1/2" wide. Duncan-Littrell Report, p. 6.

38. The Duncan-Littrell Report indicates "high wall cabinets" in the kitchen but does not provide a measurement. Duncan-Littrell Report, p. 5.

39. The Duncan-Littrell Report indicates a single kitchen countertop measurement of 36 1/8" and a single master bathroom vanity countertop measurement of 36 ½". Duncan-Littrell Report, pp. 6, 8.

**G. Smith Accepted the New Home on October 18, 2021**

40. Smith signed an Applicant Acceptance of Work and Receipt of Warranty Notice ("Acceptance of Work") on October 18, 2021, where Smith certified, "[t]he construction provided pursuant to Construction Contract including all approved Change Orders, hereafter called the Work has been completed in compliance with the provisions of the contract," and acknowledged the one year warranty period that required reporting defects within thirty days of discovery. Smith 86:17-87:13; Smith Exhibit 11.

41. Smith claims he was told he had to sign the Acceptance of Work to receive the keys to his home. Smith 90:17-22.

42. If Smith chose not to sign the Acceptance of Work, he would still have received the keys and been able to move into the New Home. The only consequence of not signing is the warranty would not be activated. NCORR 30(b)(6) 60:12-62:24; NCORR 30(b)(6) Exhibit 3.

43. During the October 18, 2021 Final Inspection, Smith claims he raised concerns about "the bathroom, the kitchen, … the ramp," the laundry room, the use of linoleum and carpet, and the skirting of the New Home. Smith 87:14-90:17; Smith Exhibit 12. The October 18, 2021, Final Inspection documents include pictures of the ramp and New Home and how each room was laid out. Smith Exhibit 12.

44. Smith moved into the New Home on November 8, 2021. Smith 96:22-97:11; Smith Exhibit 14. Some of Smith's belongings were damaged when moved out of the First Home. Smith estimates there was $800 in damages, as well as damage to items of sentimental value. Smith 98:8-99:9.

**H. Smith's Complaints During the Warranty Period**

45. To the extent Smith made requests for changes or complaints about the New Home, he made them to the Program and never wrote to Excel about that. Smith 126:15-127:4. Smith

contacted Excel to discuss his New Home but cannot recall any issue he contacted Excel about or what he asked. Smith 127:5-23.

46. Smith was present for an initial warranty inspection on December 1, 2021. Smith 102:2-11; 103:10-104:11; Smith Exhibit 15. The only accessibility items Smith raised concerned a grab bar and toilet height in the master bathroom. Smith 104:12-22; 105:13-18; Smith Exhibit 15. The toilet met program guidelines. The remaining items were resolved or held open to be addressed by Excel. Smith Exhibit 15.

47. A second initial warranty inspection took place on January 12, 2022, with Smith present. Smith 108:18-24; Smith Exhibit 16. Only two warranty issues were raised: a running toilet and a loose grab bar. Smith 109:4-12; Smith Exhibit 16.

48. Smith attended a final warranty inspection on March 1, 2022. The grab bar was fastened back to the wall and another grab bar was installed. Smith also complained about unlevel floors, loose trim, carpet in the third bedroom, and cracks in the skirting around the home. Smith had a problem with the ramp but chose not to complain about it. Smith 110:7-113:2; Smith Exhibit 17.

49. During an inspection on April 21, 2022, Smith complained the New Home's two bathrooms lacked a roll in shower and were not "ADA compliant," although the Program only called for one bathroom to be accessible. Smith 113:18-114:4; Smith Exhibit 18. Smith also complained about uneven floors, vinyl flooring installation, loose trim, kitchen cabinet height, "cracks around the foundation," kitchen HVAC, kitchen cabinet doors would not close, and master bedroom doors would not stay open. Smith 115:9-25; Smith Exhibit 18.

50. Smith attended a July 5, 2022 inspection where he raised flooring issues, the accessibility of the bathroom, trimming issues, loose ramp nails and broken kitchen cabinet hinges.

Excel's representative agreed to investigate these issues. Smith 116:23-118:12; Smith Exhibit 19. Excel's representative added more nails to the ramp to address the loose boards. Smith 119:19-120:13.

51. During a July 27, 2022 inspection, Smith complained about flooring issues, the lack of a roll-in shower, trimming issues and a non-functional hallway light. Smith confirmed the trimming issues and non-functional light were fixed. The unlevel floors and wearing of the vinyl flooring were not addressed. Smith 120:14-122:13; Smith Exhibit 20. Smith does not recall raising any other concerns during this inspection. Smith 122:21-123:3.

52. Smith confirmed the cracks in the skirting were cemented at some point. Smith 111:21-112:7. The skirting, or underpinning, was "just superficial for looks," but Smith wanted brick instead of concrete blocks. Smith 125:19-126:2.

53. The Duncan-Littrell Report noted that Smith's use of his wheelchair caused the flooring in the New Home to wear: "[a] solid surface floor is generally adequate for rolling a wheelchair across, except that it is showing the effects of the special wear that wheelchairs impose, now becoming a problem for rolling across in certain areas." Duncan-Littrell Ex. 2, p. 7.

**I. Smith's Current Complaints About the New Home**

54. Smith does not claim Excel discriminated against him. He believes Excel did not fulfill its contract to the best of its ability to provide Smith an "ADA compliant handicap accessible home" based on "what NC Rebuild told me that I would be getting before ever even finding a contract with Excel." Smith 133:13-135:15.

