IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO.: 4:25-cv-59-BO-RJ

| | |
|---|---|
| ARNOLD JEROME SMITH,<br><br>Plaintiff,<br>vs.<br><br>STATE OF NORTH CAROLINA, N.C. OFFICE OF RECOVERY AND RESILIENCY AND EXCEL CONTRACTORS LLC,<br><br>Defendants. | **DEFENDANT EXCEL CONTRACTORS LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Defendant Excel Contractors LLC ("Excel"), by and through the undersigned counsel and pursuant Rule 56 and Local Rules 7.1 and 7.2 offers this memorandum in opposition to Plaintiff Arnold Smith's ("Smith") Motion for Partial Summary Judgment (the "Motion").

## INTRODUCTION AND NATURE OF THE CASE

Plaintiff Arnold Jerome Smith applied for and received a grant for a new accessible manufactured housing unit ("MHU") (the "New Home") as part of a grant made through the North Carolina Community Development Block Grant – Disaster Relief Homeowner Recovery Program (the "Program" Or "ReBuild NC") administered by Defendant North Carolina Office of Recovery and Resiliency ("NCORR") after hurricanes damaged the home he owned and lived in for nearly 20 years. NCORR contracted with Defendant Excel to provide an accessible home and build a ramp for Plaintiff on his property where the former home had been. Excel provided the accessible home in accordance with Program specifications and Smith's requests, which Smith accepted.

Smith's Amended Complaint alleges his home should have included additional accessibility features greater than what the Program required.

Smith has filed a Motion for Partial Summary Judgment (the "Motion") which includes his Fair Housing Act ("FHA"), Section 504 of the Rehabilitation Act ("Section 504") and breach of contract claims against Excel. Smith's Motion relies on an unavailing argument for an expansion of Program specifications, statements about "Defendants" that may or may not include Excel, and generalized claims about the accessibility of Smith's New Home that fail to present undisputed material facts capable of showing Excel is liable to Smith on his FHA, Section 504 or breach of contract claims. As such, Smith is not entitled to judgment against Excel and his Motion should be DENIED.

## STATEMENT OF THE FACTS

Defendant Excel Contractors, LLC incorporates by reference herein *Defendant Excel Contractors, LLC's Responses to Plaintiff's L.R. 56.1 Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment*, which is filed contemporaneously herewith and incorporates Excel's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment. See LR 56.1(c); DE 54.

## ARGUMENT

### I. Excel Provided Smith with an Accessible New Home in Accordance with its Contract and Program Specifications

There is no dispute Excel provided Smith with an accessible MHU pursuant to its contract with NCORR, Program guidelines, and Smith's approved floor plan. It is undisputed the NCORR Program specifications, which became the contract between Excel and NCORR, called for specific accessibility features for an "ADA Unit." Those features were:

a. All doors must have levers for door knobs;

b. Grab bars in bathrooms at toilet and shower;

c. Handicap accessible shower with seat 33” min – 36” max;

d. Cabinets overhead 54” from ground;

e. Counter top max height 36”;

f. Workstation in the kitchen min 30” wide;

g. Removeable from cabinet or no cabinet under sink;

h. Ramp or lift;

i. Doors 32” – 48”;

j. Stove must have front controls;

k. Refrigerator must have pull (handles);

l. Dishwasher must have pull (handles).

DE 54, ¶¶ 20-24; see also, DE 50, ¶ 25.

When reviewing Excel’s proposed floor plans, Smith expressed no concerns about accessibility, only an inquiry about egress from his bedroom to the back door. DE 54, ¶ 27. The floor plans under consideration all showed a toilet next to the bathtub in the master bathroom. Stapleton Declaration, DE 58-1, ¶¶ 10-11; DE 58-8; DE 58-9. Smith accepted the MHU that Excel offered to avoid delay, i.e., waiting to go through another bidding process. DE 54, ¶ 30; DE 51-9, pp. 129-130 (“He said that he signed the papers because he doesn’t want to delay construction.”). Smith asked to keep the bathtub. DE 54, ¶ 34. NCORR determined the New Home that Excel provided for Smith met contract and Program requirements. DE 54, ¶ 60. Smith signed an “Acceptance of Work” certifying the New Home complied with contract requirements on October 18, 2021. DE 50, ¶ 32; DE 54, ¶ 40.

