IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:25-CV-59

| | | |
|---|---|---|
| ARNOLD JEROME SMITH<br><br>*Plaintiff*,<br><br>v.<br><br>STATE OF NORTH CAROLINA, NORTH CAROLINA OFFICE OF RECOVERY AND RESILIENCY AND EXCEL CONTRACTORS, L.L.C.<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **PLAINTIFF'S RESPONSE IN OPPOSITION OF DEFENDANT EXCEL'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Local Civil Rules 7.1(f) and 7.2, Plaintiff Arnold J. Smith submits the following response in opposition to Defendant Excel's Motion for Summary Judgment filed September 16, 2026 [ECF 052-055]:

## STATEMENT OF THE CASE

Plaintiff Arnold J. Smith has alleged disability discrimination under the federal Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act; and breach of contract under N.C.G.S. 1-50.[1] The procedural history of this case is well documented. In accordance with ECF 047, all parties filed separate and competing motions for summary judgment. As it relates to this memorandum, on September 16, 2026, Defendant Excel Contractors, LLC ("Excel") moved for summary judgment, arguing that Mr. Smith's Fair Housing Act ("FHA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and breach of contract claims should be dismissed. For the reasons set forth below and in Plaintiff's Response to

[1] *See* Pl. Am. Compl. ECF 039.

Defendant Excel's Rule 56.1 Statement of Material Facts, Plaintiff's Statement of Additional Material Facts, and supporting evidence in opposition, the Court should deny this motion.

**DEFENDANT'S RULE 56.1 STATEMENT OF FACTS**

Mr. Smith has filed a response to Defendant Excel's Rule 56.1 Statement of Material Facts as well as evidence to support his genuine material disputes and objections. Mr. Smith has additionally filed a Statement of Additional Material Facts. In brief, Mr. Smith is a person with a disability. Mr. Smith was accepted into the Community Development Block Grant – Disaster Recovery Homeowner Recovery Program, otherwise known as the ReBuild NC Program because his home was damaged by Hurricane Matthew, a federally declared natural disaster. This program was funded through a Community Development Block Grant and administered by State Defendants. In accordance with program guidelines, Mr. Smith was awarded a replacement mobile home. Defendant Excel was awarded a contract to construct Mr. Smith's replacement mobile home in accordance with applicable federal and state laws. This contract specified that Mr. Smith required an accessible mobile home. The home provided to Mr. Smith was not accessible to him, and Defendants refused to modify or otherwise remedy the home to make it accessible to his disability-related housing needs.

**STANDARD OF REVIEW**

All parties in this matter have filed motions for summary judgment. When parties file competing (or cross) motions for summary judgment independently, courts apply the same standard of review that governs a single motion. *Burlington Ins. Co. v. Eden Cryogenics LLC*, 126 F. Supp. 3d 947, 954 (S.D. Ohio 2015). The filing of cross-motions does not mean that the parties concede that there are no genuine issues of material fact, nor does it require the court to grant

summary judgment to one side or the other. *Taft Broad. Co. v. United States*, 929 F.2d 240 (6th Cir. 1991).

The Court must view the facts in the light most favorable to plaintiffs, drawing all reasonable inferences in their favor. *Dean v. Jones*, 984 F.3d 295 (4th Cir. 2021). Any conflicts in the evidence must be resolved in favor of plaintiffs or left for the jury to decide. *See, e.g., id* at 306-308. Additionally, "an adverse party may not rest upon the mere allegations or denials of his pleading, but [...] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita Electronic Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ARGUMENT

### 1. Defendant Excel is not entitled to summary judgment on Mr. Smith's Fair Housing Act Claim

#### a. Defendant Excel fails to show that Mr. Smith is not a "buyer or renter" under 42 U.S.C. § 3604(f)(1)

Excel asserts that Mr. Smith could not have been a "buyer or renter" for Fair Housing Act claims under 42 U.S.C. § 3604(f). However, "[a] claimant is said to be a 'buyer or renter' under the FHA when he or she supplies consideration in exchange for an interest in property." *Wartluft v. Milton Hershey Sch. & Sch. Trust*, 400 F. Supp. 3d 91, 104 (M.D. Pa. 2019). Disabled individuals can be considered buyers or renters if they are the ones "supplying the funds" or "seeking proprietary interest in the property." *Growth Horizons, Inc. v. Delaware Cty., Pa.*, 983 F2d 1277, 1283 n.10 (3d Cir. 1993). Mr. Smith did both.

