IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:25-CV-59

| | | |
|---|---|---|
| ARNOLD JEROME SMITH<br><br>*Plaintiff*,<br><br>v.<br><br>STATE OF NORTH CAROLINA, NORTH CAROLINA OFFICE OF RECOVERY AND RESILIENCY AND EXCEL CONTRACTORS, L.L.C.<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **PLAINTIFF'S RESPONSE IN OPPOSITION OF DEFENDANTS STATE OF NORTH CAROLINA AND NCORR'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Local Civil Rules 7.1(f) and 7.2, Plaintiff Arnold J. Smith submits the following response in opposition to Defendants State of North Carolina and NCORR's Motion for Summary Judgment filed September 16, 2026 [ECF 056-059]:

## STATEMENT OF THE CASE

Plaintiff Arnold J. Smith has alleged disability discrimination under the federal Fair Housing Act ("FHA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and the Americans with Disabilities Act ("ADA"); and breach of contract under N.C.G.S. §1-50.[1] The procedural history of this case is well documented. In accordance with ECF 047, all parties filed separate and competing motions for summary judgment. As it relates to this memorandum, on September 16, 2026, Defendants State of North Carolina and NCORR (collectively referred to as "State Defendants") moved for summary judgment, arguing that (1) the doctrine of sovereign immunity bars Mr. Smith's FHA, Section 504, ADA, and breach of contract claims; (2) Mr. Smith doesn't have a claim under Section 504 or the ADA because State Defendants did not intentionally

[1] *See* Pl. Am. Compl. ECF 039.

discriminate against him on the basis of his disability; (3) Mr. Smith doesn't have standing under the FHA because he didn't have a buyer-seller relationship with State Defendants; (4) State Defendants did not breach any contract with Mr. Smith; and (5) Mr. Smith cannot recover emotional distress or punitive damages under Section 504, the ADA, or breach of contract claims. For the reasons set forth below and in Plaintiff's Response to State Defendants' Rule 56.1 Statement of Material Facts, Plaintiff's Statement of Additional Material Facts, and supporting evidence in opposition, the Court should deny this motion.

**DEFENDANTS' RULE 56.1 STATEMENT OF MATERIAL FACTS**

Mr. Smith has filed a response to State Defendants' Rule 56.1 Statement of Material Facts as well as evidence to support his genuine material disputes and objections. Mr. Smith has additionally filed a Statement of Additional Material Facts. In brief, Mr. Smith is a person with a disability. Mr. Smith was accepted into the Community Development Block Grant – Disaster Recovery Homeowner Recovery Program, otherwise known as the ReBuild NC Program, because his home was damaged by Hurricane Matthew, a federally declared natural disaster. This program was funded through a Community Development Block Grant and administered by State Defendants. In accordance with program guidelines, Mr. Smith was awarded a replacement mobile home. Mr. Smith informed State Defendants, verbally, and in writing, that he required a home that was accessible to him. The home provided to Mr. Smith was not accessible to him, and State Defendants refused to modify or otherwise remedy the home to make it accessible. In March 2023, Mr. Smith filed an administrative complaint with the HUD Office of Fair Housing and Equal Opportunity alleging violations of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988; Section 504 of the Rehabilitation Act of 1973, Section 109 of Title I of the Housing and Community Development Act of 1974, and Title II of the Americans with

Disabilities Act of 1990. On May 21, 2025, the HUD Office of Fair Housing and Equal Opportunity issued a "no-cause" determination.[2]

## STANDARD OF REVIEW

All parties in this matter have filed motions for summary judgment. When parties file competing (or cross) motions for summary judgment independently, courts apply the same standard of review that governs a single motion. *Burlington Ins. Co. v. Eden Cryogenics LLC*, 126 F. Supp. 3d 947, 954 (S.D. Ohio 2015). The filing of cross-motions does not mean that the parties concede that there are no genuine issues of material fact, nor does it require the court to grant summary judgment to one side or the other. *See Taft Broad. Co. v. United States*, 929 F.2d 240 (6th Cir. 1991).