55. Smith complains he cannot use his wheelchair to access his bathroom because it is narrow. He has to approach the sink at an angle, the toilet is too low, and his tub is hard to access.

Smith 15:11-16:25. Smith uses the toilet and sink every day and uses the tub three times a month. Smith 17:1-17.

56. Smith uses his kitchen but complains the kitchen is too narrow, it is hard to access the oven, and the countertops and upper cabinets are too high. Smith 18:6-19:10; 73:9-15; 86:3-9.

57. Smith also complains the laundry area is too narrow and the floors are not level. Smith 21:9-19. Smith uses the laundry area at least once every two weeks. Smith 24:3-4.

58. Smith complains about the grade of the ramp built to access his home, which he says is too steep, not set in the ground and "falling apart." Smith 24:17-25:1. Smith now uses a motorized wheelchair when using his ramp, except for a one-month period when he waited on a replacement battery. Smith 128:21-129:3.

59. Additionally, Smith complains the floors in his home are not level and the flooring has holes and divots beneath the linoleum. Smith 127:24-128:14.

60. When Smith's concerns about the ramp, bathroom and floors were raised to NCORR in March 2023, NCORR confirmed Excel provided Smith's New Home in accordance with the contract and bid specifications and Smith's requested accessibility changes were not covered by the warranty and additional work, if any, would be performed by someone else. This includes Smith's specific requested changes to the accessibility specifications. NCORR 30(b)(6) 67:1-70:6; NCORR 30(b)(6) Exhibit 5. NCORR approved payment of Excel's final invoice for work on Smith's New Home on February 4, 2022. Exhibit H, Excel Complete Invoice Package.

61. In March 2023, Excel commissioned Harris Mobile Home Services LLC ("HMHS") to inspect the complete setup of the New Home. HMHS determined "[e]verything was

set up correct per NC Mobile Home set up codes, homes level was part of question, we determined that home was level, and no actions were needed." Exhibit I.

**J. Smith's Proffered Experts Assessed Smith's New Home Based on Inapplicable Standards**

62. Smith's designated experts Richard Duncan and Hannah Peele Littrell prepared a report dated July 30, 2024, based on measurements collected by Littrell during one visit to Smith's New Home on June 11, 2024 (the "Duncan-Littrell Report"). Duncan-Littrell 33:23-34:1; 41:11-42:11; Duncan-Littrell Exhibit 2.

63. Duncan testified that the Uniform Federal Accessibility Standards ("UFAS") and 2010 Americans with Disabilities Act Standards for Accessible Design ("2010 ADA") do not apply to individual households and were only referenced in the Duncan-Littrell Report in connection with Smith's New Home because those standards were familiar and "would be easy for folks to track what we were talking about." Further, Duncan testified that the UFAS and 2010 ADA are "never an exact fit" in individual homes and it would be "nonsensible" to apply them literally in that context. Duncan-Littrell 11:7-12; 43:19-44:22; 45:16-46:12.

64. Per Duncan, a home is accessible if it is "usable by someone that is in a wheelchair." Duncan-Littrell 77:25-78:4.

65. Neither Duncan nor Littrell reviewed the contracts between Smith, NCORR, North Carolina or Excel. Duncan-Littrell 74:14-23.

66. Duncan testified, the New Home's measurements "may be different now, I'm sure." Duncan-Littrell 70:9-24.

Respectfully submitted, this the 16th day of September 2026.

**JACKSON LEWIS P.C**.

BY: /s/ *Jason V. Federmack*
JASON V. FEDERMACK
N.C. State Bar No. 46014
DANIELLE BLAND
N.C. State Bar No. 60022
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Telephone: (919) 760-6460
Facsimile: (919) 760-6461
Email: jason.federmack@jacksonlewis.com
Email: Dani.bland@jacksonlewis.com
*Counsel for Defendant Excel Contractors, LLC*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

CIVIL ACTION NO.: 4:25-cv-59

| | | |
|---|---|---|
| ARNOLD JEROME SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF NORTH CAROLINA, NORTH CAROLINA OFFICE OF RECOVERY AND RESILIENCY, AND EXCEL CONTRACTORS, LLC,<br><br>Defendants. | ) | **CERTIFICATE OF SERVICE** |

The undersigned certifies that on September 16, 2026, a copy of the foregoing *Defendant Excel Contractors LLC's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment* was electronically filed with the Clerk of the Court using the Court's CM/ECF electronic service system, which will send notification of the filing to the following:

Shray Shetty
North Carolina Justice Center
shray@ncjustice.org

Ashley Denise Skaff
Legal Aid of North Carolina – Fair Housing
ashleys@legalaidnc.org

*Counsel for Plaintiff*

Tanner J. Ray, Assistant Attorney General
Emily Maloney, Special Deputy Attorney General
N. C. Department of Justice
Public Safety Section
Tjray@ncdoj.gov
Emaloney@ncdoj.gov

*Counsel for Defendants NCORR and the State of North Carolina*

This the 16th day of September, 2026.

**JACKSON LEWIS P.C.**

BY: /s/ *Jason V. Federmack*
JASON V. FEDERMACK
N.C. State Bar No. 46014
DANIELLE BLAND
N.C. State Bar No. 60022
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Telephone: (919) 760-6460
Facsimile: (919) 760-6461
Email: Jason.Federmack@jacksonlewis.com
Email: Dani.Bland@jacksonlewis.com
*Attorney for Defendant Excel Contractors, LLC*