While Smith complains about the use of his master bathroom, kitchen, laundry area and ramp, there is no dispute that he regularly uses these parts of his home, including his bathroom

toilet and sink daily and his bathtub three times a month. See DE 54, ¶¶ 55-58. Statements in Smith's Affidavit that he cannot use his bathtub or toilet are taken nearly verbatim from Smith's original Complaint and Amended Complaint. See DE 51-1, ¶¶ 15-16; DE 3, ¶¶ 30-31; DE 39, ¶¶ 34-35. These statements are inconsistent with Smith's deposition testimony, taken on April 15, 2026, where Smith testified under oath that he uses the sink and toilet every day and uses the tub he requested three times a month. See DE 54, ¶ 55; DE 55-10, p. 12, Smith 17:1-17. These portions of Smith's Affidavit should therefore be disregarded under the "sham affidavit doctrine," which allows the Court to "disregard an affidavit contradicting the affiant's prior testimony if it appears the affidavit was filed in an attempt to manufacture an issue of fact." *Cooper v. Smithfield Packing Co.*, No. 7:13-CV-00145-F, 2016 U.S. Dist. LEXIS 165629, at *17 (E.D.N.C. Nov. 30, 2016) (citing ***Rohrbough v. Wyeth Labs., Inc.***, 916 F.2d 970, 975 (4th Cir. 1990)). While usually applied in the context of an affidavit opposing a motion for summary judgment, the sham affidavit doctrine should be applied here where Smith's Motion relies entirely on claims his New Home is not accessible, i.e., he cannot use his New Home, in direct contravention of his own sworn testimony.

HUD's definition of "Accessible" for an "individual dwelling unit" states the "unit" is accessible if "when designed, constructed, altered or adapted can be approached, entered and used by individuals with physical handicaps."[1] This aligns with Smith's own expert, who testified a home is accessible if it is "usable by someone in a wheelchair." *Id.* at ¶ 64. Accordingly, Smith's New Home is "Accessible" because there is no genuine dispute it can be "approached, entered and used by" him.

[1] While that definition states a unit may be "Accessible" "within the meaning of this paragraph" if it complies with UFAS, it is not required. Stated differently, UFAS compliance may be sufficient, but is not necessary, to determine whether an "individual dwelling unit" is accessible. 24 CFR § 8.3.

Smith's Motion instead relies on claims his New Home generally lacks Uniform Federal Accessibility Standards ("UFAS") or 2010 ADA Standards for Accessible Design ("2010 ADA") features to support his claim his New Home is not accessible. The Motion fails, however, to proffer legal authority to support this position. For example, Smith relies on HUD notices stating, "use of recovery funds must meet accessibility standards," but those notices do not establish the UFAS or 2010 ADA as mandatory "accessibility standards" generally or under the Program. E.g., DE 49, p. 5; DE 51-5, pp. 26 (81 F.R. 38254), 62 (83 F.R. 5844).

Indeed, the language of the UFAS and 2010 ADA show they are not controlling here. The UFAS provides, "[t]hese standards are to be applied during the design, construction, and alteration of buildings and facilities to the extent required by the Architectural Barriers Act of 1968, as amended." UFAS, Purpose, 41 C.F.R. 101-19.6, App. A, available at https://www.access-board.gov/files/ufas/ufas.pdf. The Architectural Barriers Act specifically excludes "privately owned residential structure[s] not leased by the Government for subsidized housing programs." 42 U.S.C. § 4151. As to the 2010 ADA, the requirements relevant to Title II of the ADA apply to state and local government facilities "constructed by, on behalf of, or for the use of a public entity," including residential facilities with residential dwelling units for sale to individuals. 28 CFR 35.151(a)(1). The requirements relevant to Title III of the ADA set standards for places of public accommodation and commercial facilities. 28 CFR 36.101(a). Here, Smith's New Home is a three-bedroom MHU (trailer) that Smith owns and did not purchase, on land Smith has owned for 20 years, and is not a place of public accommodation or a commercial facility. DE 54, ¶¶ 1, 6, 13, 26.

Smith's own experts stated the UFAS and 2010 ADA standards are "never an exact fit" in individual homes and it would be "nonsensible" to apply them literally in that context. Smith's

experts only referenced those standards because they are familiar. DE 54, ¶ 63; DE 51-2, Duncan-Littrell 11:7-12; 43:19-44:22; 45:16-46:12.

Moreover, there is no support for Smith's claim the UFAS or 2010 ADA standards were incorporated into the contract between Excel and NCORR – that claim is not supported by the evidence cited. See, DE 49, p. 6; DE 51-12, pp. 7. That contract, and the Program specifications, instead specify the required "ADA Unit" accessibility features identified above. DE 50, ¶ 25; DE 54, ¶¶ 20-24.

Accordingly, the undisputed facts show Excel provided Smith with an accessible home in accord with its contract with NCORR and Program specifications. For these reasons and the reasons that follow, Smith is not entitled to judgment against Excel and his Motion for Partial Summary Judgment should be denied.

## II. EXCEL DID NOT VIOLATE THE FAIR HOUSING ACT

Smith's FHA claim against Excel fails and his Motion should be denied because the undisputed facts show Smith was neither a "buyer [nor] renter," Excel did not refuse Smith accommodations or modifications, and Excel did not discriminate against Smith.