Despite Defendant Excel's attempts to discredit Mr. Smith's consideration tendered in exchange for the mobile home, they acknowledge that "a check in the amount of $1,118.84" was tendered to Defendant NCORR and "held in escrow to pay for part of the replacement and elevation." (ECF 051-14 p.1). Their assertion that this payment was "not his own money" because the amount for which he was responsible was determined pursuant to the requirements of the

Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act") is an incorrect analysis of the law. Pursuant to the Stafford Act, individuals and families may receive financial assistance in response to a Presidentially declared major disaster. *See* 42 U.S.C. § 5174. While the federal government is tasked with ensuring a recipient of assistance does not receive assistance through fraudulent means or a duplication of that assistance, a recipient ultimately has discretion over the financial assistance received. 41 U.S.C. § 5174(i). The Stafford Act prohibits any program providing federal financial assistance to persons, business entities, or other entities suffering losses from a major disaster from awarding that federal financial assistance if they have or will receive financial assistance for the same type of loss under any other program *or from insurance or any other source*. (emphasis added) 41 U.S.C § 5155(a). Sources of financial assistance received by a homeowner which fall under this prohibition against the duplication of assistance[2] include, but are not limited to: FEMA Individual Assistance, Small Business Administration Loans, Private Insurance, and/or Private Organizations.

Mr. Smith received FEMA Individual Assistance for home repair after his home was damaged by Hurricane Florence. By choosing to apply for the CDBG-DR Homeowner Recovery Program assistance, Mr. Smith agreed to use the money he'd received towards the purchase of a home. If he had received money from private home insurance, the requirements would have been the same, and he would have had to apply the insurance funds to the purchase of the home. If he had chosen to withdraw from the CDBG-DR Homeowner Recovery Program, he would have kept the money and used it at his discretion. Mr. Smith chose to use the $1,118.84 received through FEMA to pay for a proprietary interest in the home which was subsidized with CDBG-DR funds.

[2] Commonly referred to as a "Duplication of Benefits."

Mr. Smith is, therefore, a buyer and provided valid consideration in exchange for the mobile home he received through the CDBG-DR Homeowner Recovery Program. Consideration which is sufficient to support a contract “consists of ‘any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee.” *Lee v. Paragon Group Contractors*, 78 N.C. App. 338, 337 S.E.2d at 134. Consideration does not have to be proportional to the benefit conferred or the burden undertaken, and even slight or trifling consideration is adequate to support a mutual agreement otherwise reached by mutual assent. *Young v. Bd. Of Comm'rs of Johnston Co.*, 190 N.C. 52, 57. 128 S.E. 401, 403 (1925). Not only did Mr. Smith pay $1,118.84 towards the cost of his home, but he was required to meet multiple other ongoing terms and conditions in addition to the initial eligibility requirements to receive the mobile home. (ECF 051-14).

**b. Defendant Excel fails to show they did not violate 42 U.S.C. § 3604(f)(3)(A).**

Defendant Excel argues that Mr. Smith's claim under 42 U.S.C. § 3604(f)(3)(A) fails because their actions did not prevent Mr. Smith from modifying his home. However, the law did not merely restrict Defendant Excel from preventing modification to the home; it required them to make the modifications.

The FHA makes it unlawful for a housing provider to refuse to permit, at the expense of the person with a disability, reasonable modifications "if such modifications may be necessary to afford such person full enjoyment of the premises [...]." 42 U.S.C. § 3604(f)(3)(A). However, when a housing provider receives federal financial assistance, such as the Defendants, they bear the expense for reasonable modifications that are necessary for the occupant's disability-related needs. *See Evans v. ForKids, Inc.*, 306 F.Supp.3d 827, 839 (E.D.VA. 2018); *Alexander v. Choate*, 469 U.S. 287 (1985); 29 U.S.C. §794. Because Mr. Smith requires the use of a wheelchair full-time, it

is necessary that he has a home that provides adequate floor space and other space for his wheelchair, so he may be afforded full use and enjoyment of that home. Therefore, when Mr. Smith discovered that the manufactured home chosen by Defendant Excel was inaccessible to his disability-related needs, Defendant Excel was required to provide those necessary modifications to the mobile home to meet those needs.