The Court must view the facts in the light most favorable to plaintiffs, drawing all reasonable inferences in their favor. *Dean v. Jones*, 984 F.3d 295 (4th Cir. 2021). Any conflicts in the evidence must be resolved in favor of plaintiffs or left for the jury to decide.[3] Additionally, "an adverse party may not rest upon the mere allegations or denials of his pleading, but [...] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita Electronic Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ARGUMENT

1. **State Defendants are not protected from Plaintiff's claims by the Eleventh Amendment.**
   a. **The federal Fair Housing Act**

[2] An administrative determination by HUD Office of Fair Housing and Equal Opportunity finding "no reasonable cause" to believe a discriminatory practice occurred does not bar or preclude subsequent private litigation. Dismissal of an administrative complaint simply indicates the end of agency involvement, rather than a foreclosure of the right to seek private redress. *See* 42 U.S.C. 3613(a)(2); *Marinoff v. United States Dep't of Hous. & Urban Dev.*, 78 F. 3d 64 (2d Cir. 1996).

[3] *See, e.g.*, *id* at 306-308.

State Defendants argue that the FHA's provision allowing for a private right of action for violations of the requirements of the FHA does not equate to an abrogation of immunity in private suits against a state. They further assert that, while they did waive sovereign immunity under Section 504, that does not equate to a waiver for claims made pursuant to the FHA. Both arguments must be rejected based on the relevant and applicable Community Development Block Grant – Disaster Recovery laws.

There is no dispute that Defendants State of North Carolina and NCORR administered a housing recovery program with federal CDBG-DR funds and that they contracted with Defendant Excel to rehabilitate, reconstruct, or replace hurricane-damaged homes.

The federal statute establishing the CDBG-DR program specifically requires conformity with the FHA: a grant of CDBG-DR funds "shall be made only if" the grantee certifies that "the grant will be conducted and administered in conformity with the Civil Rights Act of 1964 (42 U.S.C. 2000A *et seq*.) and the Fair Housing Act (42 U.S.C. 3601 *et seq*.)." 42 U.S.C. §5324(d)(2).

A State "shall not be immune under the Eleventh Amendment of the Constitution of the United States from a suit in Federal court for a violation of [...] the provisions of any other federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. §2000d-7(a)(1). Courts have generally held that the language of §2000d-7 obviates a state's immunity from discrimination suits under "other federal statue[s]" if the applicable statute limits its "substantive antidiscrimination provisions to recipients of federal funding." *Sullivan v. Tex. A&M Univ. Sys.*, 986 F.3d 593, 597 (5th Cir. 2021).

The FHA does not waive or abrogate state sovereign immunity because it applies more broadly than merely to recipients of federal funding. *See Gregory v. S.C. Dep't of Transp.*, 289 F. Supp. 2d 721, 724-25 (D.S.C. 2003). Accordingly, states retain their immunity from FHA claims

absent some other basis for waiver. However, the CDBG-DR enabling statute operates differently because its antidiscrimination provisions are expressly tied to the receipt of federal funds. *See Sullivan*, 986 F.3d at 597; 42 U.S.C. §5324(d)(2) (incorporating the nondiscrimination requirements of. Section 504 of the Rehabilitation Act of 1973 through its implementing regulations at 24 CFR Part 6 and making it a condition precedent that a grant will be "conducted and administered in conformity with the Civil Rights Act of 1964 (42 U.S.C. §2000A *et seq*.) and *the Fair Housing Act* (42 U.S.C. §3601 *et seq*.) emphasis added).