### A. Smith Cannot Succeed on His FHA Claim Because He Was Not a Buyer or Renter

Smith is not entitled to judgment against Excel on his FHA claim because the undisputed facts show he was neither a buyer nor renter. "[T]he FHA makes it unlawful '[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a [disability]'[or] '[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of a [disability].'" *Corey v. Sec'y, United States HUD*, 719 F.3d 322, 326-27 (4th Cir. 2013) (citing 42 U.S.C. § 3604(f)(1); 42 U.S.C. § 3604(f)(2)). "Section 3604 [of the FHA] is aimed at stopping discriminatory practices in the sale

or rental of property." *Coe v. CMH Homes*, No. 1:05CV00294, 2006 U.S. Dist. LEXIS 47153, at *4 (M.D.N.C. July 11, 2006) (dismissing FHA claim based on the moving and installation of a mobile home which did not include the sale or rental of the home). "Even in light of the Court's obligation to construe the FHA as broadly as possible, the clear language of the statute restricts the class of people who can bring a claim under section 3604(f)(1) to a 'buyer or renter,' or, at its broadest, individuals who were otherwise denied the opportunity to become a buyer or a renter." *Hunter v. District of Columbia*, 64 F. Supp. 3d 158, 178 (D.D.C. 2014); *Boykin v. Gray*, 895 F. Supp. 2d 199, 210 (D.D.C. 2012) ("[T]he language of [42 U.S.C.S. § 3604(f)] as a whole appears to evince an exclusive concern with the sale and rental of properties and the provision of services to renters.").

Here, there is no genuine dispute of the material fact that Smith was neither a buyer nor renter of his New Home and Smith's FHA claim necessarily fails. NCORR awarded the New Home to Smith as a grant under the Program. DE 54, ¶ 13. The only "payment" Smith made was to return the remainder of a FEMA grant deemed duplicative of the Program grant. Pursuant to the ReBuild NC Homeowner Grant Agreement ("Grant Agreement") between Smith and NCORR, Smith's receipt of an earlier FEMA grant for hurricane damage to his home was considered a "Duplication of Benefits." DE 55-16, ¶¶ 3, 12, p. 17. Further, any "funds already received by [Smith] for damage to the residence which is the subject of the [Grant Agreement] from FEMA . . . must be deducted from [Smith's] grant amount as [Duplication of Benefits]. DE 55-16, ¶ 12. Smith was required to return the unused FEMA grant by depositing it into an escrow account. See DE 55-16, ¶¶ 3. As shown on the Grant Agreement's Exhibit A, Calculation of Grant Award, FEMA previously issued Smith a grant of $1,425.66 in connection with Hurricane Florence, of which there was $1,118.84 remaining – this was the "Duplication of Benefits" Smith

paid into escrow. DE 55-16, p. 17. Notably, Smith was not required to pay the portion of the FEMA funds he already used. The New Home, therefore, was entirely funded by federal grant proceeds and Smith did not use any of his own funds. DE 54, ¶ 17; DE 51-4, Smith Deposition 47:6-18. Smith did not make any other payments and never made a payment to Excel.[2] DE 54, ¶ 17. Smith owns the New Home and property where it sits and has owned that land for more than 20 years. DE 50, ¶ 4; DE 54, ¶¶ 1, 6. Accordingly, there is no genuine dispute of the fact that Smith was not a "buyer or renter" of his New Home and his FHA claim fails.

### B. Excel Did Not Deny Smith Accommodations or Modifications

Smith's Motion for Summary Judgment should also be denied as to his FHA claim against Excel because he has failed to cite proof he either asked Excel for accommodations or modifications or that Excel refused to grant them.

Smith's Statement of Material Facts alleges Smith sought the following accessibility features on his Manufactured Home Replacement Form: "ramp entrance, grab bars, bathroom accessibility, full bathroom accessibility, full kitchen accessibility." DE 50, ¶¶ 18, 20-21; DE 51-10, pp. 2-3. Smith did not identify any specific accessibility modifications on that form but did acknowledge and sign that the "scope of work to be completed will be made in accordance with program standards and [I] will adhere to the selections [] or options provided to replace [my] manufactured home." DE 51-10, pp. 2-3. As discussed above, Excel provided the New Home in accordance with the Program standards / specifications. Moreover, Smith's Statement of Material Facts only alleges Smith submitted a complaint to NCORR about his ramp in May 2021 and further

[2] To the extent NCORR contends Smith was supposed to make the escrow payment to Excel, see DE 59, p. 25, Smith testified the payment went to NCORR and the "Homeowner-Contractor Replacement and Elevation Agreement" ("HCRE Agreement") states the payment was made to NCORR, see DE 54, ¶ 17; DE 55-17, p. 1. In either case, this is not a genuine dispute of a material fact, as there is no dispute the funds Smith paid were federal funds (a "Duplication of Benefits") and not his own funds.