After learning the home was not wheelchair accessible, Mr. Smith repeatedly requested that Defendants modify the home to meet his disability-related needs. Defendants did not make those reasonable modifications to Mr. Smith's home. *See* Plaintiff's Statement of Additional Facts.

**c. Defendant Excel fails to show they did not violate 42 U.S.C. §3604(f)(3)(B).**

Defendant Excel argues that Mr. Smith's reasonable accommodation claim fails because Mr. Smith (1) "has not identified a rule, policy, practice or service that would physically change his New Home" and (2) "never requested an accommodation from Excel." (ECF 053 at 5).

The FHA makes it unlawful for a housing provider to refuse to "make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [...] equal opportunity to use and enjoy a dwelling [...]." 42 U.S.C. § 3604(f)(3)(B). An accommodation is "necessary" if it is shown that there is "a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided" to the person with a disability. *Bryant Woods Inn v. Howard Cty.*, 124 F.3d 597, 604 (4th Cir. 1997).

Defendant Excel has repeatedly stated in their Amended Answer (ECF 040), their Statement of Material Facts (ECF 054), and their Memorandum in Support of their Motion for Summary Judgment (ECF 053) their assertion that they constructed a home according to "Program guidelines" which were a policy and a practice of Defendant Excel. *See also* ECF 051-21 at 77:4-11. However, despite actual knowledge of Mr. Smith's use of a wheelchair and the lack of

floorspace for wheelchairs in the program's specifications for "accessible" units, Defendant Excel did not make accommodations to their policy and practice of following those specifications. *Id*.

An individual making a request for reasonable accommodation need not mention the FHA or even use the phrase "reasonable accommodation" for their request to be valid. Mr. Smith informed Defendants that it was necessary for his home to have space for his wheelchair. Defendant Excel was aware that the program's specifications did not provide space for a wheelchair. Additionally, a request for reasonable accommodation can be made at any time; however, Mr. Smith made these requests at least two (2) years before Defendant Excel asserts in their motion. Based on the undisputed documentation admitted by Defendant NCORR, between April 8, 2020, and July 5, 2022, Mr. Smith made no less than forty (40) requests for an accessible home, the majority of which were during construction.[3] At multiple times, Defendants responded to these requests that Mr. Smith's concerns could be addressed at the completion of construction.[4] However, once construction was complete, Mr. Smith was told by Defendant Excel that nothing would be changed.[5] Defendant Excel was required to grant reasonable accommodation to their policy of not going beyond program specifications to accommodate Mr. Smith's needs. They failed to do so.

**d. <u>Defendant Excel fails to show that their actions had no discriminatory impact</u>**

Defendant Excel argues that they did not "engage in conduct with discriminatory intent or which had a discriminatory effect." (ECF 053 at 6). However, as asserted in Plaintiff's Response to Defendant Excel's Statement of Material Facts and Plaintiff's Statement of Additional Facts, the home selected and constructed by Defendant Excel has had a discriminatory impact because Mr.

---

[3] Plaintiff's Statement of Additional Facts ¶ 8.
[4] Plaintiff's Statement of Additional Facts ¶ 9.
[5] Plaintiff's Statement of Additional Facts ¶10.

Smith cannot fully use and enjoy the home solely because of his disability. Mr. Smith cannot use his wheelchair in his home, and he has been forced to scoot around on a rolling desk chair; he cannot safely access the bathtub and has been forced to bathe using a rag in the sink; and he cannot safely access the toilet and must seek physical assistance.

Defendant Excel's reliance on Mr. Smith's testimony as critical proof that discrimination did not occur is misplaced. "A plaintiff's statement about what he *believes* is the reason for his firing does not necessarily prove that that belief is correct." (emphasis in original) *Morton v. Associated Dry Goods Corp.*, 792 F.Supp. 1136, 1144-45 (S.D. Ind. 1992).[6] "Opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver,* 470 F.3d 550, 562 (4th Cir. 2006).[7]

As provided in Plaintiff's Response to Defendant Excel's Statement of Material Facts, Mr. Smith's testimony shows that he does not know how to define "discrimination" within the legal context. Whether Defendant Excel's actions were discriminatory is a question of law before this Court.