Here, the enacting statute of CDBG-DR clearly incorporates the nondiscrimination provisions of the Fair Housing Act as its own substantive anti-discrimination provisions and limits the applicability of these provisions solely to recipients of federal funding, namely those who receive CDBG-DR funds. By accepting federal financial assistance through CDBG-DR funds, Defendants State of North Carolina and NCORR waived state sovereign immunity from nondiscrimination claims under the Fair Housing Act.

**b. The Americans with Disabilities Act**

State Defendants have argued that Mr. Smith's claim under Title II of the ADA must fail because, while 42 U.S.C. §12202 expresses a clear intent to abrogate a state's sovereign immunity, Mr. Smith "did not allege a Fourteenth Amendment violation in his Complaint." (ECF 059 at 12; 14). This argument must be rejected based on applicable case law.

State Defendants cite the "claim-by-claim" test laid out in *United States v. Georgia*. (ECF 059 at 13). This test asks, "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such conduct violated Title II but did not violate the Fourteenth amendment, whether Congress's

purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *United States v. Georgia*, 546 U.S. 151, 159 (2006).

State Defendants argue that because Plaintiff did not specifically allege a Fourteenth Amendment violation in his Complaint, his claim must fail for lack of constitutional authority and cite that the Equal Protection Clause of the Fourteenth Amendment "direct[s] that all persons similarly situated should be treated alike."[4] But their analysis is incorrect, and the facts upon which it relies are disputed. *Georgia* does not require a plaintiff to specifically and separately allege a Fourteenth Amendment claim, but merely to assert claims involving conduct that violates the Fourteenth Amendment. *Georgia*, 546 U.S. at 159. Mr. Smith's claims for violations of the ADA and his supporting evidence demonstrate conduct in violation of the Equal Protection Clause of the Fourteenth Amendment.

Mr. Smith asserts in his Amended Complaint (ECF 039); Plaintiff's Response to State Defendants' Statement of Material Facts; Plaintiff's Statement of Additional Material Facts; and supporting evidence that State Defendants were required through federal laws and regulations to ensure the CDBG-DR Homeowner Recovery Program was accessible to persons with disabilities. These laws and regulations included federal accessibility design standards. However, State Defendants' policies and practices did not comply with these laws, regulations, or standards, nor did they provide greater accessibility than the minimum requirements. State Defendants did not have any floor space requirements or other space requirements in dwellings provided to wheelchair users and did not change those policies or otherwise provide modification to the dwelling to accommodate Mr. Smith's wheelchair so he could fully use the home. These policies and practices, therefore, treated Mr. Smith differently from other participants in the program. While other

[4] ECF 059 at 12-14 and citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

similarly situated individuals (i.e. individuals eligible to receive CDBG-DR assistance) were able to receive and enjoy the full benefits of the CDBG-DR Homeowner Recovery Program, Mr. Smith was treated differently and denied the full benefits solely because of his disability. State Defendants' violations of Title II of the ADA therefore constitute violations of the Equal Protection Clause of the Fourteenth Amendment, and they are not entitled to Eleventh Amendment sovereign immunity.

**c. State Defendants' conduct is incompatible with an intent to preserve immunity.**

In the alternative and as it applies to any remaining claims for which the State Defendants assert protection under the Eleventh Amendment, State Defendants' conduct has been incompatible with an intent to preserve immunity and the Court should hold that they have consented to the jurisdiction and authority of the Court.

This case has been before the Court since April 1, 2025. State Defendants have filed multiple responsive pleadings without filing motions objecting to jurisdiction or claims asserted. State Defendants have made no attempts to assert their claim to immunity beyond listing it among the other boilerplate defenses in their Answer to the initial Complaint[5] (ECF 012) and Answer to the Amended Complaint (ECF 041). State Defendants have participated in joint motions, including multiple motions for extensions of time. State Defendants have actively participated in eleven (11) months of discovery which included extensive document production, interrogatories, multiple depositions, and mediation. *See Ku v. Tennessee*, 322 F.3d 431, 435 (6th Cir. 2003) (appearing without objection, engaging in extensive discovery and inviting the district court to enter judgment on the merits was a form of voluntary invocation of the federal court's jurisdiction sufficient to waive an Eleventh Amendment defense); *Hunter v. Hamilton Cty. Bd. of Elections*, 850 F. Supp.