alleges a "lack of adequate space" in the bathroom. DE 50, ¶¶ 30, 41-42. Smith thus fails to identify any specific accommodations or modifications sought, or that he sought them from Excel. Smith's Memorandum similarly fails. The Memorandum repeatedly references NCORR's Case Management Notes in support of the claim Smith "repeatedly requested accommodations to address the home's deficiencies," DE 49, p. 4, but that evidence also fails to identify any specific accommodations or modifications Smith sought, or that he sought them from Excel. That evidence merely records Smith's communications with NCORR to discuss Smith's opinions on the New Home's accessibility features. See, e.g., DE 49, pp. 4, 13, 15, 16-17, 19, 27, citing to DE 51-9[3]. There is only one reference to a reasonable accommodation, recorded on June 9, 2022, when a Program construction liaison informed Smith, "an RA has been submitted in regards to [Smith's] bathroom and ADA needs." DE 51-9, p. 298. Notably, these Notes show that Excel previously offered to install a roll-in shower for Smith, after he requested a tub, but Smith declined because of the location of the toilet, which he did not ask to be moved. DE 51-9, p. 225; see also, DE 49, p. 17.

Accordingly, Smith's proffered evidence fails to establish as an undisputed fact that he made any requests for accommodations or modifications to Excel, or that they were denied. Indeed, Smith testified that he raised complaints and requests to the Program but could not recall what he spoke to Excel about and never submitted anything in writing. See DE 54, ¶ 45; DE 55-10, pp. 89-90. To the extent Smith spoke to Excel about whether his toilet, tub and bathroom closet were ADA accessible, Excel confirmed they were ADA accessible in accordance with Program specifications, which NCORR corroborated. See Stapleton Affidavit, DE 58-1, ¶¶ 16-

[3] Smith cites to NCORR Case Management Notes multiple times in an effort to support his claim that he requested accommodations, "Appendix Ex. 9 p. 12-13, 17-19, 30-31, 36-36, 39, 43-45, 48-49, 51-52, 54, 58-59, 61-62, 67, 72-73, 87, 100-101, 121, 127-128, 129-130, 172, 194, 196-200, 203-205, 209, 211-212, 214, 218, 221-222, 225-227, 232, 235, 291, 293, 298, 304." Some of the cited entries are duplicative.

17; DE 58-14, p. 3; DE 58-15, p. 1. Smith raised an inquiry about keeping the carpeting in the New Home, but Excel advised Smith the carpet was removed and linoleum installed as an accessibility feature. DE 57, ¶ 16; DE 54, ¶ 34; DE 55-10, p. 49, Smith 65:6-20. As to any reasonable accommodation requests that were submitted on behalf of Smith, there is no dispute NCORR told Smith that Excel met its Program and contract obligations, Smith's requested accessibility changes were not covered by the warranty, and that modifications to his home would be performed, if at all, by someone other than Excel. DE 54, ¶ 60. Smith acknowledges Excel followed the Program guidelines ("relied on these policies"), and that any changes he would have requested ("applicant-initiated change order[s]") would have to be approved by the Program ("progress inspector"). DE 49, p. 16; DE 51-8, p. 27. Excel ("general contractor") lacked the authority to approve change orders. DE 51-8, p. 27.

In lieu of evidence that Smith asked Excel for reasonable accommodations or modifications which Excel denied, Smith instead relies on the argument that the New Home does not incorporate UFAS or 2010 ADA guidelines. As discussed above, UFAS and 2010 ADA guidelines do not apply to the New Home. Moreover, neither Smith's Statement of Facts nor his Memorandum identify any specific accommodations or modifications Smith sought from Excel related to the UFAS or 2010 ADA guidelines.[4] As such, Smith's FHA claim against Excel fails because he cannot prove unspecified accommodations or modifications were: (1) reasonable and (2) necessary (3) to afford him equal opportunity to use and enjoy housing. *Bryant Woods Inn v. Howard Cty.*, 124 F.3d 597, 603 (4th Cir. 1997) (citing 42 U.S.C. § 3604(f)(3)). This is especially so considering the undisputed facts showing the New Home is accessible to Smith because he has lived in and

[4] The Memorandum only references an "accessible route" in the home and the width of some doors as examples of things that could have been different, but of which there is no evidence of Smith requesting. DE 49, p.7.

used the New Home regularly since November 8, 2021. DE 54, ¶¶ 1, 6, 44, 55-58. Smith's expert testified a home is accessible if it is "usable by someone in a wheelchair." DE 54, ¶ 64. While Smith may claim to want more accessibility features, there is no genuine dispute that Smith's New Home is accessible to him. The undisputed facts thus fail to show the New Home is "otherwise unavailable" to Smith. 42 U.S.C. § 3604(f)(1).

Finally, Smith does not allege Excel engaged in discrimination against him, as he testified, "I would not say that [Excel] acted discriminatory." DE 54, ¶ 54; DE 55-10, p. 94.

For the foregoing reasons, Smith's FHA claim against Excel fails, Smith is not entitled to damages from Excel, and Smith's Motion should be denied.