**2. Defendant Excel is not entitled to summary judgment on Mr. Smith's Section 504 Claim.**

**a. <u>Defendant Excel fails to show that they did not administer the Program or receive federal funding.</u>**

The scope of Section 504 is limited to those who "actually receive federal financial assistance" because Congress sought to impose the requirements of Section 504 as a contractual cost of the recipient's agreement to accept federal funds. *Southwest Fair Hous. Council v. WG*

---

[6] See also *Huntington Branch, NAACP v. Huntington*, 844 F.2d 926 (2d Cir. 1988) (Holding that opinions in Title VII cases are relevant to Title VIII cases).

[7] "Conclusory testimony, for example, that 'a company engaged in "discrimination,"[...] involves the use of terms with considerable legal baggage, [...] nearly always invades the province of the jury, and should usually be excluded." *Georges v. Dominion Payroll Servs., LLC*, Civil Action No. 3:16cv777, 2018 U.S. Dist. LEXIS 76112, at *9 (E.D. Va. May 4, 2018) (quoting *United States v. Perkins*, 470 F.3d 150, 158 (4th Cir. 2006)).

*Campana Del Rio SH LLC*, 2021 U.S. Dist. LEXIS 18357 (D.Ariz., Feb. 1, 2021) (citing *U.S. Dep't of Transp. V. Paralyzed Veterans of Am*., 477 U.S. 597, 605, 106 S. Ct. 2705, 91 L. Ed. 2d 494 (1986)). Defendant Excel attempts to circumvent this by arguing that because they were merely a "vendor providing procurement and construction services," they did not administer the Program and did not receive federal financial assistance. (ECF 053 at 7).

However, institutions that themselves have not applied for or directly received federal funding may still be subject to non-discrimination requirements if they receive federal funds from an intermediary or third party to provide services rendered. See *United States v. Baylor University Medical Center*, 736 F.2d 1039, 1042-43 (5th Cir. 1984) (holding that a hospital that received Medicare and Medicaid funds from patients could be subject to the requirements of Section 504 of the Rehabilitation Act). Defendant Excel received CDBG-DR funds in exchange for the rehabilitation, reconstruction, and replacement of homes for eligible participants in the Program. As part of their bid to receive these funds, they were required to "[c]omply with all [..] federal laws, regulations, and guidelines, which may include: HUD Community Development Block Grant disaster laws, regulations, and guidelines [...]." (ECF 055-2 at 16). Further, as provided in Plaintiff's Statement of Additional Facts and supporting evidence, Defendant Excel was in control over many of the decisions regarding the home Mr. Smith still endures. Or, put more plainly, Defendant Excel exercised discretionary authority over the central benefit of the Program. These facts distinguish this action from the procurement cases on which Defendant Excel relies and are sufficient to generate a genuine issue of material fact viewing the evidence in a light most favorable to the Plaintiff. Moreover, these facts permit a jury to draw an inference that Defendant Excel was an administrator and recipient of federal financial assistance and, therefore, liable for a claim under Section 504 of the Rehabilitation Act.

**b. <u>Defendant Excel fails to show Mr. Smith received the full benefits of the ReBuild Program.</u>**

Defendant Excel claims that Mr. Smith received the full benefit of the ReBuild NC program because he received a mobile home. Once again, Defendant Excel relies on the argument that meeting the bare program specifications with no regard to Mr. Smith's actual needs is sufficient to avoid a claim of discrimination.

It is disputed that Defendant Excel met those program specifications. However, even if Defendant Excel had met program specifications, Section 504 and its implementing regulations at 24 C.F.R. Part 8 prohibit programs that receive federal funding from excluding individuals with disabilities solely by reason of their disability. 29 U.S.C. § 794; 24 C.F.R. Part 8. That prohibition extends to structural modifications necessary to allow an otherwise qualified individual to enjoy the full benefit of the program. Section 504 requires that individuals with disabilities "be provided with meaningful access to the benefit that the grantee offers," one benefit being the "elimination of architectural barriers." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). When the federally funded program provides housing, this means that the housing providers, here the Defendants, are responsible for reasonable modifications that are necessary for the program participant's disability-related needs. *See Evans v. ForKids, Inc.*, 306 F.Supp.3d 827, 839 (2018); 29 U.S.C. § 794.