[5] Filed after seeking an extension to file their responsive pleading.

2d 795, 801-02 (S.D. Ohio 2012) (participating in extensive pre-trial activities including filing responsive pleadings, motions, and discovery, and only substantively seeking Eleventh Amendment protection in a motion for summary judgment waived immunity).

**2. State Defendants denied Plaintiff the benefit of a public program based on disability.**

State Defendants argue that they did not intentionally discriminate against Mr. Smith on the basis of his disability, and he, therefore, cannot bring valid claims under the ADA or Section 504. This argument is based on disputed facts and an inaccurate reading of applicable case law regarding the definition of "intentional discrimination."

The Fourth Circuit has addressed the application of the ADA and Section 504 and held that both statutes "prohibit discrimination against an individual because of [their] disability" and the analysis of the claims is "substantially the same." *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018).

> "To establish a violation of either statute, a plaintiff must prove (1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program or activity, or otherwise discriminated against on the basis of their disability." *Id.* (quoting *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016).

State Defendants cite a Fourth Circuit case, quoting that Title II of the ADA provides "three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations. *A Helping Hand, LLC v. Balt. County*, 515 F.3d 356, 362 (4th Cir. 2008).

State Defendants first argue that, because they did not "personally install the accessibility features at issue"[6] they cannot be liable for a failure to make reasonable accommodations. They go on to state that Mr. Smith "simply cannot support his claim that State Defendants intentionally

---

[6] ECF 059 at 24.

discriminated against him on the basis of his disability." (ECF 059 at 24). However, State Defendants knew that Mr. Smith is a person with a disability and used a wheelchair due to an amputation of his left leg. (ECF 041 ¶¶ 4; 30). Mr. Smith asserts in his Amended Complaint (ECF 039); Plaintiff's Response to State Defendants' Statement of Material Facts; Plaintiff's Statement of Additional Material Facts; and supporting evidence that State Defendants were required through federal laws and regulations to ensure the CDBG-DR Homeowner Recovery Program was accessible to persons with disabilities. These laws and regulations included federal accessibility design standards. However, State Defendants' policies and practices did not comply with these laws, regulations, or standards, nor did they provide greater accessibility than the federal accessibility design standards. State Defendants did not have any floor space requirements or other space requirements in dwellings provided to wheelchair users and did not change those policies (i.e. make reasonable accommodation) or otherwise provide modification to the dwelling to accommodate Plaintiff's wheelchair so he could fully use the home.

When seeking compensatory damages for a violation of the ADA, a plaintiff must prove intentional discrimination. *Koon v. North Carolina*, 50 F.4th 398, 406 (4th Cir. 2022). "Deliberate indifference" can meet this standard where there is "knowledge of a substantial risk of deprivation of those rights and a failure to act to resolve that risk." *Id* at 404-405. State Defendants' refusal to make reasonable accommodations to their policies or procedures, even after actual and repeated notice by Plaintiff that these policies and procedures prevented Mr. Smith from accessing the full benefit of the CDBG-DR Homeowner Recovery Program, amount to deliberate indifference.

Lastly, State Defendants argue that Mr. Smith cannot use a claim under Section 504 to "compel compliance with HUD regulations." (ECF 059 at 24). This argument mischaracterizes the nature of Plaintiff's claims. The case State Defendants rely on, *Three Rivers Ctr. for Indep. Living*

*v. Hous. Auth. of City of Pittsburgh*, 382 F.3d 412, 428 (3d Cir. 2004), is easily distinguishable from the matter before this Court. In *Three Rivers*, the question before the court was whether an individual could seek relief for broad, systemic violations of HUD regulations when those violations did not necessarily individually impact the plaintiff. *Id* at 429. The court held they could not. *Id* at 430. However, the plaintiff was allowed to continue forward on their individual claim for individual instances of discrimination. *Id* at 419 n. 8; 429. Here, Mr. Smith asserts violations of Section 504 in his individual capacity and is bringing claims pursuant to Section 504's private right of action to seek redress of individual instances of discrimination done specifically to him.