## III. EXCEL DID NOT VIOLATE SECTION 504 OF THE REHABILITATION ACT

Smith's Section 504 claim against Excel fails and his Motion should be denied because Excel did not administer the Program, was not a recipient of federal funding and is not a public entity. Additionally, Excel provided Smith with a New Home in accordance with the Program specifications and therefore did not deny Smith the benefits of the Program or otherwise discriminate against him.

### A. Smith's Section 504 Claim Against Excel Fails Because Excel Did Not Administer the Program or Receive Federal Funding and is Not a Public Entity

Excel is not liable under Section 504 because it is not a public entity, and neither received federal funding for nor administered the Program. "Case law has established that a claim under Section 504 will be stated only where the allegedly discriminatory 'program or activity' was conducted by an entity which received or dispersed federal funding." *United States v. City of Charlotte*, 904 F. Supp. 482, 487 (W.D.N.C. 1995) (collecting cases). Here, Smith does not dispute that Defendants North Carolina and NCORR were the recipients of federal funding for the

Program and that North Carolina delegated authority to NCORR to administer and oversee the Program. DE 50, ¶¶ 8-11. Smith also does not dispute that Excel is a limited liability company and licensed general contractor, and that Excel entered into a contract with North Carolina and NCORR for the construction of Smith's home, to include specified accessibility features. DE 50, ¶¶ 22-26. Critically, Smith does not allege that Excel is a recipient of federal funding, that Excel administered the Program, or that Excel is a public entity.[5] See generally, DE 50. Accordingly, Smith's Section 504 claim against Excel fails because Excel is not a public entity, did not "conduct" the Program, and did not receive federal funding.

District Courts in the Fourth Circuit, including this Court, have held that entities who contract with recipients of federal funding are not recipients of federal funding themselves, where the contracting entities do not receive government funding to subsidize their services but instead receive compensation as a "market participant." *Jarno v. Lewis*, 256 F. Supp. 2d 499, 504 (E.D. Va. 2003) ("Although the Fourth Circuit has yet to address this issue, other circuit courts have squarely held that procurement contracts do not constitute federal financial assistance where the recipient receives no government subsidy for its services but rather acts solely as a market participant.") (collecting cases); *Mathis v. GEO Grp., Inc.*, No. 2:08-CT-21-D, 2009 U.S. Dist.

[5] Smith does not allege Excel is liable under Section 504 of the Rehabilitation Act, except to the extent Excel is contractually bound by the HCRE Agreement to comply with CDBG-DR policies and procedures to receive payment from NCORR. As discussed above in Section I, Excel provided the New Home in accordance with Program specifications and neither UFAS nor 2010 ADA guidelines apply. As discussed below in Section IV, the HCRE Agreement is not supported by consideration and is not enforceable. To the extent it is enforceable, which is denied, NCORR paid Excel in full for its work in providing Smith's New Home, rebutting Smith's claim here. See DE 54, ¶ 60; DE 55-8, pp. 2-4. Moreover, Smith's reliance on Excel's contractual relationship to the Program supports Excel's position that it was not a recipient of federal funding and instead was compensated for work pursuant to its contract with NCORR.

LEXIS 132301, at *29 (E.D.N.C. Nov. 9, 2009) (dismissing Rehabilitation Act claim where plaintiff failed to allege Bureau of Prisons either subsidized private prison or that private prison received "[f]ederal financial assistance" within the meaning of the Rehabilitation Act) (citing *Logan v. United States*, No. 96-55042, 1996 U.S. App. LEXIS 32872, at *4 (9th Cir. Dec. 6, 1996) ("[T]he Rehabilitation Act covers only the recipients of federal financial assistance and not the recipients of compensatory payments for services.")); *Smith v. Laidlaw Transit, Inc.*, No. 3:02-4179-JFA-BM, 2005 U.S. Dist. LEXIS 64632, at *18 (D.S.C. Nov. 17, 2005) ("While Rehabilitation Act coverage extends to both direct and indirect recipients of federal funds, it does not follow the federal aid past the intended recipient to those who merely derive a benefit from the aid or receive compensation for services rendered pursuant to a contractual arrangement.") (citing *Hamilton v. Illinois Central Railroad Company*, 894 F.Supp. 1014, 1022 (S.D.Miss. 1995)); *King v. PEM Props.*, Civil Action No. 2:16-cv-09876, 2019 U.S. Dist. LEXIS 201367, at *9 (S.D. W. Va. Sep. 17, 2019) ("An entity receives 'federal financial assistance' under the meaning of the [Rehabilitation Act] 'when it receives a subsidy, as opposed to compensation.'") (collecting cases). Accordingly, because the undisputed facts show Excel did not administer the Program, did not receive federal financial assistance, and is not a public entity, Smith's Section 504 claim fails and his Motion should be denied.