24 C.F.R. § 8.29 provides that any "single family (including semi-attached and attached) units to be constructed or rehabilitated in a program or activity receiving federal financial assistance shall be made accessible upon request [...] if the nature of the handicap of an expected occupant so requires. [...]." 24 CFR §570.202(a)(1) additionally provides that CDBG funds may be used to finance the rehabilitation of privately owned buildings and improvements for residential purposes. Further, the protections of Section 504 and the federal accessibility standards found in

24 C.F.R. Part 8 apply to single-family homes provided to homeowners with federal funds from HUD. See *Telesca v. Long Island Hous. P'ship*, 443 F.Supp.2d 397, 409 (2006).

Defendant Excel's characterization of the home as "accessible," considering the home doesn't even provide floor space for a wheelchair, is absurd. Defendant Excel asks the Court to conflate "accessibility" as it applies to the needs of a person in a wheelchair with "use" and find, for example, that, because Mr. Smith uses the toilet, there are no accessibility issues in the bathroom. In order for Mr. Smith to fully use and enjoy his home, or receive the full benefit of the Program, he requires a home with sufficient space for his wheelchair to access all the rooms in his house. While individuals without disabilities were able to receive and enjoy the full benefits of the CDBG-DR Housing Recovery Program, Defendants denied Mr. Smith those benefits because of his disability by denying him a home that was accessible to his disability-related housing needs.

**c. <u>Section 504 does not require that a "public entity" engaged in discrimination</u>**

Defendant Excel argues that Mr. Smith's 504 claim fails because he was not '"subjected to discrimination by" a public entity' because Defendant Excel is not a public entity. This is not an element of a Section 504 claim. Defendant Excel relies on a sentence from *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).[8] However, under 29 U.S.C. § 794(b), "program or activity" means all of the operations of "(3) an entire corporation, partnership, or other private organization [...] (ii) which is principally engaged in the business of providing [...] housing [...] any part of which is extended Federal financial assistance."

**3. Defendant Excel is not entitled to summary judgment on Mr. Smith's breach of contract claims.**

**a. <u>Defendant Excel fails to show that Mr. Smith's contract claim is untimely.</u>**

[8] Wherein the Court mistakenly stated both 29 U.S.C. 794(a) and 42 U.S.C. § 12132 applied only to public entities when it is only 42 U.S.C. § 12132 that applies only to public entities.

Defendant Excel claims Mr. Smith's breach of contract claim is untimely by relying on the three-year statute of limitations for breach of contract claims. As a preliminary matter, Mr. Smith has cited the statute of repose at N.C.G.S. § 1-50(a)(5)(a), which provides that, "[n]o action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement."

However, Mr. Smith also filed within the three-year statute of limitations. Mr. Smith could not have become aware of defects in his new home until, at least, the date that he took delivery of that home. As Defendant Excel admits, this date is November 8, 2021. However, certain defects in the home did not become apparent to Mr. Smith until significantly later, including the unevenness of the floors, which Defendant Excel admits may not have been apparent until as late as March 2022.

Mr. Smith also signed an Acceptance of Work and Receipt of Warranty Notice on October 18, 2021, which promised him a one-year warranty until October 18, 2022. Defendant Excel endeavored to conduct repairs during this warranty period, including warranty inspections and repairs on December 1, 2021, January 12, 2022, March 1, 2022, April 21, 2022, July 5, 2022, and January 5, 2023. Repairs conducted by Defendant Excel included adjustment of grab bars and trim repairs, but there were attempts to make larger repairs, including moving elements of the inaccessible bathroom. This shows that Defendant Excel "endeavored to make repairs" between December 1, 2021, and January 5, 2023, a period of thirteen months and four days.[9] There are, therefore, sufficient material facts in dispute such that it creates a question for a jury to determine

---

[9] *Haywood St. Redevelopment Corp. v. Harry S. Peterson, Co.*, 120 N.C. App. 832, 837, 463 S.E.2d 564, 567 (1995).

when Mr. Smith knew or should have known of the construction defects. In the light most favorable to Mr. Smith, the statute of limitations was tolled from the time that Defendant Excel began making warranty repairs, December 1, 2021, until at least January 5, 2023, the last warranty inspection conducted by Defendant Excel, a period of thirteen months and four days. This means that the last date that Mr. Smith could have filed his lawsuit was December 12, 2025, and he filed well before then.