**3. Plaintiff has standing to bring a claim under the FHA.**

State Defendants argue that Mr. Smith is neither a buyer or renter and has no standing to bring claims for violations of 42 U.S.C. § 3604(f). The cases relied upon for their analysis are irrelevant to the matter before this Court. In *Salisbury v. City of Santa Monica*, the court held that a plaintiff who never had a lease and was never a declared or authorized occupant of a rental could not establish a landlord-tenant relationship. 998 F.3d 852 (9th Cir. 2021). In *Jenkins v. N.Y. Dep't Homeless Services*, the court held that an individual accessing a free homeless shelter was not a renter because he offered no consideration in exchange for room in the shelter. 643 F.Supp.2d 507 (S.D.N.Y. 2009).

Unlike those cases, Mr. Smith is a buyer and provided valid consideration in exchange for the mobile home he received through the CDBG-DR Homeowner Recovery Program. "A claimant is said to be a 'buyer or renter' under the FHA when he or she supplies consideration in exchange for an interest in property." *Wartluft v. Milton Hershey Sch. & Sch. Trust*, 400 F. Supp. 3d 91, 104 (M.D. Pa. 2019). Consideration which is sufficient to support a contract "consists of 'any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by

the promisee." *Lee v. Paragon Group Contractors*, 78 N.C. App. 338, 337 S.E.2d at 134. Consideration does not have to be proportional to the benefit conferred or the burden undertaken, and even slight or trifling consideration is adequate to support a mutual agreement otherwise reached by mutual assent. *Young v. Bd. Of Comm'rs of Johnston Co.*, 190 N.C. 52, 57. 128 S.E. 401, 403 (1925). Not only did Mr. Smith pay $1,118.84 towards the cost of his home[7] but he was required to meet multiple other ongoing terms and conditions in addition to the initial eligibility requirements to receive the mobile home.[8] Thus, Mr. Smith provided valuable consideration and is distinguishable from the cases relied upon by State Defendants. *See Growth Horizons, Inc. v. Delaware Cty., Pa.*, 983 F2d 1277, 1283 n.10 (3d Cir. 1993) ("Because the handicapped individuals in this case are not supplying the funds nor seeking proprietary interest in the property, they are neither buyers nor renters.").

**4. State Defendants breached material terms of a contract with Plaintiff.**

State Defendants argue that *Hensley v. Ray's Motor Co. of Forest City, Inc.*, 580 S.E.2d 721, 724 (N.C. Ct. App. 2003), definitively provides that a mobile home cannot be an improvement to land. State Defendants' reading of *Hensley* is incorrect and should be rejected. The court in *Hensley* provided that whether a mobile home is an improvement to land is dependent on meeting one of two circumstances: "either (1) annexation of the mobile home to land with the intent that it be permanent or (2) circumstances surrounding the association between the land and the mobile home or the relationship between the parties otherwise justifies treating the mobile home as realty which is to become or is part of the land." *Id* at 724. Mr. Smith contends that his mobile home is affixed to the land and is covered by a deed. Further, he pays property taxes and not motor vehicle taxes to the county.

[7] ECF 051-14 at 1.
[8] Plaintiff's Statement of Additional Facts XXX

5. **Plaintiff has not sought emotional distress or punitive damages under his claims for violations of Section 504, the ADA, or breach of contract.**

State Defendants argue that Mr. Smith cannot recover emotional distress or punitive damages under his Section 504, ADA, or breach of contract claims. ECF 059 at 26-27. Mr. Smith seeks actual, compensatory, and statutory damages under each of his claims. ECF 039 ¶ 20. Mr. Smith seeks punitive damages under his claims for violations of the FHA. *Id*.