### B. Excel Did Not Deny Smith the Benefits of the Program or Otherwise Discriminate Against Smith

Smith's Section 504 claim against Excel also fails because the undisputed facts show Excel provided Smith with an accessible home in accordance with Program specifications and did not discriminate against Smith. "In order to establish a violation of [Section 504 of the Rehabilitation Act], a plaintiff must prove: (1) that he has a disability; (2) that he is otherwise qualified for

the . . . benefit in question; and (3) that he was excluded from . . . benefit due to discrimination solely on the basis of the disability." *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995). As to the third element, "a plaintiff must show that [he] was excluded from participation in, or denied the benefits of, a program or service offered by a public entity, or subjected to discrimination by that entity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citing 29 U.S.C. § 794(a)).

Here, Smith does not dispute that NCORR's Request for Bid ("RFB") specified the accessibility features for an accessible MHU under the Program. DE 50, ¶¶ 22-25. Additionally, there is no dispute that multiple RFB "Bid Addendum" documents were issued to further clarify the required MHU accessibility features, and that the RFB with Bid Addend[a] became part of the contract between NCORR and Excel. DE 54, ¶¶ 20-24. NCORR determined the New Home that Excel provided for Smith met contract and Program requirements. DE 54, ¶ 60. Smith's Statement of Facts does not dispute that determination. See generally, DE 50. Indeed, Smith's Memorandum does not specify which, if any, accessibility features were part of the Program but were allegedly denied by Excel. See generally, DE 49. Instead, Smith argues "the specifications and measurements listed in the bid solicitation are insufficient to meet requirements of the 2010 ADA Standards or UFAS for residential dwellings." DE 49, pp. 6-7. As discussed above, the 2010 ADA and UFAS standards were not incorporated into Excel's contract with NCORR and are not applicable here. Accordingly, to the extent Smith bases his Section 504 claim on the grounds his New Home should have included unspecified 2010 ADA or UFAS standards, those standards are outside the scope of the Program. Smith therefore cannot use those standards to show he was denied the benefits of the Program. *Doe*, 50 F.3d at 1264-65.

Moreover, because Excel is not a public entity, Smith further cannot show Excel "excluded . . . or denied the benefits of" the Program to Smith. *Constantine*, 411 F.3d at 499. In addition, Smith cannot show Excel discriminated against him. *Id.* Smith testified that Excel did not engage in discrimination against him. DE 54, ¶ 54. Finally, to the extent Smith claims, "[w]hen the federally funded program provides housing, this means that the housing providers, here Defendants, are responsible for the cost of reasonable modifications," it is unclear how Smith intends to show Excel would be responsible or liable for the cost of modifications to Smith's New Home, which he owns and did not purchase, as the cited authorities address modifications requested by tenants of landlords who receive federal funding and the sale of affordable housing. See DE 49, pp. 19, 22-23; *Evans v. ForKids, Inc.*, 306 F. Supp. 3d 827, 829 (E.D. Va. 2018); *Telesca v. Long Island Hous. P'ship*, 443 F. Supp. 2d 397, 409 (E.D.N.Y. 2006).

For the foregoing reasons, Smith's Section 504 claim against Excel fails, Excel is not liable to Smith for any damages and Smith's Motion should be denied.

## IV. EXCEL DID NOT BREACH ANY CONTRACT WITH SMITH

Smith's Motion should be denied as to the breach of contract claim against Excel because Smith's claim is untimely, Excel provided Smith's New Home in accordance with its contractual obligations, and there is no enforceable agreement between Excel and Smith.

### A. Smith's Breach of Contract Claim is Untimely

The undisputed facts show Smith's breach of contract claim against Excel is untimely and his Motion should be denied as to that claim. Pursuant to N.C. Gen. Stat. § 1-52, a claim for breach

of contract must be brought within three years.[6] Under § 1-50(a)(5)(f) and 1-52, a breach of contract action "based upon or arising out of the defective or unsafe condition of an improvement to real property shall not accrue until the injury, loss, defect or damage becomes apparent or ought reasonably to have become apparent to the claimant." Smith's breach of contract claim is untimely because he failed to bring that claim within three years of discovering the alleged "injury, loss, defect or damage," which *at the latest* was immediately upon moving into his home on November 8, 2021. DE 54, ¶ 44. To the extent Smith's Statement of Facts raises concerns with his use of his wheelchair inside the New Home, including adequate bathroom space, those concerns would be "apparent or ought reasonably to have become apparent" to Smith upon moving in on November 8, 2021 and first using the New Home, as these are obvious and not latent construction issues. *See, e.g.*, *Benigno v. Sumner Constr., Inc.*, 278 N.C. App. 1, 6, 862 S.E.2d 46, 51 (2021) ("A latent defect is a defect which is not 'obvious or discoverable upon a reasonable inspection by the plaintiff[] . . . .'" (citing *Oates v. JAG, Inc.*, 314 N.C. 276, 281, 333 S.E.2d 222, 226 (1985)). Indeed, there is no dispute Smith testified he raised concerns about "the bathroom, the kitchen, … the ramp," the laundry room, the use of linoleum and carpet, and the skirting in the New Home during the final inspection on October 18, 2021. DE 54, ¶ 43.[7] Accordingly, relying on November 8, 2021, the date Smith moved into the New Home, these issues were "apparent or ought reasonably to have become apparent" to Smith three years, eleven months and twenty-five days before he sought to Amend his Complaint to add a breach of contract claim on October 31, 2025,