Defendant Excel also argues that the Amended Complaint does not "relate back" to the original Complaint for the purpose of the breach of contract claim. If the claims asserted in amended pleadings "arose out of the conduct, transaction, or occurrence" as the original pleading, the amendment "relates back to the date of the original pleading." Fed. R. Civ. P. 15(c). An amendment relates back if there is "a factual nexus between the amendment and the original complaint." *Grattan v. Burnett,* 710 F.2d 160, 163 (4th Cir. 1983). If the defendant had notice of the claim and will not be prejudiced by the amendment, the factual nexus should be liberally construed. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606 (4th Cir.), cert. Dis. 448 U.S. 911, 101 S. Ct. 25, 65 L. Ed. 2d 1141 (1980). An amendment is not prejudicial "if it merely adds an additional theory of recovery to the facts already pled." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).

In this case, Mr. Smith's breach of contract claims in his Amended Complaint arose from the same factual nexus as his FHA and Section 504 claims. These claims concern the same actions taken by Defendant Excel over the same time. When the original complaint was filed, Defendant Excel was put on notice that their conduct in relation to the construction of Mr. Smith's home would be the subject of litigation. Mr. Smith's Amended Complaint "merely adds an additional theory of recovery" arising from the same underlying set of facts and is therefore not prejudicial

to Defendant Excel.[10] Since the amendment to add a breach of contract claim is not prejudicial to Defendant Excel and arises from the same factual nexus, it "relates back" to the original Complaint. Since it "relates back" to the original Complaint, the breach of contract claim should not be time-barred if the original Complaint was filed within the statute of limitations. Nonetheless, Mr. Smith filed this lawsuit on April 1, 2025, and amended his complaint on October 31, 2025, both before the end of the tolled statute of limitations.

**b. <u>Defendant Excel fails to show there is not an enforceable contract between Excel and Mr. Smith.</u>**

Defendant Excel argues that Mr. Smith is not a party to a contract between Defendants Excel and NCORR. However, Mr. Smith's claim is based on the "Homeowner-Contractor Replacement and Elevation Agreement," and not the document relied upon by Defendant Excel for this argument.

Defendant Excel acknowledges that on April 8, 2020, Mr. Smith and Defendant Excel signed the "Homeowner-Contractor Replacement and Elevation Agreement." (ECF 051-14 signatures at 19). A plaintiff may establish a valid contract by proving that (1) the plaintiff and the defendant(s) mutually assented to the same material terms for doing or refraining from doing a particular thing; and (2) that the mutual assent of the parties was supported by adequate consideration. See N.C.P.I. - Civil 501.01; *Richardson v. Greensboro Warehouse and Storage Co.*, 223 N.C. 344, 26 S.E.2d 897 (1943); *Central Sys. v. General Heating and Air Conditioning Co.*, 48 N.C. App. 198, 268 S.E.2d 822, *cert. denied*, 302 N.C. 400, 273 S.E.2d 445 (1980).

Defendant Excel argues that this contract is not supported by adequate consideration. The document's signatures, reciprocal obligations, incorporation clause, and express conditions on

---

[10] *Id*.

payment create, at minimum, a genuine dispute over whether Mr. Smith and Defendant Excel were parties to an enforceable contract. *Lee*, 78 N.C. App. at 337; *Young*, 190 N.C. at 57.

**c. <u>Defendant Excel fails to show they did not breach the contract.</u>**

To prevail on a claim for breach of contract, a plaintiff must prove that (1) the time had come for the defendant(s) to abide by a material term of a valid contract, meaning that at the time of the alleged breach all conditions precedent to the defendants' obligation to perform was satisfied; and (2) that the defendants failed to abide by a material term of the contract. See N.C.P.I. - Civil 502.00; *Wade v. Lutterloh*, 196 N.C. 116, 120, 144 S.E.2d 694, 696 (1928).