It is well settled that "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood*, 327 U.S. 678, 684 (1946). Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act provide that remedies at law and in equity are available for violations. 29 U.S.C. § 794a(a)(2); 42 U.S.C. § 2000d-7(a)(2). Section 504 additionally allows the prevailing party to recover reasonable attorney fees. 29 U.S.C. § 794a(b). The Supreme Court has held that a recipient of federal funds is subject to suit for compensatory damages. *Barnes v. Gorman*, 536 U.S. 181, 187 (2002). Although the availability of compensatory damages for emotional distress has been limited as noted in the legal authority cited by State Defendants, Mr. Smith is entitled to other forms of compensatory damages.

The FHA explicitly provides that a court "may award to the plaintiff actual and *punitive damages*, and [...] may grant relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including [...] ordering such affirmative action as may be appropriate). 42 U.S.C. § 3613(c)(1) (emphasis added). Mr. Smith requests punitive damages under the Fair Housing Act. (ECF 039 ¶ 20). Courts have held that, under the FHA, plaintiffs may recover, as compensatory damages, damages for emotional distress. *See*

*Granger v. Auto-Owners Ins.*, 144 Ohio St. 3d 57, 63 (2015). Attorney fees are recoverable under the FHA. 42 U.S.C. § 12205.

Mr. Smith's prayer for relief is, therefore, based on relevant statutory language and in accordance with current legal authority.

**CONCLUSION**

For all the foregoing reasons, the Court should DENY State Defendants' Motion for Summary Judgment.

Respectfully submitted this the 21st day of October 2026.

By: /s/ Ashley Denise Skaff
Ashley Denise Skaff
Legal Aid of North Carolina, Inc. – Fair Housing
2101 Angier Ave. Ste. 300
Durham, NC 27703
(984) 297-2017
Fax: (919) 861-1887
State Bar No. 54295

/s/ Shrayan Shetty
Shrayan Shetty
NORTH CAROLINA JUSTICE CENTER
P.O. Box 28068
Raleigh, North Carolina 27611
Tel: (919) 856-2164
State Bar No. 59552
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

On October 21, 2026, we served via electronic mail a copy of – **PLAINTIFF'S RESPONSES IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; PLAINTIFF'S REPONSES TO DEFENDANTS' STATEMENTS OF MATERIAL FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS; PLAINTIFF'S APPENDIX TO STATEMENT OF ADDITIONAL FACTS;** and **ATTACHED EXHIBIT** – upon the following counsel of record:

Tanner J. Ray, Assistant Attorney General
Emily Maloney, Special Deputy Attorney General
N.C. Department of Justice
Public Safety Section
Tjray@ncdoj.gov
Emaloney@ncdoj.gov
*Attorneys for Defendants, State of North Carolina and North Carolina Office of Recovery and Resiliency*

Jason V. Federmack
Danielle Bland
Jackson Lewis P.C.
Jason.federmack@jacksonlewis.com
Dani.bland@jacksonlewis.com
*Attorneys for Defendant Excel Contractors, L.L.C.*

* * * *

Date: October 21, 2026

_/s/ Ashley Denise Skaff__
Ashley Denise Skaff
Legal Aid of North Carolina, Inc. - Fair Housing
2101 Angier Ave. Ste. 300
Durham, NC 27703
(984) 297-2017
Fax: (919) 861-1887
AshleyS@legalaidnc.org
State Bar No. 54295

/s/ Shrayan Shetty___
Shrayan Shetty
North Carolina Justice Center
P.O. Box 28068
Raleigh, NC 27611
(919) 856-2164
Shray@ncjustice.org
State Bar No. 59552

*Attorneys for the Plaintiff*