[6] Smith claims in the Amended Complaint that N.C. Gen. Stat. § 1-50 provides a six-year statute of limitations for claims alleging "breach of contract to construct or repair an improvement to real property." See, DE 39, ¶ 113. This interpretation is incorrect, as N.C. Gen. Stat. § 1-50 sets an outside limitation on such claims at six years after substantial completion of the work, while the three-year statute of limitations for a breach of contract claim "continues to run."

[7] Smith also cites a documented discussion between NCORR and himself on June 3, 2021 where Smith discussed the accessibility of his bathroom based on pictures he reviewed. DE 51-9, pp. 61-62. This was nearly four years before Smith filed his original Complaint.

placing the claim well outside the three-year statute of limitations. See, DE 24. Similarly, to the extent Smith claims the breach of contract claim relates back to the original Complaint, which is denied, that pleading was filed on April 1, 2025, or three years, four months and twenty-five days after Smith had knowledge of these issues, also well outside the three-year statute of limitations. Accordingly, Smith's breach of contract claim against Excel is untimely and his Motion should be denied as to this claim against Excel.

**B. Smith Previously Certified the New Home Met All Contractual Requirements**

Smith's breach of contract claim against Excel also fails because it is undisputed Smith certified Excel met its contractual obligations when he signed the "Applicant Acceptance of Work and Receipt of Warranty Notice" on October 18, 2021 following a final inspection of the New Home. DE 50, ¶ 32; DE 51-19, ¶ 2; DE 51-20, DE 54, ¶ 40; DE 57, ¶¶ 17. The "Applicant Acceptance of Work" certified, "[t]he construction provided pursuant to Construction Contract including all approved Change Orders, hereafter called the Work has been completed in compliance with the provisions of the contract." *Id.* As discussed above in Section I, Excel provided Smith's New Home with the accessibility features identified in the RFB and Program specifications. Additionally, there is no dispute NCORR told Smith that: a) Excel met its Program and contract obligations in response to Smith's concerns about the ramp, bathroom and floors; b) that Smith's requested accessibility changes were not covered by the warranty; and c) that modifications to his home would be performed, if at all, by someone other than Excel. DE 54, ¶ 60.

Smith's Memorandum only generally claims Excel "failed to provide an accessible home to Mr. Smith" or "the manufactured home ordered by Defendant Excel was discovered by Mr. Smith to be inaccessible to his disability-related needs." DE 49, p. 27. As such, Smith fails to

identify material facts capable of proving Excel breached any contract, i.e., that it failed to provide the accessibility features identified in the RFB which became Excel's contract with NCORR, or the HCRE Agreement. Indeed, Smith does not dispute that the required MHU accessibility features were specified in the RFB or that Excel "relied on these policies." DE 50, ¶ 25; DE 49, p. 16. Smith does not claim Excel failed to provide these accessibility features. See generally DE 49; DE 50. In sum, Smith's breach of contract claim fails because he cannot dispute Excel satisfied the contract.

### C. Smith Did Not Have an Enforceable Contract with Excel

Smith's breach of contract claim also fails because he did not enter into an enforceable contract with Excel. As an initial matter, the HCRE Agreement on which Smith relies was not supported by consideration to Excel. See, DE 49, p. 25. As discussed above in Section II.A, Smith did not pay his own funds to NCORR or Excel for his New Home – he received the New Home as part of a grant. The only payment Smith made was a refund of the unused portion of a FEMA grant he previously received which was a "Duplication of Benefits." Thus, the "payment" Smith made to escrow was unused federal funding made a part of the grant and therefore does not evidence any "benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee" between Smith and Excel. *Brenner v. Little Red Sch. House, Ltd.*, 302 N.C. 207, 215, 274 S.E.2d 206, 212 (1981).