Defendant Excel claims they did not breach the "Homeowner-Contractor Replacement and Elevation Agreement." Paragraph 3.4, titled "CDBG-DR Rules & Contract Provisions" states, in part, "Owner and Contractor agree to comply with [...] in particular CDBG-DR rules, procedures and/or requirements to the extent they are applicable to this Agreement [...]. (ECF 051-14 at 18).

Paragraph 4.8 of the "Homeowner-Contractor Replacement and Elevation Agreement" states:

> "Owner and Contractor recognize and understand that this Agreement includes the CDBG-DR Program Policies and Procedures that are referenced herein, Attachments hereto and on ReBuild NC website (in particular the State's Action Plan (as amended) and Housing Recovery Program Manual (as amended)), and the construction documents. These documents constitute the entire Agreement and all prior agreements and/or oral representation/agreements are merged into this Agreement." (ECF 051-14 at 19).

As asserted by Mr. Smith in Plaintiff's Statement of Additional Facts, the Program was required to meet or exceed federal accessibility requirements for applicants with disabilities. Defendant Excel attempts to cite the testimony of Plaintiff's Expert Witnesses as proof that the home is accessible. (ECF 053 at 16). However, the exchange referenced is in response to Duncan's testimony that the reference to UFAS and 2010 ADA were used in their report because "they are useful [...] references for some of the accessibility things that we knew we'd be encountering there

for different reasons. They're never an exact fit, but we used, you know, kind of a combination of those and our expert judgment as to what we were coming up with." (ECF 051-2 at 43:19-44:22). Duncan went on to agree that something could be "considered accessible to a particular individual, but not necessarily in compliance with these standards" (ECF 051-2 at 44:23-45:2). The Duncan-Littrell report, incorporated by reference into the deposition testimony concludes, "The conditions observed [in Mr. Smith's home] would prevent a person in a wheelchair from safely, effectively, and independently using this home." ECF 051-3 at 12. Defendant Excel therefore breached one or more material terms of the contract with Mr. Smith when they failed to provide an accessible home to Mr. Smith, despite Mr. Smith meeting all of his obligations under the contract.

## CONCLUSION

For the foregoing reasons, the Court should DENY Defendant Excel's Motion for Summary Judgment.

Respectfully submitted this the 21st day of October 2026.


By: /s/ Ashley Denise Skaff
Ashley Denise Skaff
Legal Aid of North Carolina, Inc. – Fair Housing
2101 Angier Ave. Ste. 300
Durham, NC 27703
(984) 297-2017
Fax: (919) 861-1887
State Bar No. 54295

/s/ Shrayan Shetty
Shrayan Shetty
NORTH CAROLINA JUSTICE CENTER
P.O. Box 28068
Raleigh, North Carolina 27611
Tel: (919) 856-2164
State Bar No. 59552
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

On October 21, 2026, we served via electronic mail a copy of – **PLAINTIFF'S RESPONSES IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; PLAINTIFF'S REPONSES TO DEFENDANTS' STATEMENTS OF MATERIAL FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS; PLAINTIFF'S APPENDIX TO STATEMENT OF ADDITIONAL FACTS;** and **ATTACHED EXHIBIT** – upon the following counsel of record:

Tanner J. Ray, Assistant Attorney General
Emily Maloney, Special Deputy Attorney General
N.C. Department of Justice
Public Safety Section
Tjray@ncdoj.gov
Emaloney@ncdoj.gov
*Attorneys for Defendants, State of North Carolina and North Carolina Office of Recovery and Resiliency*

Jason V. Federmack
Danielle Bland
Jackson Lewis P.C.
Jason.federmack@jacksonlewis.com
Dani.bland@jacksonlewis.com
*Attorneys for Defendant Excel Contractors, L.L.C.*

* * * *

Date: October 21, 2026

_*/s/ Ashley Denise Skaff*__
Ashley Denise Skaff
Legal Aid of North Carolina, Inc. - Fair Housing
2101 Angier Ave. Ste. 300
Durham, NC 27703
(984) 297-2017
Fax: (919) 861-1887
AshleyS@legalaidnc.org
State Bar No. 54295

*/s/ Shrayan Shetty*___
Shrayan Shetty
North Carolina Justice Center
P.O. Box 28068
Raleigh, NC 27611
(919) 856-2164
Shray@ncjustice.org
State Bar No. 59552

*Attorneys for the Plaintiff*