Nor may Smith rely on Excel's contract with NCORR to pursue a breach of contract claim. "[A] third person may sue to enforce a binding contract made for his direct benefit but not where the benefit to him is only incidental." *Vogel v. Reed Supply Co.*, 277 N.C. 119, 128, 177 S.E.2d 273, 279 (1970). A landowner "is a mere incidental beneficiary of the construction subcontract between [the subcontractor] and the general contractor. As such he cannot maintain against [the

subcontractor] a claim for damages for breach of the subcontract." *Id.*, 277 N.C. at 129, 177 S.E.2d at 279 ("The performance of the subcontractor is not given or received in discharge of the obligation of the general contractor to the owner, but rather in discharge of the subcontractor's own obligations to the general contractor.") (citing Simpson on Contracts § 116 at p. 246; 4 Corbin on Contracts § 779D). Here, Smith as a landowner was "a mere incidental beneficiary of the construction contract between" subcontractor Excel and general contractor NCORR. *Id.* Smith cannot show he directly benefitted from the Excel-NCORR contract as a donee or gift beneficiary. *See, id.*, 277 N.C. at 127, 177 S.E.2d at 278. Excel and NCORR did not intend their contract to make a gift to Smith. *Id.*, 277 N.C. at 128, 177 S.E.2d at 279 ("As a general proposition, the determining factor as to the rights of a third party beneficiary is the intention of the parties who actually made the contract."). Indeed, the Work Order entered between NCORR and Excel relating to Smith's home states "NCORR and [Smith] will enter into a Supplement to Grant Agreement with respect to the specific Project." The intent of NCORR and Excel thus showed NCORR would provide Smith with a home pursuant to a separate grant agreement between NCORR and Smith, and not as a gift, which could have been revoked. *Courts v. Annie Penn Mem'l Hosp., Inc.*, 111 N.C. App. 134, 138, 431 S.E.2d 864, 866 (1993) ("The intention to give, unaccompanied by the delivery, constitutes a mere promise to make a gift, which is unsupported by consideration, and, therefore, non-obligatory and revocable at will.").

Smith, therefore, is not a party to any enforceable agreement with Excel and "may not maintain an action for [] breach." *Matternes v. City of Winston-Salem*, 286 N.C. 1, 12, 209 S.E.2d 481, 487 (1974).

For the foregoing reasons, Smith's breach of contract claim against Excel fails and his Motion should be denied.

## **CONCLUSION**

For all of the foregoing reasons, Defendant Excel respectfully requests the Court DENY Smith's Motion for Partial Summary Judgment.

Respectfully submitted this the 19th day of October, 2026.

**JACKSON LEWIS P.C.**

BY: /s/ *Jason V. Federmack*
JASON V. FEDERMACK
N.C. State Bar No. 46014
DANIELLE BLAND
N.C. State Bar No. 60022
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Telephone: (919) 760-6460
Facsimile: (919) 760-6461
Email: jason.federmack@jacksonlewis.com
Email: Dani.bland@jacksonlewis.com
*Counsel for Defendant Excel Contractors, LLC*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies pursuant to Local Rule 7.2(f) that this Memorandum of Law contains 6,223 words, exclusive of caption, signature block, any required certificates, any attachments, exhibits, affidavits or other addenda as reported by word processing software and does not exceed 8,400 words.

This the 19th day of October, 2026.

**JACKSON LEWIS P.C.**

BY: /s/ *Jason V. Federmack*
JASON V. FEDERMACK
N.C. State Bar No. 46014
DANIELLE BLAND
N.C. State Bar No. 60022
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Telephone: (919) 760-6460
Facsimile: (919) 760-6461
Email: Jason.Federmack@jacksonlewis.com
Email: Dani.Bland@jacksonlewis.com
*Attorney for Defendant Excel Contractors, LLC*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

CIVIL ACTION NO.: 4:25-cv-59

| | | |
|---|---|---|
| ARNOLD JEROME SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF NORTH CAROLINA, NORTH CAROLINA OFFICE OF RECOVERY AND RESILIENCY, AND EXCEL CONTRACTORS, LLC,<br><br>Defendants. | ) | **<u>CERTIFICATE OF SERVICE</u>** |

The undersigned certifies that October 19, 2026, a copy of the foregoing *Defendant Excel Contractors, LLC's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment* was electronically filed with the Clerk of the Court using the Court's CM/ECF electronic service system, which will send notification of the filing to the following:

Shray Shetty
North Carolina Justice Center
shray@ncjustice.org

Ashley Denise Skaff
Legal Aid of North Carolina – Fair Housing
ashleys@legalaidnc.org

*Counsel for Plaintiff*

Tanner J. Ray, Assistant Attorney General
Emily Maloney, Special Deputy Attorney General
N. C. Department of Justice
Public Safety Section
Tjray@ncdoj.gov
Emaloney@ncdoj.gov

*Counsel for Defendants NCORR and the State of North Carolina*

This the 19th day of October, 2026.

**JACKSON LEWIS P.C.**

BY: /s/ *Jason V. Federmack*

JASON V. FEDERMACK
N.C. State Bar No. 46014
DANIELLE BLAND
N.C. State Bar No. 60022
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Telephone: (919) 760-6460
Facsimile: (919) 760-6461
Email: Jason.Federmack@jacksonlewis.com
Email: Dani.Bland@jacksonlewis.com
*Attorney for Defendant Excel Contractors, LLC*

4938-6863-6376, v. 4